**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CUREVAC SE, and CUREVAC MANUFACTURING GMBH, <br><br> Plaintiffs, <br><br> v. <br><br> MODERNA, INC., MODERNATX, INC., and MODERNA US, INC., <br><br> Defendants. | C.A. No. 26-cv-00475-CFC <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' COUNTERCLAIMS, ANSWER, AND**
**AFFIRMATIVE DEFENSES TO COMPLAINT**

**COUNTERCLAIMS**

Defendants/Counterclaim-Plaintiffs Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. (collectively, "Moderna") demand a trial by jury on all issues so triable and assert the following counterclaims against Plaintiffs/Counterclaim-Defendants CureVac SE and CureVac Manufacturing GmbH (collectively, "CureVac").

**INTRODUCTION**

1.      Moderna brings these counterclaims in response to CureVac's lawsuit, which improperly seeks to profit from Moderna's groundbreaking messenger RNA ("mRNA") vaccines (sold as Spikevax®).[1]  Specifically, Moderna asks this Court to declare that Moderna's Spikevax® COVID-19 vaccines do not infringe CureVac's asserted patents, and that CureVac's asserted patents are invalid.  This lawsuit will confirm that Moderna and its scientists, employees, and

_____

[1] In particular, CureVac accuses the following versions of Moderna's COVID-19 vaccine: Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), Spikevax® (2023-2024 Formula), Spikevax® (2024-2025 Formula), and Spikevax® (2025-2026 Formula).  *See* D.I. 1 at 18 n.15.  These Counterclaims will refer to those versions as the "Accused Products."

1

collaborators are the true innovators in lifesaving mRNA COVID-19 vaccines.  CureVac played no role in Moderna's significant accomplishments and, in fact, has never launched a COVID-19 vaccine of its own.  Having failed to develop a successful COVID-19 vaccine itself, CureVac through this lawsuit is now improperly seeking to take credit for Moderna's own innovative work.

2.    CureVac previously asserted many of these same patents—including the '070 patent, the '910 Patent, the '312 Patent, the '966 Patent, and the '686 Patent—against BioNTech SE ("BioNTech").[2]  As part of that litigation, BioNTech asserted that those patents were invalid.[3]

3.    On information and belief, BioNTech acquired CureVac and its portfolio of mRNA-related patents in December 2025.  On February 19, 2026, BioNTech filed a lawsuit against Moderna alleging that Moderna's mNEXSPIKE® COVID-19 vaccine infringed BioNTech's patent.  Just two months later, on April 24, 2026, CureVac—under BioNTech's ownership—served this Complaint, also alleging infringement of the Asserted Patents—many of which BioNTech previously contended were invalid—by Moderna's COVID-19 vaccines.  BioNTech and its newly acquired subsidiary, CureVac, are using these successive lawsuits to assert ownership over, and seek royalties from, technologies and products that they did not invent, develop, or commercialize.

4.    The true innovator in the area of mRNA vaccines for infectious disease is Moderna, not CureVac.  For a decade before COVID-19 emerged, Moderna had been pioneering a new class of medicines made of mRNA and developing its own platform technologies that could deliver mRNA in a variety of therapeutic and prophylactic applications, including vaccines.  Over the past fifteen years, Moderna has worked diligently in its laboratories to pioneer fundamental breakthroughs in the field of mRNA technology.  These discoveries span all aspects of mRNA

---

[2] *CureVac SE v. BioNTech SE*, No. 2:23-cv-0222 (E.D. Va.).
[3] *E.g.*, Defendant's Factual Contentions, *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222, ECF No. 804-12 (E.D. Va. Feb. 25, 2025).

medicines—from the characteristics and design of the mRNA itself and the protein it encodes, to the technologies to deliver mRNA to patients safely and effectively.

5.      In January 2020, just days after the genetic sequence for SARS-CoV-2 became known, Moderna developed the world's first mRNA vaccine against the virus and the disease that it causes (COVID-19).  Moderna's vaccine, later known as Spikevax®, utilizes a nucleoside-modified mRNA encoding a full-length spike protein construct to induce a robust and durable immune response against SARS-CoV-2.  Moderna's Spikevax® was the first SARS-CoV-2 vaccine to reach the clinic.  Moderna was able to move so quickly because of its years of proprietary research and experience in studying and developing mRNA vaccines well before the pandemic struck.

6.      While Moderna succeeded in developing a SARS-CoV-2 vaccine, CureVac has not. CureVac's SARS-CoV-2 vaccine candidate, CVnCoV, utilized an unmodified mRNA design that differed fundamentally from the modified-mRNA approach employed by Spikevax®.  Although CureVac tested CVnCoV in clinical studies, the vaccine demonstrated substantially lower efficacy than Spikevax® and never obtained regulatory approval.  As a result, CureVac abandoned CVnCoV.

7.      To this day, CureVac has not obtained regulatory approval for any mRNA vaccine against SARS-CoV-2, or, indeed, any medicines or vaccines at all.

8.      CureVac purports to have developed the mRNA technologies used by Moderna's vaccines.  But, in fact, Moderna independently developed the accused vaccines and the Asserted Patents are invalid in view of earlier work from Moderna and others that predates the purported effective filing date or date of invention of each patent.  CureVac's asserted TFF Patents claim the routine application of decades-old tangential flow filtration technology using techniques that were

already known and widely practiced years before CureVac filed the TFF Patents. Similarly, CureVac's asserted GC Patent claims optimization of coding sequence that has been widely practiced since the 1980s. CureVac's asserted Variant Vaccine Patents reflect the company's unsuccessful approach to an unmodified mRNA vaccine, and claim mRNA vaccine constructs incorporating mutations and other design features that were either previously disclosed by Moderna or otherwise known in the art.

9. CureVac's lawsuit is ultimately a meritless attempt to claim success for work it never did. Moderna brings these counterclaims to ensure CureVac may not improperly take credit for Moderna's own innovations or expand CureVac's asserted patents beyond what they describe.

## PARTIES

10. Moderna, Inc. is a company organized and existing under the laws of the State of Delaware with a principal place of business at 325 Binney Street, Cambridge, Massachusetts 02142.

11. ModernaTX, Inc. is a company organized and existing under the laws of the State of Delaware with a principal place of business at 325 Binney Street, Cambridge, Massachusetts, 02142. ModernaTX, Inc. is a wholly owned subsidiary of Moderna, Inc.

12. Moderna US, Inc. is a company organized and existing under the laws of the State of Delaware with a principal place of business at 5 Vaughn Drive, Princeton, New Jersey, 08540. Moderna US is a wholly owned subsidiary of Moderna, Inc.

13. On information and belief, CureVac SE is a corporation organized and existing under the laws of Germany, having a place of business at Friedrich-Miescher-Straße 15, 72076 Tübingen, Germany.

4

14.     On information and belief, CureVac Manufacturing GmbH is a corporation organized and existing under the laws of Germany, having a place of business at Friedrich-Miescher-Straße 15, 72076 Tübingen, Germany.

## NATURE OF ACTION

15.     Moderna seeks declaratory judgment under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that U.S. Patent No. 10,760,070 ("the '070 Patent") (D.I. 1-1); U.S. Patent No. 11,667,910 ("the '910 Patent") (D.I. 1-2); U.S. Patent No. 11,760,992 ("the '992 Patent") (D.I. 1-3); U.S. Patent No. 11,834,651 ("the '651 Patent") (D.I. 1-4); U.S. Patent No. 12,221,605 ("the '605 Patent") (D.I. 1-5)[4]; U.S. Patent No. 11,135,312 ("the '312 Patent") (D.I. 1-6)[5]; U.S. Patent No. 11,576,966 ("the '966 Patent") (D.I. 1-7); U.S. Patent No. 11,596,686 ("the '686 Patent") (D.I. 1-8); U.S. Patent No. 12,194,089 ("the '089 Patent") (D.I. 1-9); and U.S. Patent No. 12,390,523 ("the '523 Patent") (D.I. 1-10)[6] are invalid and/or not infringed.

## JURISDICTION AND VENUE

16.     This Court has exclusive subject matter jurisdiction over these Counterclaims for declaratory judgment pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 2201, and 2202 based on an actual controversy among the parties arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

---

[4] The '070, '910, '992, '651, and '605 Patents are collectively referred to herein as the "TFF Patents."
[5] The '312 Patent is referred to herein as the "GC Patent."
[6] The '966, '686, '089, and '523 Patents are collectively referred to herein as the "Variant Vaccine Patents."

17.     This Court has personal jurisdiction over CureVac at least because CureVac has consented to the personal jurisdiction of the Court by commencing its action for patent infringement in this Judicial District, as set forth in its Complaint.

18.     Venue in this Court is proper over CureVac in this District pursuant to at least 28 U.S.C. §§ 1391 and 1400.

19.     There is a real, immediate, and justiciable controversy among the parties concerning non-infringement and invalidity of the '070 Patent, the '910 Patent, the '992 Patent, the '651 Patent, the '605 Patent, the '312 Patent, the '966 Patent, the '686 Patent, the '089 Patent and the '523 Patent (together, "the Asserted Patents").  CureVac has alleged that Moderna infringes one or more claims of each of the Asserted Patents.

## FACTUAL BACKGROUND

### I.     Moderna's History of Innovation

#### A.     Moderna's Development of its mRNA Infectious Disease Vaccine Platform

20.     Moderna was founded in 2010 with a mission to pioneer medicines based on mRNA, focusing on both therapeutics and vaccines.  Moderna "set out to change the world and make mRNA medicines a reality for humanity" through substantial investment and years of research and development.[7]

21.     Just sixteen years ago, messenger RNA ("mRNA") medicines were a new and unproven technology.  From the beginning, Moderna recognized the transformative potential of mRNA technology, even when many doubted it.  Moderna discovered new ways to use mRNA technology to treat and prevent illnesses and diseases.[8]  Over the past sixteen years, Moderna has

---

[7] *Our story*, Moderna, Inc., https://www.modernatx.com/en-US/about-us/our-story (last visited July 16, 2026).
[8] *Our story*, Moderna, Inc., https://www.modernatx.com/en-US/about-us/our-story (last visited July 16, 2026).

worked diligently in its laboratories to pioneer several fundamental breakthroughs in the field of mRNA technology. These discoveries span all aspects of mRNA medicines—from the characteristics and design of the mRNA itself and the protein it encodes, to technologies to manufacture mRNA in sufficient quality and quantity, to the technologies to deliver mRNA to patients safely and effectively.

22. Built on that research, Moderna is developing medicines to treat and prevent a wide range of diseases—from infectious diseases like influenza and HIV, to autoimmune diseases and rare forms of cancer.

23. On this journey, Moderna faced significant scientific challenges as mRNA molecules are long, unstable, and cause undesirable immune reactions, making them difficult to work with. Discovering new ways to use mRNA required innovative solutions to ensure stability and safe and effective delivery. Part of Moderna's foundational research included advancing the solution to one of the fundamental challenges with mRNA medicines—namely that the body's own immune system can recognize mRNA as a foreign substance and attack it. In 2010, Moderna scientists began studying new chemical modifications to the mRNA that could better avoid provoking an immune response. That work led to the discovery that mRNA molecules with a specific modification in which uridine is replaced with 1-methylpseudouridine were surprisingly superior to other chemically modified mRNAs. A former top vaccine official at the U.S. Food and Drug Administration ("FDA") said that the chemical change Moderna pioneered is "the most important thing that people have done with mRNA vaccines."[9]

---

[9] Jon Cohen, *New Crop of mRNA Vaccines Aim for Accessibility*, 376 Science 120, 121 (2022), https://www.science.org/doi/epdf/10.1126/science.abq3935.

24.     Moderna also invested heavily in the development of lipid nanoparticles, or LNPs, which serve as protective carriers for the modified mRNA.  These advancements were critical to unlocking the lifesaving use of mRNA in vaccines.

25.     Starting in 2015, Moderna initiated its first-in-human dose of an mRNA vaccine (mRNA-1440), an H10N8 flu vaccine candidate.[10]  By 2017, Moderna initiated its first-in-human dosing for a combination vaccine to protect against both human metapneumovirus (hMPV virus) and parainfluenza virus.[11]  Then, in 2019, Moderna announced dosing the first antibody-encoded mRNA in a clinical trial.[12]  In short, since Moderna's founding in 2010, Moderna has been building the industry's leading mRNA technology platform.  These building blocks and continuous innovation are what positioned Moderna to achieve its swift and life-saving development of vaccines during a global pandemic.

**B.     Moderna's Betacoronavirus Vaccine Preparedness Platform**

26.     Beginning in the mid-2010s, Moderna's infectious-disease group focused on building a betacoronavirus mRNA vaccine platform that could be used as a rapid-response system for future betacoronavirus outbreaks.  Around 2014, when MERS emerged as a serious betacoronavirus threat with a high fatality rate, Moderna identified MERS as an ideal prototype for pandemic preparedness.  Scientists at Moderna pursued the then-unproved idea of using a nucleoside-modified mRNA formulated in lipid nanoparticles to deliver a large, full-length coronavirus spike protein, reasoning that a successful MERS vaccine could establish a broader blueprint for other betacoronaviruses.

---

[10] *Our story*, Moderna, Inc., https://www.modernatx.com/en-US/about-us/our-story (last visited July 16, 2026).

[11] *Our story*, Moderna, Inc., https://www.modernatx.com/en-US/about-us/our-story (last visited July 16, 2026).

[12] *Our story*, Moderna, Inc., https://www.modernatx.com/en-US/about-us/our-story (last visited July 16, 2026).

27.     Moderna tested its MERS mRNA-LNP vaccine preclinically *in vivo*. Those studies produced striking results: the modified mRNA-LNP vaccines elicited strong neutralizing antibody immune responses and provided complete protection against viral challenge. At a time when there was substantial skepticism that an mRNA-LNP vaccine could work for infectious disease— particularly using a full-length spike protein, which experts in the field believed could *enhance* disease caused by a betacoronavirus—those data gave Moderna confidence that it had not merely a MERS vaccine candidate, but a workable betacoronavirus platform.

28.     That betacoronavirus mRNA-LNP platform then guided the company's broader pandemic-preparedness efforts going forward. When SARS-CoV-2 emerged, Moderna did exactly what this preparedness program had been built to enable: it pivoted from the prototype viruses to the new outbreak pathogen, despite the differences between MERS and SARS, using years of prior work on betacoronavirus full-length spike vaccines as the foundation for a rapid response.

## C.     Moderna's Development of Spikevax®

29.     The SARS-CoV-2 virus, which can cause COVID-19, was first detected in December 2019. On January 10, 2020, the genetic sequence of the SARS-CoV-2 virus became public. Leveraging its decade of research and proprietary technologies, Moderna quickly responded when the pandemic struck, swiftly developing, manufacturing, and providing doses of Spikevax® to people around the world. Spikevax® uses Moderna's proprietary modified mRNA-LNP delivery technology and betacoronavirus preparedness platform, which Moderna developed and described years earlier, to deliver an mRNA for the full-length SARS-CoV-2 spike protein. For that groundbreaking work, Moderna's scientists were honored by the American Chemical

9

Society's 2022 Heroes of Chemistry Award, the highest honor for industrial chemical scientists, recognizing their "work developing formulations that protect against … COVID-19."[13]

30.      Following the declaration of a public health emergency in early 2020, others were predicting that vaccine development could take years.  But, based on its prior pandemic preparedness work, Moderna rose to the occasion and, on March 16, 2020, its Spikevax® COVID-19 vaccine was the first COVID-19 vaccine to be administered to a human patient in clinical trials, just two months after the genetic sequence for the virus that causes COVID-19 was published.

31.      Moderna entered into numerous agreements with the U.S. Government regarding Spikevax®.  For example, in April 2020, Moderna entered into a grant agreement with the Biomedical Advanced Research and Development Authority ("BARDA")—an office of HHS—to support clinical development of the mRNA-1273 vaccine.  BARDA chose to partner with Moderna to develop Spikevax® because "Moderna's mRNA-based vaccine platform has been used to rapidly prepare vaccine candidates against Cytomegalovirus, Zika, Respiratory Syncytial Virus, Influenza, Human Metapneumovirus and Parainfluenza virus."[14]

32.      Thereafter, Moderna entered a series of advance purchase and supply agreements with the U.S. Government for supply of COVID-19 vaccines.  For example:

- On April 16, 2020, Moderna entered into a contract with the U.S. Department of Health & Human Services that "requires [Moderna] to develop a mRNA vaccine to licensure for the prevention of COVID-19," which included "pre-clinical and Phase 2 and Phase 3 clinical studies sufficient to demonstrate the safety and efficacy of the proposed vaccine(s)."[15] This contract, Contract No. 75A50120000034 Development of an mRNA Vaccine for

---

[13] Nina Notman, *ACS names its 2022 Heroes of Chemistry*, Chemical & Engineering News (July 25, 2022), https://cen.acs.org/people/awards/ACS-names-2022-Heroes-Chemistry/100/web/2022/07.

[14] *Arbutus Biopharma Corp. et al. v. Moderna, Inc. et al.*, C.A. No. 22-252-JDW, D.I. 520-9, Ex. 9 (D. Del. Aug. 1, 2025) (Exhibit 1) at 9.

[15] *Id.* at 4.

SARS-CoV-2 ("0034 Contract"), incorporated by reference FAR 52.227-1, entitled "Authorization and Consent."[16]

- Once Moderna had obtained promising clinical results, on August 9, 2020, ModernaTX, Inc. entered into a supply contract with the Army Contracting Command of the U.S. Department of Defense, Contract No. W911QY20C0100 ("C0100 Contract").[17] Under the C0100 Contract, Moderna was obligated to produce and deliver doses of Spikevax® to the U.S. Government, with the option to supply additional doses.[18] The C0100 Contract specifically states that Moderna manufactured Spikevax® doses "for the United States Government."[19] The C0100 contract also incorporates by reference FAR 52.227-1, entitled "Authorization and Consent."[20]

- On July 28, 2022, Moderna entered into a booster purchase agreement (Contract No. W58P0522C0017).[21] The booster purchase agreement stated that: "The Department of Defense (DOD) and Department of Health and Human Services (DHHS) (collectively, the Government or USG) in support of the national emergency response to COVID-19 requires up to 300 million doses of Moderna US, Inc.'s mRNA vaccine to inoculate the general population against the SARS-CoV-2 Virus."[22] The booster purchase agreement further characterized Contract No. W911QY20C0100 as having been "awarded for the manufacturing and delivery of 500 million doses of Moderna COVID-19 Vaccine."[23]

33.    Pursuant to at least the C0100 contract, Moderna manufactured the COVID-19 vaccine for, and sold COVID-19 vaccine doses to, the U.S. Government. Moderna received emergency use authorization for Spikevax® in the United States from the Food & Drug Administration ("FDA") on December 18, 2020, less than a year after beginning development. Promptly thereafter, Moderna shipped Spikevax® doses to the U.S. Government pursuant to the C0100 Contract. On January 31, 2022, Moderna received full approval from the FDA for its Biologics License Application for Spikevax®.[24]

---

[16] *Id.* at 50.

[17] *Arbutus Biopharma Corp. et al. v. Moderna, Inc. et al.*, C.A. No. 22-252-JDW, D.I. 520-1, Ex. 1 (D. Del. Aug. 1, 2025) (Exhibit 2).

[18] *Id.*

[19] *Id.* at 19.

[20] *Id.* at 46 (also incorporating FAR clause 52.227-1 Alternate I).

[21] *Arbutus Biopharma Corp. et al. v. Moderna, Inc. et al.*, C.A. No. 22-252-JDW, D.I. 600-26, Ex. 114 (D. Del. Sept. 15, 2025) (Exhibit 3).

[22] *Id.* at 34 (C.1).

[23] *Id.* at 34-35 (C.1.2)

[24] Colleen Hussey, *Moderna Receives Full U.S. FDA Approval for COVID-19*

34.     Moderna has also supplied COVID-19 vaccines to the U.S. Government through the private market, for example to the Centers for Medicare & Medicaid Services ("CMS"), a "federal agency that provides health coverage to more than 160 million through Medicare, Medicaid, the Children's Health Insurance Program, and the Health Insurance Marketplace."[25]

35.     The flexibility of Moderna's betacoronavirus preparedness platform and the years of research Moderna invested in prior to the pandemic have allowed Moderna to rapidly respond as new variants of SARS-CoV-2 emerged.  Moderna continued to update its Spikevax® COVID-19 vaccine as the prevailing strains of SARS-CoV-2 circulating in the population changed.  As relevant here, CureVac points to six different versions of Spikevax®: (1) Spikevax® (original monovalent); (2) Spikevax® (bivalent BA.1); (3) Spikevax® (bivalent BA.4/BA.5); (4) Spikevax® (2023-2024 Formula); (5) Spikevax® (2024-2025 Formula); and (6) Spikevax® (2025-2026 Formula).[26]

## II.     CureVac's Patents

### A.     CureVac's TFF Patents

36.     CureVac's Complaint alleges infringement of one or more claims of each of the '070 Patent, the '910 Patent, the '992 Patent, the '651 Patent, and the '605 Patent ("the TFF Patents").  The TFF Patents collectively have 180 claims.  All five TFF Patents share the same specification, which describes methods for manufacturing RNA by transcribing linearized DNA, one or more tangential flow filtration ("TFF") steps to purify the resulting transcribed RNA, and an optional added TFF step for purifying linearized DNA prior to transcription.  The earliest possible effective filing date alleged on the face of the patents is May 29, 2015.

---

*Vaccine SPIKEVAX*, https://s29.q4cdn.com/435878511/files/doc_news/2022/01/31/Moderna-Receives-Full-U.S.-FDA-Approval-for-COVID-19-Vaccine-Spikevax-2022.pdf.
[25] *About Us*, CMS.GOV, https://www.cms.gov/about-cms.
[26] *See* D.I. 1, ¶¶ 31-51.

### 1.    The Technology Described in the TFF Patents Was Known in the Field

37.    Numerous prior art references disclosed DNA transcription methods with tangential flow filtration steps, anticipating or rendering obvious the TFF Patents' claims prior to the earliest possible effective filing date of the TFF Patents.

38.    CureVac's TFF Patents recite claims to an old technology. Tangential flow filtration is a longstanding, well-understood technology that has been used since the 1980s and is one of the most common techniques for purifying biological macromolecules on a process scale.[27] Long before the earliest possible effective filing date of the TFF Patents, the claimed process steps and operating conditions were well-known and routinely used by scientists.

39.    Moderna has been manufacturing and purifying RNA in quantities sufficient for therapeutic uses since well before CureVac's first application for the TFF Patents was filed. Indeed, Moderna has its own patent publications on TFF technology that predate CureVac's TFF Patent.

40.    Contrary to the allegations in its Complaint, CureVac is well aware that TFF technology was known prior to its alleged inventions. During prosecution, the Examiner originally rejected all claims as obvious over prior art in vitro transcription (IVT) and TFF methods. Following an amendment to claim use of a TFF membrane cassette, the Examiner's sole stated reason for allowing the claims was her finding that the prior art of record did not disclose a TFF step that used such a membrane cassette. However, while CureVac argued during prosecution of the TFF Patents that DNA purification using a TFF membrane cassette was a novel idea, these arguments were misleading at best.[28] The use of membrane cassettes for TFF has also been well-

---

[27] *E.g.*, International Patent Pub. No. WO 87/04169 (published Jul. 16, 1987); Raymond Gabler & Mary Ryan, *Processing Cell Lysate with Tangential Flow Filtration*, American Chemical Society (1985), available at https://pubs.acs.org/doi/pdf/10.1021/bk-1985-0271.ch001.
[28] '070 Patent File History, Applicant Amendment/Remarks dated March 14, 2020 at 6.

known in the industry since at least the early 2000s.  For example, the prior art reflected numerous DNA transcription and RNA purification methods incorporating TFF steps, including the use of membrane cassettes.  On information and belief, CureVac was aware of such prior art.

### 2. Moderna Does Not Infringe Any Valid Claim of CureVac's TFF Patents

41.    The manufacture of Moderna's Spikevax® mRNA vaccines has not infringed and does not infringe any valid claim of CureVac's TFF patents.  Moderna independently developed all Accused Products.

42.    Before CureVac filed the applications that led to the TFF Patents, Moderna had independently developed and implemented its own manufacturing processes and technology for DNA-template transcription, purification, and large-scale mRNA manufacturing.  Moderna has its own patent applications on that technology that predate CureVac's TFF Patents.  CureVac cannot prevent Moderna from practicing technology Moderna developed long before CureVac's alleged invention.

### 3. The Government Has a License to the TFF Patents

43.    CureVac's claimed inventions in the TFF Patents were funded by the U.S. Government, and the U.S. Government has a license to them.

44.    The '070 Patent states: "The present invention was made with support from the Government under Agreement No. HR0011-11-3-0001 awarded by DARPA.  The Government has certain rights in the invention."[29]

---

[29] '070 Patent at 1:6-9.

45.     The '910 Patent states: "This invention was made with government support under HR0011-11-3-0001 awarded by the Defense Advanced Research Projects Agency.    The government has certain rights in the invention."[30]

46.     The '992 Patent states: "This invention was made with government support under HR0011-11-3-0001 awarded by the Defense Advanced Research Projects Agency.    The government has certain rights in the invention."[31]

47.     The '651 Patent states: "This invention was made with government support under HR0011-11-3-0001 awarded by the Defense Advanced Research Projects Agency.    The government has certain rights in the invention."[32]

48.     The '605 Patent states: "This invention was made with government support under HR0011-11-3-0001 awarded by the Defense Advanced Research Projects Agency.    The government has certain rights in the invention."[33]

49.     On information and belief, pursuant to the Bayh-Dole Act and related Federal Acquisition Regulations, the government has "a nonexclusive, nontransferable, irrevocable, paid-up license to practice, or have practiced for or on its behalf, the subject invention throughout the world."[34]

B.     CureVac's GC Patent

1.     The Technology Described in the GC Patent Was Known in the Field

---

[30] '910 Patent at 1:15-18.
[31] '992 Patent at 1:17-20.
[32] '651 Patent at 1:19-22.
[33] '605 Patent at 1:22-25.
[34] FAR 52.227-11(d)(2); *see* 35 U.S.C. § 202(c)(4).

50.    CureVac's claimed methods are neither novel nor inventive.  Optimization of coding sequence has been practiced in the art since the 1980s[35]—well before the GC Patent's alleged earliest effective filing date of June 5, 2001.  As just two examples—and as BioNTech SE, CureVac's corporate parent previously acknowledged—Graf et al., *Concerted Action of Multiple cis-Acting Sequences Is Required for Rev Dependence of Late HIV-1 Gene Expression*, Journal of Virology (2000) ("Graf 2000") and WO 99/20774 (WO '744) both pre-date the GC Patent and disclose every single limitation of at least claim 1, at least under CureVac's apparent application of the claim.[36]

51.    Graf 2000 was published on November 15, 2000, and describes a stabilized HIV-1 *gag* mRNA wherein the G/C content was increased by 22% relative to the original coding sequence and "AU-rich repressor sequences" were eliminated.  Graf 2000, at 10822, 10825.  WO '744 was published on April 29, 1999, and discloses producing a stabilized mRNA encoding the malarial MSP-1 protein, again with increased G/C content relative to the original coding sequence (up to about 26.3%) and eliminated AU-rich instability motifs AUUUA.

**2.    Moderna Does Not Infringe Any Valid Claim of CureVac's GC Patent**

---

[35] *See, e.g.*, Paul M. Sharp & Wen-Hsiung Li, *The Codon Adaptation Index—A Measure of Directional Synonymous Codon Usage Bias, and Its Potential Applications*, 15 Nucleic Acids Res. 1281 (1987) (The Codon Adaptation Index "is useful for predicting the level of expression of a gene, for assessing the adaptation of viral genes to their hosts, and for making comparisons of codon usage in different organisms.  The index may also give an approximate indication of the likely success of heterologous gene expression.").

[36] Defendant's Factual Contentions at 1, 8, *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222, ECF No. 804-12 (E.D. Va. Feb. 25, 2025) ("BioNTech SE, BioNTech Manufacturing GmbH, and Pfizer, Inc. (collectively 'Defendants') provide the following statement of contentions . . . Claim 1 of the '312 patent is invalid as anticipated under 35 U.S.C. § 102 by Graf et al., *Concerted Action of Multiple cis-Acting sequences is Required for Rev Dependence of Late Human Immunodeficiency Virus Type 1 Gene Expression*, 74(22) J. Virol. 10822-26 (2000) ("Graf 2000"). . . .  Claim 1 of the '312 patent is invalid as anticipated under 35 U.S.C. § 102 by International Publication No. WO1999/020774 . . . .").

52.     Moderna has not infringed and is not infringing any valid claim of CureVac's GC Patent.  For example, the accused vaccines do not satisfy the limitations of claim 1 of the GC Patent.

53.     Moderna independently researched, developed, and implemented the mRNA sequences for the Accused Products using its own codon optimization processes.

C.     **CureVac's Variant Vaccine Patents**

54.     CureVac's Complaint alleges infringement of one or more claims of each of the '966, '686, '089, and '523 Patents ("the Variant Vaccine Patents").  The Variant Vaccine Patents collectively have 217 claims.[37]  All four Variant Vaccine Patents share the same specification, which describes mRNA-based SARS-CoV-2 vaccine compositions comprising a pre-fusion stabilized spike protein with mutations formulated in lipid nanoparticles, along with methods of eliciting an immune response by administering the vaccine.  The earliest possible filing date alleged on the face of the patents is Feb. 4, 2020.

### 1.     The Technology Described in the Variant Vaccine Patents Was Known in the Field.

55.     CureVac's Variant Vaccine Patent claims are neither novel nor inventive.  Numerous prior art references disclosed lipid nanoparticle-formulated mRNA vaccines encoding SARS-CoV-2 spike proteins, anticipating or rendering obvious the scope of the asserted patent claims before the earliest possible effective filing dates of the asserted patents.

56.     As described above, Moderna has been working on its betacoronavirus mRNA vaccine platform since 2014, long before the 2020 filing date of CureVac's Variant Vaccine Patents.

---

[37] For the '686 patent, a statutory disclaimer was filed for claims 19-25 and 27-30. *See* Statutory Disclaimer filed on May 24, 2024.  (Exhibit 4).

Moderna's own patents and publications predating CureVac's Variant Vaccine Patents describe lipid nanoparticle-formulated mRNA vaccines encoding SARS-CoV-2 spike proteins.

### 2. Moderna Does Not Infringe Any Valid Claim of CureVac's Variant Vaccine Patents

57.    Moderna has not infringed and is not infringing any valid claim of the Variant Vaccine Patents. Moderna independently developed all Accused Products without reference to the Variant Vaccine Patents.

58.    Before CureVac filed the applications that led to the Variant Vaccine Patents, Moderna had independently researched, developed and implemented its own betacoronavirus mRNA vaccine technology, including LNP-formulated mRNA vaccines encoding the full-length SARS-CoV-2 spike protein with various mutations. CureVac cannot prevent Moderna from practicing technology Moderna developed long before CureVac's alleged invention.

### III.    CureVac Failed to Commercialize a COVID-19 Vaccine

59.    CureVac initially attempted development of its own mRNA COVID-19 vaccine candidate, CVnCoV. In contrast to Moderna's modified mRNA COVID-19 vaccine—which replaces the uridine with 1-methylpseudouridine—CureVac's CVnCoV used unmodified uridine. On June 18, 2020, three months after Moderna began its clinical trials, CureVac entered phase 1 of a clinical trial to evaluate CVnCoV.[38] And on December 11, 2020, around the time Moderna first received emergency use authorization for Spikevax®, CureVac entered phase 2b/3 of the trial to assess CVnCoV's efficacy.[39]

---

[38] *See A Study to Evaluate the Safety, Reactogenicity and Immunogenicity of Vaccine CVnCoV in Healthy Adults for COVID-19*, ClinicalTrials.gov (Jan. 30, 2023), https://clinicaltrials.gov/study/NCT04449276.

[39] *See A Phase 2b/3, Randomized, Observer-Blinded, Placebo-Controlled, Multicenter Clinical Study Evaluating the Efficacy and Safety of Investigational SARS-CoV-2 mRNA Vaccine CVnCoV in Adults 18 Years of Age and Older*, ClinicalTrials.gov (Apr. 29, 2024), https://clinicaltrials.gov/study/NCT04652102.

60.     CVnCoV was not a successful COVID-19 vaccine. On June 16, 2021, CureVac announced results from its Phase 2b/3 clinical trial showing that CVnCoV achieved only 47% vaccine efficacy.[40] This was far lower than Moderna's successful COVID-19 vaccine, which achieved more than 90% efficacy.

61.     On October 11, 2021, CureVac withdrew its application with the European Medicines Agency and abandoned efforts to bring CVnCoV to market.[41] To this day, CureVac has not obtained regulatory approval for any COVID-19 vaccine of any kind.

## IV.    CureVac's Patents Are Unenforceable Against Moderna Due To Unclean Hands

62.     CureVac's assertion of these patents against Moderna is stained by its improper conduct.

63.     As discussed above, CureVac previously asserted many of these same patents—including the '070 Patent, the '910 Patent, the '312 Patent, the '966 Patent, and the '686 Patent—against BioNTech.[42] As part of that litigation, BioNTech repeatedly asserted that those patents were invalid, including in its answer to counterclaims,[43] its contentions,[44] in its expert reports,[45] in

---

[40] Elie Dolgin, *COVID Vaccine Flop Spotlights mRNA Design Challenges*, 594 Nature 483 (2021) (Exhibit 5).

[41] *See Withdrawal of the Marketing Authorisation Application for CVnCoV*, European Medicines Agency (Oct. 14, 2021), archived at https://web.archive.org/web/20211014143310/https://www.ema.europa.eu/en/documents/withdrawal-letter/withdrawal-letter-cvncov_en.pdf.

[42] *CureVac SE v. BioNTech SE*, No. 2:23-cv-0222 (E.D. Va.).

[43] BioNTech's Counterclaims and Answer to CureVac's Counterclaims, *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222, ECF No. 104 (E.D. Va. June 23, 2023).

[44] BioNTech's Factual Contentions, *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222, ECF No. 804-12 (E.D. Va. Feb. 25, 2025).

[45] *See generally*, Opinion and Order Regarding Motions in Limine, *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222, ECF No. 753 (E.D. Va. Feb. 14, 2025).

its summary judgment briefing,[46] in its supplemental identification of prior art-based invalidity arguments,[47] and in its notice of defenses to be presented at trial.[48]

64.    CureVac, however, continued to prosecute patents in the TFF Patent family and the Variant Vaccine Patent family during the course of the *BioNTech* litigation without disclosing the invalidity arguments from the *BioNTech* litigation to the Patent Office.  In particular, CureVac obtained the '992 Patent (filed August 16, 2022; issued Sept. 19, 2023), '651 Patent (filed May 16, 2023; issued Dec. 5, 2023), and '605 Patent (filed Oct. 23, 2023; issued Feb. 11, 2025) in the TFF Patent family and the '089 Patent (filed Feb. 3, 2021; issued Jan. 14, 2025) in the Variant Vaccine Patent family during the *BioNTech* litigation while it was aware of BioNTech's invalidity positions but without disclosing them.

65.    Even after the *BioNTech* litigation settled and BioNTech became CureVac's corporate parent, CureVac still failed to disclose the invalidity litigation positions of its own corporate parent.  CureVac obtained the '523 Patent (filed Jan. 1, 2023; issued Aug. 19, 2025) in the Variant Vaccine Patent family after the conclusion of the *BioNTech* litigation without disclosing BioNTech's invalidity positions to the Patent Office.

1.    The arguments set forth by BioNTech in the *BioNTech* litigation against the '070, '910, '966, and '686 Patents were material to the patentability of the '992, '651, '605, '089, and '523 Patents and not cumulative over the art and arguments actually considered by the Patent Office.

---

[46] BioNTech's Motion for Partial Summary Judgment, *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222, ECF No. 490 (E.D. Va. Dec. 20, 2024).
[47] *See generally*, Memorandum Order Denying CureVac's Motion to Strike BioNTech's Supplemental Identification of Seven Prior Art-Based Invalidity Arguments Per Asserted Claim, *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222, ECF No. 424 (E.D. Va. Oct. 16, 2024).
[48] Notice by BioNTech of Affirmative Patent Invalidity Defenses to be Presented at Trial, *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222, ECF No. 795 (E.D. Va. Feb. 24, 2025).

2.      The *BioNTech* litigation was a major litigation for CureVac.  On information and belief, it was, at the time, the only litigation in which CureVac had ever asserted infringement of its patents.  On information and belief, the attorneys in charge of overseeing patent prosecution for CureVac were aware of the *BioNTech* litigation and the fact that BioNTech was challenging the validity of the patents asserted there.  Additionally, on information and belief, the attorneys prosecuting CureVac's patents were following the *BioNTech* litigation and the invalidity positions asserted therein, as the *BioNTech* litigation was the first time any patents in the TFF and Variant Vaccine Patent families had ever been litigated.

3.      On information and belief, no one ever disclosed to the Patent Office that the entity that is now CureVac's own corporate parent believed that claims in the same families and highly related to the claims of the '992, '651, '605, '089, and '523 Patents were invalid at the time the claims of the '992, '651, '605, '089, and '523 Patents were being prosecuted.

4.      CureVac cannot be allowed to benefit from follow-on patents obtained without disclosing to the Patent Office the invalidity arguments that its own corporate parent vigorously advocated for with respect to related patents.

5.      In particular, the '523 patent is unenforceable due to inequitable conduct.  The application leading to the '523 patent was filed on January 1, 2023.  CureVac and its Senior Director of IP Management, Marshall Byrd, were certainly aware of BioNTech's invalidity positions at least as of February 25, 2025, when BioNTech served its Notice of Affirmative Patent Invalidity Defenses to be Presented at Trial.[49]  On information and belief, Amanda Schnepp, the attorney of record prosecuting the application leading to the '523 patent, was likewise aware of BioNTech's invalidity positions at least as of February 25, 2025.  However, even after the

---

[49] *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222, ECF No. 795 (E.D. Va. Feb. 24, 2025).

*BioNTech* litigation settled and it was announced that BioNTech would become CureVac's corporate parent, CureVac, Marshall Byrd, and Amanda Schnepp, each failed to disclose BioNTech's invalidity arguments to the Patent Office during the prosecution of the '523 patent. On information and belief, and on the basis that it is the single most reasonable inference from the facts and circumstances alleged herein, CureVac, Marshall Byrd, and Amanda Schnepp deliberately withheld BioNTech's invalidity positions with the intent to deceive the Patent Office. But for that failure to disclose, the '523 patent would not have issued. The '523 patent issued on August 19, 2025, without the Patent Office ever having considered the invalidity statements of CureVac's announced corporate parent.

6. CureVac's hands are also unclean as to the '070, '910, '312, '966, and '686 Patents that CureVac asserted against BioNTech. In or about March 2023, CureVac, through its attorney Mark Izraelewicz, actually promised Moderna that it would not sue Moderna on the patents asserted against BioNTech against Moderna. On information and belief, CureVac apparently (and correctly) believed at the time that there was no basis to assert those patents against Moderna. CureVac—now that it is owned by BioNTech—has gone back on its word, weaponizing the very same inventions BioNTech previously argued were invalid to improperly harass Moderna in successive, baseless lawsuits seeking credit for Moderna's groundbreaking work.

**COUNT I**
**DECLARATORY JUDGMENT OF INVALIDITY AND/OR**
**UNENFORCEABILITY OF THE '070 PATENT**

7. Moderna repeats and realleges paragraphs 1-71 above as if fully stated herein.

8. CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '070 Patent.

9. The claims of the '070 Patent are invalid for failing to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of

22

§§ 101, 102, 103, and/or 112, and/or any judicially created requirements for patentability and enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in 35 U.S.C. § 282.

10.    For example, with respect to §§ 102 and 103, the claims of the '070 Patent are invalid in view of prior work in the field, including prior art patents and printed publications disclosing and/or rendering obvious the claimed methods.

11.    For example, before the effective filing date, the prior art reflected design and testing of RNA purification methods using tangential flow filtration.

12.    As a further example, with respect to § 112, the claims of the '070 Patent, are invalid for lack of written description support, lack of enablement, and/or indefiniteness.

13.    Moderna is entitled to a declaratory judgment from this Court that each asserted claim of the '070 Patent is invalid.

<u>**COUNT II**</u>
<u>**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '070 PATENT**</u>

14.    Moderna repeats and realleges paragraphs 1-78 above as if fully stated herein.

15.    CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '070 Patent.

16.    Moderna and its Accused Spikevax® Products has not infringed, is not infringing, and will not infringe any valid claim of the '070 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

17.    Moderna is entitled to a declaratory judgment that Moderna and its Accused Spikevax® Products has not, does not, and will not infringe, either directly or indirectly, and has not infringed, either directly or indirectly, any valid claim of the '070 Patent, either literally or under the doctrine of equivalents.

23

## COUNT III
## DECLARATORY JUDGMENT OF INVALIDITY AND/OR UNENFORCEABILITY OF THE '910 PATENT

18. Moderna repeats and realleges paragraphs 1-82 above as if fully stated herein.

19. CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '910 Patent.

20. The claims of the '910 Patent are invalid for failing to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of §§ 101, 102, 103, and/or 112, and/or any judicially created requirements for patentability and enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in 35 U.S.C. § 282.

21. For example, with respect to §§ 102 and 103, the claims of the '910 Patent are invalid in view of prior work in the field, including prior art patents and printed publications disclosing and/or rendering obvious the claimed methods.

22. For example, before the effective filing date, the prior art reflected design and testing of RNA purification methods using tangential flow filtration.

23. As a further example, with respect to § 112, the claims of the '910 Patent, are invalid for lack of written description support, lack of enablement, and/or indefiniteness.

24. Moderna is entitled to a declaratory judgment from this Court that each asserted claim of the '910 Patent is invalid.

## COUNT IV
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '910 PATENT

25. Moderna repeats and realleges paragraphs 1-89 above as if fully stated herein.

26. CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '910 Patent.

24

27.     Moderna and its Accused Spikevax® Products has not infringed, is not infringing, and will not infringe any valid claim of the '910 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

28.     Moderna is entitled to a declaratory judgment that Moderna and its Accused Spikevax® Products has not, does not, and will not infringe, either directly or indirectly, any valid claim of the '910 Patent, either literally or under the doctrine of equivalents.

## COUNT V
## DECLARATORY JUDGMENT OF INVALIDITY AND/OR UNENFORCEABILITY OF THE '992 PATENT

29.     Moderna repeats and realleges paragraphs 1-93 above as if fully stated herein.

30.     CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '992 Patent.

31.     The claims of the '992 Patent are invalid for failing to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of §§ 101, 102, 103, and/or 112, and/or any judicially created requirements for patentability and enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in 35 U.S.C. § 282.

32.     For example, with respect to §§ 102 and 103, the claims of the '992 Patent are invalid in view of prior work in the field, including prior art patents and printed publications disclosing and/or rendering obvious the claimed methods.

33.     For example, before the effective filing date, the prior art reflected design and testing of RNA purification methods using tangential flow filtration.

34.     As a further example, with respect to § 112, the claims of the '992 Patent are invalid for lack of written description support, lack of enablement, and/or indefiniteness.

35.     Moderna is entitled to a declaratory judgment from this Court that each asserted claim of the '992 Patent is invalid.

## COUNT VI
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '992 PATENT

36.     Moderna repeats and realleges paragraphs 1-100 above as if fully stated herein.

37.     CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '992 Patent.

38.     Moderna and its Accused Spikevax® Products has not infringed, is not infringing, and will not infringe any valid claim of the '992 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

39.     Moderna is entitled to a declaratory judgment that Moderna and its product Spikevax® has not, does not, and will not infringe, either directly or indirectly, any valid claim of the '992 Patent, either literally or under the doctrine of equivalents.

## COUNT VII
## DECLARATORY JUDGMENT OF INVALIDITY AND/OR
## UNENFORCEABILITY OF THE '651 PATENT

40.     Moderna repeats and realleges paragraphs 1-104 above as if fully stated herein.

41.     CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '651 Patent.

42.     The claims of the '651 patent are invalid for failing to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of §§ 101, 102, 103, and/or 112, and/or any judicially created requirements for patentability and enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in 35 U.S.C. § 282.

43. For example, with respect to §§ 102 and 103, the claims of the '651 Patent are invalid in view of prior work in the field, including prior art patents and printed publications disclosing and/or rendering obvious the claimed methods.

44. For example, before the effective filing date, the prior art reflected design and testing of RNA purification methods using tangential flow filtration.

45. As a further example, with respect to § 112, the claims of the '651 Patent are invalid for lack of written description support, lack of enablement, and/or indefiniteness.

46. Moderna is entitled to a declaratory judgment from this Court that each asserted claim of the '651 Patent is invalid.

## COUNT VIII
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '651 PATENT

47. Moderna repeats and realleges paragraphs 1-111 above as if fully stated herein.

48. CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '651 Patent.

49. Moderna and its Accused Spikevax® Products has not infringed, is not infringing, and will not infringe any valid claim of the '651 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

50. Moderna is entitled to a declaratory judgment that Moderna and its Accused Spikevax® Products has not, does not, and will not infringe, either directly or indirectly, any valid claim of the '651 Patent, either literally or under the doctrine of equivalents.

## COUNT IX
## DECLARATORY JUDGMENT OF INVALIDITY AND/OR
## UNENFORCEABILITY OF THE '605 PATENT

51. Moderna repeats and realleges paragraphs 1-115 above as if fully stated herein.

52.    CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '605 Patent.

53.    The claims of the '605 patent are invalid for failing to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of §§ 101, 102, 103, and/or 112, and/or any judicially created requirements for patentability and enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in 35 U.S.C. § 282.

54.    For example, with respect to §§ 102 and 103, the claims of the '605 Patent are invalid in view of prior work in the field, including prior art patents and printed publications disclosing and/or rendering obvious the claimed methods.

55.    For example, before the effective filing date, the prior art reflected design and testing of RNA purification methods using tangential flow filtration.

56.    As a further example, with respect to § 112, the claims of the '605 Patent are invalid for lack of written description support, lack of enablement, and/or indefiniteness.

57.    Moderna is entitled to a declaratory judgment from this Court that each asserted claim of the '605 Patent is invalid.

## COUNT X
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '605 PATENT

58.    Moderna repeats and realleges paragraphs 1-122 above as if fully stated herein.

59.    CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '605 Patent.

60.    Moderna and its Accused Spikevax® Products has not infringed, is not infringing, and will not infringe any valid claim of the '605 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

28

61.    Moderna is entitled to a declaratory judgment that Moderna and its Accused Spikevax® Products has not, does not, and will not infringe, either directly or indirectly, any valid claim of the '605 Patent, either literally or under the doctrine of equivalents.

**COUNT XI**
**DECLARATORY JUDGMENT OF INVALIDITY AND/OR UNENFORCEABILITY OF THE '312 PATENT**

62.    Moderna repeats and realleges paragraphs 1-126 above as if fully stated herein.

63.    CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '312 Patent.

64.    The claims of the '312 Patent are invalid for failing to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of §§ 101, 102, 103, and/or 112, and/or any judicially created requirements for patentability and enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in 35 U.S.C. § 282.

65.    For example, with respect to §§ 102 and 103, the claims of the '312 Patent are invalid in view of prior work in the field, including prior art patents and printed publications disclosing and/or rendering obvious the claimed methods.

66.    For example, before the effective filing date, the prior art reflected design and testing of methods for stabilizing mRNA by increasing G/C content.

67.    As a further example, with respect to § 112, the claims of the '312 Patent are invalid for lack of written description support, lack of enablement, and/or indefiniteness.

68.    Moderna is entitled to a declaratory judgment from this Court that each asserted claim of the '312 Patent is invalid.

**COUNT XII**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '312 PATENT**

29

69.     Moderna repeats and realleges paragraphs 1-133 above as if fully stated herein.

70.     CureVac has brought claims against Moderna alleging infringement of "one or more claims" of the '312 Patent.

71.     Moderna and its Accused Spikevax® Products has not infringed, is not infringing, and will not infringe any valid claim of the '312 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

72.     Moderna is entitled to a declaratory judgment that Moderna and its Accused Spikevax® Products has not, does not, and will not infringe, either directly or indirectly, any valid claim of the '312 Patent, either literally or under the doctrine of equivalents.

**COUNT XIII**
**DECLARATORY JUDGMENT OF INVALIDITY AND/OR**
**UNENFORCEABILITY OF THE '966 PATENT**

73.     Moderna repeats and realleges paragraphs 1-137 above as if fully stated herein.

74.     CureVac has brought claims against Moderna alleging infringement of "at least Claim 1" of the '966 Patent.

75.     The claims of the '966 Patent are invalid for failing to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of §§ 101, 102, 103, and/or 112, and/or any judicially created requirements for patentability and enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in 35 U.S.C. § 282.

76.     For example, with respect to §§ 102 and 103, the claims of the '966 Patent are invalid in view of prior work in the field, including prior art patents and printed publications disclosing and/or rendering obvious the claimed compositions and methods.

77.     For example, before the effective filing date, the prior art disclosed lipid nanoparticle-formulated mRNA vaccines encoding mutated SARS-CoV-2 spike protein.

78.    As a further example, with respect to § 112, the claims of the '966 Patent are invalid for lack of written description support, lack of enablement, and/or indefiniteness.

79.    Moderna is entitled to a declaratory judgment from this Court that each asserted claim of the '966 Patent is invalid.

**COUNT XIV**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '966 PATENT**

80.    Moderna repeats and realleges paragraphs 1-144 above as if fully stated herein.

81.    CureVac has brought claims against Moderna alleging infringement of "at least Claim 1" of the '966 Patent.

82.    Moderna and its Accused Spikevax® Products has not infringed, is not infringing, and will not infringe any valid claim of the '966 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

83.    Moderna is entitled to a declaratory judgment that Moderna and its Accused Spikevax® Products has not, does not, and will not infringe, either directly or indirectly, any valid claim of the '966 Patent, either literally or under the doctrine of equivalents.

**COUNT XV**
**DECLARATORY JUDGMENT OF INVALIDITY AND/OR**
**UNENFORCEABILITY OF THE '686 PATENT**

84.    Moderna repeats and realleges paragraphs 1-148 above as if fully stated herein.

85.    CureVac has brought claims against Moderna alleging infringement of "at least Claim 1" of the '686 Patent.

86.    The claims of the '686 Patent are invalid for failing to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of §§ 101, 102, 103, and/or 112, and/or any judicially created requirements for patentability and

enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in 35 U.S.C. § 282.

87.     For example, with respect to §§ 102 and 103, the claims of the '686 Patent are invalid in view of prior work in the field, including prior art patents and printed publications disclosing and/or rendering obvious the claimed compositions and methods.

88.     For example, before the effective filing date, the prior art disclosed lipid nanoparticle-formulated mRNA vaccines encoding mutated SARS-CoV-2 spike protein.

89.     As a further example, with respect to § 112, the claims of the '686 Patent are invalid for lack of written description support, lack of enablement, and/or indefiniteness.

90.     Moderna is entitled to a declaratory judgment from this Court that each asserted claim of the '686 Patent is invalid.

**COUNT XVI**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '686 PATENT**

91.     Moderna repeats and realleges paragraphs 1-155 above as if fully stated herein.

92.     CureVac has brought claims against Moderna alleging infringement of "at least Claim 1" of the '686 Patent.

93.     Moderna and its Accused Spikevax® Products has not infringed, is not infringing, and will not infringe any valid claim of the '686 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

94.     Moderna is entitled to a declaratory judgment that Moderna and its Accused Spikevax® Products has not, does not, and will not infringe, either directly or indirectly, any valid claim of the '686 Patent, either literally or under the doctrine of equivalents.

**COUNT XVII**
**DECLARATORY JUDGMENT OF INVALIDITY AND/OR**
**UNENFORCEABILITY OF THE '089 PATENT**

32

95.    Moderna repeats and realleges paragraphs 1-159 above as if fully stated herein.

96.    CureVac has brought claims against Moderna alleging infringement of "at least Claim 1" of the '089 Patent.

97.    The claims of the '089 Patent are invalid for failing to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of §§ 101, 102, 103, and/or 112, and/or any judicially created requirements for patentability and enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in 35 U.S.C. § 282.

98.    For example, with respect to §§ 102 and 103, the claims of the '089 Patent are invalid in view of prior work in the field, including prior art patents and printed publications disclosing and/or rendering obvious the claimed compositions and methods.

99.    For example, before the effective filing date, the prior art disclosed lipid nanoparticle-formulated mRNA vaccines encoding mutated SARS-CoV-2 spike protein.

100.    As a further example, with respect to § 112, the claims of the '089 Patent are invalid for lack of written description support, lack of enablement, and/or indefiniteness.

101.    Moderna is entitled to a declaratory judgment from this Court that each asserted claim of the '089 Patent is invalid.

<u>**COUNT XVIII**</u>
<u>**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '089 PATENT**</u>

102.    Moderna repeats and realleges paragraphs 1-166 above as if fully stated herein.

103.    CureVac has brought claims against Moderna alleging infringement of "at least Claim 1" of the '089 Patent.

33

104.    Moderna and its Accused Spikevax® Products has not infringed, is not infringing, and will not infringe any valid claim of the '089 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

105.    Moderna is entitled to a declaratory judgment that Moderna and its Accused Spikevax® Products has not, does not, and will not infringe, either directly or indirectly, any valid claim of the '089 Patent, either literally or under the doctrine of equivalents.

<u>**COUNT XIX**</u>
<u>**DECLARATORY JUDGMENT OF INVALIDITY AND/OR**</u>
<u>**UNENFORCEABILITY OF THE '523 PATENT**</u>

106.    Moderna repeats and realleges paragraphs 1-170 above as if fully stated herein.

107.    CureVac has brought claims against Moderna alleging infringement of "at least Claim 1" of the '523 Patent.

108.    The claims of the '523 Patent are invalid for failing to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of §§ 101, 102, 103, and/or 112, and/or any judicially created requirements for patentability and enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in 35 U.S.C. § 282.

109.    For example, with respect to §§ 102 and 103, the claims of the '523 Patent are invalid in view of prior work in the field, including prior art patents and printed publications disclosing and/or rendering obvious the claimed compositions and methods.

110.    For example, before the effective filing date, the prior art disclosed lipid nanoparticle-formulated mRNA vaccines encoding mutated SARS-CoV-2 spike protein.

111.    As a further example, with respect to § 112, the claims of the '523 Patent are invalid for lack of written description support, lack of enablement, and/or indefiniteness.

34

112.    Moderna is entitled to a declaratory judgment from this Court that each asserted claim of the '523 Patent is invalid.

113.    Moderna is further entitled to a declaratory judgment from this Court that the '523 Patent is unenforceable due to inequitable conduct.  For example, on information and belief, CureVac, Marshall Byrd, and Amanda Schnepp deliberately withheld BioNTech's invalidity positions from the Patent Office during the prosecution of the '523 Patent, even though they were material, harmful statements made by the entity soon to be CureVac's owner.

## COUNT XX
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '523 PATENT

114.    Moderna repeats and realleges paragraphs 1-178 above as if fully stated herein.

115.    CureVac has brought claims against Moderna alleging infringement of "at least Claim 1" of the '523 Patent.

116.    Moderna and its product Spikevax® has not infringed, is not infringing, and will not infringe any valid claim of the '523 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

117.    Moderna is entitled to a declaratory judgment that Moderna and its product Spikevax® has not, does not, and will not infringe, either directly or indirectly, any valid claim of the 523 Patent, either literally or under the doctrine of equivalents.

## COUNT XXI
## DECLARATORY JUDGMENT UNDER 28 U.S.C. § 1498

118.    Moderna repeats and realleges paragraphs 1-182 above as if fully stated herein.

119.    Under 28 U.S.C. § 1498(a), CureVac has no claim against Moderna as to any use or manufacture of doses of Spikevax® vaccines that were made "for the Government" and "with the authorization or consent of the Government."

120.    Based on CureVac's Complaint, Moderna understands that CureVac disputes that it has no claim against Moderna to the extent that, pursuant to Moderna's contracts with the U.S. Government, certain use or manufacture of one or more of its Spikevax® vaccines was done for the U.S. Government and with the authorization or consent of the U.S. Government.

121.    By virtue of the above facts, an actual controversy has arisen and now exists between Moderna and CureVac as to whether CureVac has a claim against Moderna to the extent that, pursuant to Moderna's contracts with the U.S. Government, certain use or manufacture of one or more of its Spikevax® vaccines was done for the U.S. Government and with the authorization or consent of the U.S. Government.

122.    Moderna requests a judicial determination that CureVac has no claim against Moderna to the extent that, pursuant to Moderna's contracts with the U.S. Government, certain use or manufacture of one or more of its Spikevax® vaccines was done for the U.S. Government and with the authorization or consent of the U.S. Government.  Such a declaratory judgment is necessary and appropriate at this time in order to determine the rights and legal relations of the parties, pursuant to 28 U.S.C. § 2201.

### COUNT XXII
### DECLARATORY JUDGMENT THAT GOVERNMENT LICENSE SHIELDS MODERNA FROM LIABILITY FOR ANY SUPPLY TO U.S. GOVERNMENT

123.    Moderna repeats and realleges paragraphs 1-187 above as if fully stated herein.

124.    The U.S. Government has a license from CureVac to practice and have practiced each of the TFF Patents.

125.    The U.S. Government contracted with Moderna for supply of hundreds of millions of doses of its Spikevax® vaccines, and Moderna supplied its Spikevax® vaccines to the U.S. Government pursuant to those contracts.  Furthermore, Moderna has also sold vaccines to U.S. Government agencies, such as CMS, on the commercial market.  Moderna cannot be held liable

36

for any patent infringement related to its supply or sales to the U.S. Government. Any use by or supply to the U.S. Government is licensed and any use by others after supply to the U.S. government is exhausted by that license.

126. Based on CureVac's Complaint, which seeks damages on supply and sales to the U.S. Government, Moderna understands that CureVac disputes that Moderna is liable for any infringement related to this supply and an actual controversy has arisen and now exists between Moderna and CureVac on this issue.

127. Moderna requests a judicial determination that Moderna is not liable for any infringement related to its supply of the Accused Products to the U.S. Government. Such a declaratory judgment is necessary and appropriate at this time in order to determine the rights and legal relations of the parties, pursuant to 28 U.S.C. § 2201.

**COUNT XXIII**
**DECLARATORY JUDGMENT FOR BREACH OF CONTRACT**

128. Moderna repeats and realleges paragraphs 1-192 above as if fully stated herein.

129. For each of the TFF Patents, the U.S. Government has a license from CureVac to practice and have practiced for or on behalf of the United States. On information and belief, in exchange, CureVac received funding for research leading to the claimed inventions from the United States.

130. The U.S. Government contracted with Moderna for supply of hundreds of millions of doses of Spikevax®, and Moderna supplied Spikevax® to the U.S. Government pursuant to those contracts.

131. Moderna's manufacture and sale of Spikevax® for or on behalf of the U.S. Government is licensed pursuant to CureVac's license with the U.S. Government. Moderna is a foreseeable third-party beneficiary to the U.S. Government's licenses to those patents, which

expressly include the right to have third parties practice the Asserted Patents for or on behalf of the U.S. Government. On information and belief, pursuant to FAR 52.227-11(d)(2), the U.S. Government has "a nonexclusive, nontransferable, irrevocable, paid-up license to practice, or have practiced for or on its behalf, the subject invention throughout the world." The licenses' language of "practiced for or on behalf of the United States" explicitly indicates that third parties are intended beneficiaries of the licenses. Moderna benefits from the licenses because it is shielded from patent infringement allegations by CureVac for its manufacturing and/or sale of Spikevax® doses to the U.S. Government on behalf of the U.S. Government.

132.    CureVac's assertion of infringement by Moderna by its manufacture and sale of Spikevax® for or on behalf of the U.S. Government is thus a breach of CureVac's license to the U.S. Government.

133.    Moderna has suffered and continues to suffer damages from CureVac's breach of its license, including at least its attorneys' fees and costs in defending this lawsuit.

**COUNT XXIV**
**DECLARATORY JUDGMENT FOR BREACH OF CONTRACT**

134.    Moderna repeats and realleges paragraphs 1-198 above as if fully stated herein.

135.    As to the '070, '910, '312, '966, and '686 Patents, there was an agreement between CureVac and Moderna formed in or about March 2023. CureVac promised not to assert the '070, '910, '312, '966, and '686 patents against Moderna. In exchange, Moderna agreed to waive a conflict of interest and not to object to Dr. Robert Prud'homme serving as an expert for CureVac on those patents. CureVac breached that agreement by filing this lawsuit accusing Moderna of infringing the '070, '910, '312, '966, and '686 patents. Moderna has suffered and continues to suffer damages from CureVac's breach of its agreement, including at least its attorneys' fees and costs in defending this lawsuit.

## ATTORNEYS' FEES

136.    This is an exceptional case entitling Moderna to an award of their attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

137.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Moderna hereby respectfully requests a jury trial on all issues and claims so triable.

## ANSWER TO COMPLAINT

Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. (collectively, "Moderna") hereby answer and respond to the Complaint of Plaintiffs CureVac SE and CureVac Manufacturing GmbH (collectively, "CureVac") (D.I. 1), as follows:

### INTRODUCTION[50]

1.      Founded in 2000 in Tübingen, Germany, CureVac was the pioneer in the development of a new class of medicines based on messenger RNA (mRNA).  These medicines use the mRNA molecule as a carrier of information to allow the body to produce its own active substances to treat or prevent disease.  Although many doubted that this technology could ever be used to treat or prevent disease, CureVac recognized that mRNA had the potential to improve patients' lives.  Over the last quarter-century, CureVac has been singularly focused on making mRNA medicines a reality through substantial investment and decades of research and development.

**ANSWER**    Moderna admits that there were doubts that mRNA technology could be used to treat or prevent disease.  Moderna otherwise lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 1 and therefore denies the allegations.

2.      As a molecule found within all forms of cellular life, mRNA is central to biology: it is literally the "messenger" between DNA, the body's genetic blueprint, and proteins, the molecules responsible for the structure, function, and regulation of essentially all processes in the body.  For many years after its discovery, mRNA was considered too unstable to be used as a medicine (mRNA is quickly destroyed both outside and inside the body), and was therefore relegated to the shadow of its much-more stable parent molecule, DNA.  But in the late 1990s, CureVac's founders, Drs. Florian von der Mülbe, Ingmar Hoerr, and Steve Pascolo (although only graduate students at the time), made a completely unexpected discovery: despite being unstable, mRNA can be directly administered to animals, without complicated reformulations or molecular packaging, and their cells will produce the protein encoded by the mRNA.

**ANSWER**    With respect to the first sentence of Paragraph 2, Moderna admits the allegations.  With respect to the second sentence of Paragraph 2, Moderna admits that for decades, researchers overlooked the use of mRNA to treat disease—mRNA was considered too unstable for

---

[50] Moderna utilizes the headings from the Complaint for convenience but does not admit or adopt the contentions of the headings.  Also, for completeness in responding to the Complaint, Moderna reproduced the Complaint's footnotes, but does not admit or adopt those footnotes."

drug development.    With respect to the third sentence of Paragraph 2, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the allegations.

3.    With this groundbreaking discovery in 2000, Drs. von der Mülbe, Hoerr, and Pascolo and others founded CureVac and began to challenge the status quo by developing the unproven mRNA technology into therapeutics to prevent and treat some of the deadliest diseases and medical conditions, including cancer.  CureVac was the first company in the world to harness mRNA for medical purposes—because CureVac's scientists saw opportunities where others saw only obstacles.

**ANSWER**    Moderna denies that CureVac successfully harnessed mRNA for any medical purposes.  With respect to the first sentence of Paragraph 3, Moderna lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 3 and therefore denies the allegations.  With respect to the second sentence of Paragraph 3, Moderna denies the allegations.

4.    Convinced of mRNA's unparalleled potential as a medicine, CureVac's scientists worked tirelessly to pioneer numerous fundamental breakthroughs in the field of mRNA technology.  These discoveries span all aspects of mRNA medicines, including methods to stabilize and modify mRNA, to manufacture it on a commercial scale, to increase the yield of the protein it encodes, and to formulate it for safe and effective administration to patients.

**ANSWER**    Moderna lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 4 and therefore denies the allegations.

5.    Based on that research, CureVac developed novel medicines with the goal of treating and preventing a wide range of diseases—infectious diseases like COVID-19 (caused by severe acute respiratory syndrome coronavirus 2 ("SARS-CoV-2")), influenza, liver and eye diseases, and treatment-resistant cancers.  CureVac also invented commercial-scale processes to manufacture mRNA and licensed several global biopharmaceutical companies to use those processes.

**ANSWER**    Moderna denies that CureVac successfully developed any medicine.  Moderna otherwise lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 and therefore denies the allegations.

41

6.     All told, CureVac invested decades of effort and more than a billion dollars to build an mRNA medicines platform that could be applied across a variety of therapeutic and prophylactic (*e.g.*, vaccine) applications.  CureVac protected its innovations by developing an intellectual property portfolio, including by obtaining patents on its breakthroughs related to mRNA stabilization and manufacturing, as well as for its design of mRNA medicines.

**ANSWER**     Moderna denies that CureVac successfully developed any mRNA medicine. Moderna otherwise lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 and therefore denies the allegations.

7.     Moderna has taken advantage of CureVac's pioneering inventions to develop and manufacture its Spikevax® COVID-19 vaccine product without paying for a license to CureVac's patents.  Moderna's deliberate and willful infringement of CureVac's patents has generated and continues to generate billions of dollars in revenue for Moderna at CureVac's expense.  CureVac brings this suit to recover a reasonable royalty for Moderna's sales of Spikevax® that exploited and continue to exploit CureVac's patented technologies.

**ANSWER**     Moderna admits that CureVac brought this suit and seeks compensatory damages.  Moderna otherwise denies the allegations of Paragraph 7.

**NATURE OF THE ACTION**

8.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 et seq., seeking damages for Moderna's infringing manufacture, use, sale, marketing, offer for sale, and/or importation of its Spikevax® mRNA vaccine (as further described and exemplified in paragraphs 31–51, *infra*) (collectively "the Accused Products").

**ANSWER**     Moderna admits that CureVac has asserted claims under the patent laws of the United States, but denies that it engages in any infringing manufacture, use, sale, marketing, offer for sale, and/or importation of its Spikevax® mRNA vaccine and denies that CureVac is entitled to any relief.

9.     As alleged herein, Moderna's activities with respect to the Accused Products have and continue to directly infringe, actively induce infringement of, and/or contribute to the infringement of, one or more claims of the following CureVac patents: U.S. Patent No. 10,760,070 ("the '070 Patent") (Exhibit 1); U.S. Patent No. 11,667,910 ("the '910 Patent") (Exhibit 2); U.S. Patent No. 11,760,992 ("the '992 Patent") (Exhibit 3); U.S. Patent No. 11,834,651 ("the '651 Patent") (Exhibit 4); U.S. Patent No. 12,221,605 ("the '605 Patent") (Exhibit 5)[51]; U.S. Patent No.

---

[51] The '070, '910, '992, '651, and '605 Patents are collectively referred to herein as the "TFF Patents."

11,135,312 ("the '312 Patent") (Exhibit 6); U.S. Patent No. 11,576,966 ("the '966 Patent") (Exhibit 7); U.S. Patent No. 11,596,686 ("the '686 Patent") (Exhibit 8); U.S. Patent No. 12,194,089 ("the '089 Patent") (Exhibit 9); and U.S. Patent No. 12,390,523 ("the '523 Patent") (Exhibit 10)[52] (collectively the "Patents-in-Suit").

**ANSWER**    Moderna denies the allegations of Paragraph 9.

10.    At all relevant times, CureVac has owned, and continues to own, all rights, title, and interest in the Patents-in-Suit, including the right to sue and recover for past infringement.

**ANSWER**    Insofar as Paragraph 10 contains legal conclusions, no response is required. To the extent that a response is required, Moderna lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 10 and therefore denies the allegations.

**PARTIES**

11.    CureVac SE is a corporation organized and existing under the laws of Germany, having a place of business at Friedrich-Miescher-Straße 15, 72076 Tübingen, Germany.

**ANSWER**    Upon information and belief and based on CureVac's Complaint, Moderna admits the allegations of Paragraph 11.

12.    CureVac Manufacturing GmbH is a corporation organized and existing under the laws of Germany, having a place of business at Friedrich-Miescher-Straße 15, 72076 Tübingen, Germany.

**ANSWER**    Upon information and belief and based on CureVac's Complaint, Moderna admits the allegations of Paragraph 12.

13.    On information and belief, Defendant Moderna, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 325 Binney Street, Cambridge, Massachusetts 02142.  Moderna, Inc., itself and through its subsidiaries, including ModernaTX, Inc. and Moderna US, Inc., and business partners, develops, manufactures, imports, markets, distributes, offers to sell, and/or sells the Accused Products in the State of Delaware and throughout the United States, for use in the State of Delaware and throughout the United States.

---

[52] The '966, '686, '089, and '523 Patents are collectively referred to herein as the "COVID Vaccine Patents."

**ANSWER**    With respect to the first sentence of Paragraph 13, Moderna admits the allegations.  With respect to the second sentence of Paragraph 13, Moderna denies the allegations, at least because it includes at least one product not sold in Delaware.

14.    On information and belief, Defendant ModernaTX, Inc. is a wholly owned subsidiary of Moderna, Inc., is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business at 325 Binney Street, Cambridge, Massachusetts 02142.  ModernaTX, Inc. holds the Biologics License Application (BLA) for the Accused Products (BLA 125752) in the United States.  Exhibit 11 (January 31, 2022, FDA Spikevax® (original monovalent) vaccine Approval Letter) at 1.  ModernaTX, Inc., itself and through its parent company, Moderna, Inc., and sister company, Moderna US, Inc., develops, manufactures, imports, markets, distributes, offers to sell, and/or sells the Accused Products for use in the State of Delaware and throughout the United States.

**ANSWER**    With respect to the first sentence of Paragraph 14, Moderna admits the allegations.  With respect to the second sentence, Moderna admits that it holds BLA 125752 for Spikevax®.  Moderna further states that the Exhibit cited speaks for itself.  With respect to the third sentence of Paragraph 14, Moderna denies the allegations, at least because it includes at least one product not sold in Delaware.

15.    On information and belief, Defendant Moderna US, Inc. is a wholly owned subsidiary of Moderna, Inc., is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business at 325 Binney Street, Cambridge, Massachusetts 02142.  Moderna US, Inc., itself and through its parent company, Moderna, Inc., and sister company, ModernaTX, Inc., develops, manufactures, imports, markets, distributes, offers to sell, and/or sells the Accused Products for use in the State of Delaware and throughout the United States.

**ANSWER**    With respect to the first sentence of Paragraph 15, Moderna admits that Moderna US, Inc. is a Delaware corporation and admits that it is a wholly owned subsidiary of Moderna, Inc., but denies that its principal place of business is at 325 Binney Street, Cambridge, Massachusetts 02142.  With respect to the second sentence of Paragraph 15, Moderna denies the allegations, at least because it includes at least one product not sold in Delaware.

16.    On information and belief, Defendants Moderna Inc., ModernaTX, Inc., and Moderna US, Inc. are agents of one another and/or work in concert with each other regarding the development, regulatory approval, manufacturing, use, offering for sale, sale, and importation of the Accused Products in the United States.

**ANSWER**      Paragraph 16 states legal conclusions to which no response is required.  To the extent a response is required, Moderna denies the allegations of Paragraph 16.

## JURISDICTION AND VENUE

17.      This action arises under the patent laws of the United States, including 35 U.S.C. § 100 et seq. generally and 35 U.S.C. § 271 et seq. specifically.

**ANSWER**      Moderna admits that CureVac purports to bring an action for infringement arising under the patent laws of the United States.  Moderna otherwise denies the allegations of Paragraph 17.

18.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER**      Paragraph 18 states legal conclusions to which no response is required.  To the extent a response is required and for purposes of this action only, Moderna does not contest that this Court has subject matter jurisdiction over this action.  However, Moderna further states that, with respect to sales covered by 28 U.S.C. § 1498, CureVac's claims are not properly brought against Moderna and should instead be sought, if at all, against the U.S. Government in the Court of Federal Claims.

19.      This Court has personal jurisdiction over Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. because each is organized under the laws of Delaware.

**ANSWER**      Paragraph 19 states legal conclusion to which no response is required.  To the extent a response is required, Moderna does not contest that the Court has personal jurisdiction over Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc for the purposes of this action.

20.      This Court also has personal jurisdiction over Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. because, on information and belief, each has conducted and continues to conduct business in Delaware at least by offering for sale and/or selling the Accused Products in Delaware, and because each has committed and continues to commit acts of infringement in Delaware.  For example, as reported by the United States Center for Disease Control and Prevention ("CDC"), by May 10, 2023, Moderna had delivered to the State of Delaware over one million doses of Spikevax® (original monovalent) and over 160 thousand doses of Spikevax® (bivalent BA.4/5) products (as described in paragraphs 35–41, and 44–45, *infra*).

45

(https://data.cdc.gov/Vaccinations/COVID-19-Vaccinations-in-the-United-States-Jurisdi/unsk-b7fc/data_preview, archived at https://perma.cc/NH7C-PEV3).  And, on information and belief, Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. continue to deliver doses of Spikevax® products into the State of Delaware.  Therefore, Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. have transacted and continue to transact business within Delaware relating to and giving rise to CureVac's claims herein.  This Court also has personal jurisdiction over Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. because, in connection with their offers for sale and sales of the Accused Products, they have engaged in and maintain systematic and continuous business contacts in Delaware.

**ANSWER**    With respect to the second sentence of Paragraph 20, the documents cited speak for themselves.  With respect to the rest of Paragraph 20, it consists of conclusions of law to which no response is required.  To the extent a response is required, Moderna does not contest that the Court has personal jurisdiction over Moderna for the purpose of this action.  Moderna denies the remaining allegations of Paragraph 20.

21.    Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. have consented to this Court's exercise of personal jurisdiction in other litigations involving the Accused Products, including in *Arbutus Biopharma Corp. et al. v. Moderna, Inc. et al.*, C.A. No. 22-cv-252-MSG; *Alnylam Pharmaceuticals, Inc. v. Moderna, Inc. et al.*, C.A. No. 22-335-CFC, *Alnylam Pharmaceuticals, Inc. v. Moderna, Inc. et al.*, C.A. No. 23-580-CFC; *GlaxoSmithKline Biologicals SA et al v. Moderna, Inc. et al.*, C.A. No. 24-1135-GBW; and *Northwestern University v. Moderna, Inc. et al.*, C.A. No. 24-1151-RGA.

**ANSWER**    Paragraph 21 consists of conclusions of law to which no response is required.  To the extent a response is required, Moderna does not contest that the Court has personal jurisdiction over Moderna for the purpose of this action.

22.    Under 28 U.S.C. § 1400(b), venue is proper in Delaware because Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. are Delaware corporations.

**ANSWER**    Paragraph 22 consists of conclusions of law to which no response is required.  To the extent a response is required, Moderna does not contest that venue is proper in this District for the purpose of this action.

### CUREVAC'S PATENTS

23.    The realization of mRNA vaccines has long been hampered by, for example, mRNA instability, the difficulty getting it inside the target cells in the body, its inability to produce sufficient

46

quantities of the desired protein once it is inside those cells, the insufficient stimulation of the immune system by the expressed protein, and various undesirable side effects (called "reactogenicity").  In its more than quarter-century of developing mRNA technologies, CureVac encountered and developed solutions to the technical challenges presented by this entirely new way to treat and prevent disease.  CureVac protected its innovations and substantial investment in research and development in the field of mRNA medicines by obtaining patents that cover its inventions.

**ANSWER**     Paragraph 23 consists of a characterization of science and technology that CureVac appears to recite as background, or in an attempt to engage in premature expert discovery and/or claim construction, and to which no response is required.  To the extent that a response is required, with respect to the first sentence of Paragraph 23, Moderna admits that developing an mRNA vaccine presented significant challenges before Moderna's innovations in the early-to-mid-2010s and that, before that time, mRNA was considered extremely fragile and was known to degrade quickly in the body.  Moderna's own research developing modified mRNA-LNP vaccines, including for coronaviruses, enabled Moderna to develop mRNA-LNP vaccines against COVID-19 in record time.  Moderna otherwise lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 23 and therefore denies the allegations.

24.     To overcome instability issues so that mRNA can be used in vaccines and other medicines, CureVac's scientists developed novel ways to stabilize mRNA.  mRNA typically is composed of four different subunits, called nucleotides: adenosine, guanosine, cytidine, and uridine.  The sequence of these nucleotides in an mRNA molecule provides instructions that cells use to create the particular protein the mRNA encodes.  CureVac's scientists discovered that increasing the relative proportions of guanosine and cytidine nucleotides in the protein-coding region of an mRNA stabilizes the molecule and increases expression of the protein it encodes.  In 2001, CureVac filed its first patent application directed to this advance in mRNA technology.

**ANSWER**     Insofar as the first sentence of Paragraph 24 contains legal conclusions, no response is required.  To the extent a response is required, with respect to the first sentence of Paragraph 24, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the allegations.  With respect to the second and third

sentences of Paragraph 24, these sentences consist of characterization of the science and technology that CureVac appears to recite as background, or in an attempt to engage in premature expert discovery and/or claim construction, and to which no response is required. To the extent a response is required, Moderna denies the allegations of the second and third sentence of Paragraph 24. With respect to the fourth and fifth sentences of Paragraph 24, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the allegations.

25.    On October 5, 2021, the U.S. Patent & Trademark Office ("the Patent Office") issued the '312 Patent titled "Pharmaceutical Composition Containing a Stabilised mRNA Optimised for Translation in its Coding Regions." The '312 Patent names CureVac's co-founders, Florian von der Mülbe, Ingmar Hoerr, and Steve Pascolo, as inventors. The '312 Patent reflects the inventors' pioneering work to develop an mRNA molecule stable enough to use as a therapeutic in the treatment and prevention of disease. A true and correct copy of the '312 Patent is attached as Exhibit 6.

**ANSWER**    Insofar as Paragraph 25 contains legal conclusions, no response is required. To the extent a response is required, with respect to the first sentence, Moderna admits that the USPTO issued the '312 Patent, which is titled "Pharmaceutical Composition Containing a Stabilised mRNA Optimised for Translation in its Coding Regions," on October 5, 2021, but otherwise denies the allegations. With respect to the second sentence of Paragraph 25, the '312 patent speaks for itself. With respect to the fourth sentence of Paragraph 25, Moderna admits that Exhibit 6 to the Complaint purports to be a copy of the '312 patent. Moderna denies the remaining allegations of Paragraph 25.

26.    The development of mRNA into a viable alternative to traditional drug products required the development of a commercially viable, efficient, and effective method of producing and purifying mass quantities of mRNA. To generate a sufficient supply of mRNA for use as a therapeutic, CureVac's scientists developed new methods to purify mRNA, as well as the DNA template that encodes the mRNA, using a technique called Tangential Flow Filtration ("TFF"). In 2015, CureVac filed its first patent application directed to this advance in mRNA technology.

**ANSWER**    With respect to the first sentence of Paragraph 26, this sentence consists of characterizations of the science and technology that CureVac appears to recite as background, or in an attempt to engage in premature expert discovery and/or claim construction, and to which no response is required. To the extent a response is required, Moderna denies the allegations of the first sentence of Paragraph 26. With respect to the second sentence of Paragraph 26, Moderna denies the allegation. With respect to the third sentence of Paragraph 26, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the allegations.

27.    On September 1, 2020, the Patent Office issued the '070 Patent titled "Method for Producing and Purifying RNA, Comprising at Least One Step of Tangential Flow Filtration." A true and correct copy of the '070 Patent is attached as Exhibit 1. On June 6, 2023, the Patent Office issued the '910 Patent titled "Method for Producing and Purifying RNA, Comprising at Least One Step of Tangential Flow Filtration." A true and correct copy of the '910 Patent is attached as Exhibit 2. On September 19, 2023, the Patent Office issued the '922 Patent titled "Method for Producing and Purifying RNA, Comprising at Least One Step of Tangential Flow Filtration." A true and correct copy of the '922 Patent is attached as Exhibit 3. On December 5, 2023, the Patent Office issued the '651 Patent titled "Method for Producing and Purifying RNA, Comprising at Least One Step of Tangential Flow Filtration." A true and correct copy of the '651 Patent is attached as Exhibit 4. On February 11, 2025, the Patent Office issued the '605 Patent titled "Method for Producing and Purifying RNA, Comprising at Least One Step of Tangential Flow Filtration." A true and correct copy of the '605 Patent is attached as Exhibit 5. The '070, '910, '922, '651, and '605 Patents list Andreas Funkner, Stefanie Dorner, Stefanie Sewing, Johannes Kamm, Norbert Broghammer, Thomas Ketterer, and Thorsten Mutzke as inventors.

**ANSWER**    Insofar as Paragraph 27 contains legal conclusions, no response is required. To the extent a response is required, with respect to the first sentence of Paragraph 27, Moderna admits that the USPTO issued the '070 Patent, which is titled "Method for Producing and Purifying RNA, Comprising at Least One Step of Tangential Flow Filtration," on September 1, 2020, but otherwise denies the allegations. With respect to the second sentence of Paragraph 27, Moderna admits that Exhibit 1 to the Complaint purports to be a copy of the '070 Patent. With respect to the third sentence of Paragraph 27, Moderna admits that the USPTO issued the '910 Patent, which is titled "Method for Producing and Purifying RNA, Comprising at Least One Step of Tangential

49

Flow Filtration," on June 6, 2023, but otherwise denies the allegations. With respect to the fourth sentence of Paragraph 27, Moderna admits that Exhibit 2 to the Complaint purports to be a copy of the '910 Patent. With respect to the fifth sentence of Paragraph 27, Moderna admits that the USPTO issued the '992 Patent, which is titled "Method for Producing and Purifying RNA, Comprising at Least One Step of Tangential Flow Filtration," on September 19, 2023, but otherwise denies the allegations. With respect to the sixth sentence of Paragraph 27, Moderna admits that Exhibit 3 to the Complaint purports to be a copy of the '992 patent. With respect to the seventh sentence of Paragraph 27, Moderna admits that the USPTO issued the '651 Patent, which is titled "Method for Producing and Purifying RNA, Comprising at Least One Step of Tangential Flow Filtration," on December 5, 2023, but otherwise denies the allegations. With respect to the eighth sentence of Paragraph 27, Moderna admits that Exhibit 4 to the Complaint purports to be a copy of the '651 Patent. With respect to the ninth sentence of Paragraph 27, Moderna admits that the USPTO issued the '605 Patent, which is titled "Method for Producing and Purifying RNA, Comprising at Least One Step of Tangential Flow Filtration," on February 11, 2025, but otherwise denies the allegations. With respect to the tenth sentence of Paragraph 27, Moderna admits that Exhibit 5 to the Complaint purports to be a copy of the '605 Patent. With respect to the eleventh sentence of Paragraph 27, the '070, '910, '992, '651, and '605 patents speak for themselves.

28.    When the COVID-19 pandemic struck, the U.S. Government asked the scientists at CureVac if they could develop an mRNA vaccine against the SARS-CoV-2 virus. CureVac's scientists leveraged their resources and expertise built over decades to find the optimal mRNA sequence encoding the full-length COVID-19 spike protein, which is expressed on the surface of the SARS-CoV-2 virus. Building on their rapid response, CureVac developed full-length mRNA vaccine candidates for its innovative coronavirus vaccine designs. In February 2020, CureVac filed its first patent application directed to these advanced mRNA vaccines.

**ANSWER**    Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28 and therefore denies the allegations.

50

29.    On February 14, 2023, the Patent Office issued the '966 Patent titled "Coronavirus Vaccine." A true and correct copy of the '966 Patent is attached as Exhibit 7. On March 7, 2023, the Patent Office issued the '686 Patent titled "Coronavirus Vaccine." A true and correct copy of the '686 Patent is attached as Exhibit 8. On January 14, 2025, the Patent Office issued the '089 Patent titled "Coronavirus Vaccine." A true and correct copy of the '089 Patent is attached as Exhibit 9. On August 19, 2025, the Patent Office issued the '523 Patent titled "Coronavirus vaccine." A true and correct copy of the '523 Patent is attached as Exhibit 10. The '686, '966, '089, and '523 Patents list Susanne Rauch, Hans Wolfgang Grosse, and Benjamin Petsch as inventors.

**ANSWER**    Insofar as Paragraph 29 contains legal conclusions, no response is required. To the extent a response is required, with respect to the first sentence of Paragraph 29, Moderna admits that the USPTO issued the '966 Patent, which is titled "Coronavirus Vaccine," on February 14, 2023, but otherwise denies the allegations. With respect to the second sentence of Paragraph 29, Moderna admits that Exhibit 7 to the Complaint purports to be a copy of the '966 Patent. With respect to the third sentence of Paragraph 29, Moderna admits that the USPTO issued the '686 Patent, which is titled "Coronavirus Vaccine," on March 7, 2023, but otherwise denies the allegations. With respect to the fourth sentence of Paragraph 29, Moderna admits that Exhibit 8 to the Complaint purports to be a copy of the '686 Patent. With respect to the fifth sentence of Paragraph 29, Moderna admits that the USPTO issued the '089 patent, which is titled "Coronavirus Vaccine," on January 14, 2025, but otherwise denies the allegations. With respect to the sixth sentence of Paragraph 29, Moderna admits that Exhibit 9 to the Complaint purports to be a copy of the '089 Patent. With respect to the seventh sentence, Moderna admits that the USPTO issued the '523 Patent, which is titled "Coronavirus Vaccine," on August 19, 2025, but otherwise denies the allegations. With respect to the eighth sentence of Paragraph 29, Moderna admits that Exhibit 10 to the Complaint purports to be a copy of the '523 Patent. With respect to the ninth sentence, the '686, '966, '089, and '523 Patents speak for themselves.

30.    CureVac SE owns the '312, '966, '686, '089, and '523 Patents. CureVac Manufacturing GmbH owns the '070, '910, '922, '651, and '605 Patents.

**ANSWER**    Insofar as Paragraph 30 contains legal conclusions, no response is required. To the extent a response is required, Moderna lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies the allegations.

**MODERNA'S COVID-19 VACCINES**

31.    In early 2020, Moderna also began to develop an mRNA-based vaccine to address the COVID-19 pandemic, and developed the Accused Products over the ensuing years.  On information and belief, the mRNA component of the Accused Products includes "a 7'-methylguanosine and a first 5' ribonucleotide, the 7'-methylguanosine being linked 5'-to-5' to the first 5' ribonucleotide, and the first 5' ribonucleotide comprising a 2'-methylated ribose."  Exhibit 12 (Application for Patent Term Extension) at 2, 11 ("[T]he molecular sequence of the mRNA component of SPIKEVAX includes the 5'-cap1 structure m7G-5'-ppp-5'-Gm."), 13, Exhibit 11 thereto (BLA 125752/0 Section 3.2.S.1.2.1) at 1–3 (providing the structure of the "Cap" ("m7G-5'-ppp-5'-Gm"), the sequence of the "5' UTR" (position 3–58), the sequence of the "ORF" (position 59–3880), the sequence of the "3' UTR" (position 3881–3996), and the length of the "PolyA tail" ("100-nucleotide")).  On information and belief, the mRNA component of the Accused Products includes a poly(A) tail comprising 100 adenine nucleotides.  *Id.* at 4.

**ANSWER**    With respect to the first sentence of Paragraph 31, Moderna admits that it was founded in 2010, with a mission to pioneer medicines based on mRNA, focusing on both therapeutics and vaccines, and from the beginning recognized the transformative potential of mRNA technology.  Moderna also admits that it independently developed Spikevax® based on Moderna's innovative work and to address the COVID-19 pandemic.  Moderna otherwise denies the allegations of the first sentence of Paragraph 31.  With respect to the rest of Paragraph 31, which purports to quote or reference exhibits, those Exhibits speak for themselves.  Moderna otherwise denies the allegations of Paragraph 31.

32.    The mRNA component of the Accused Products is encapsulated in tiny fat-like particles called "lipid nanoparticles," or "LNPs."  The lipids that form the LNP component of the Accused Products include SM-102, polyethylene glycol 2000 dimyristoyl glycerol ("DMG"), cholesterol, and 1,2-distearoyl-sn-glycero-3-phoshocholine ("DSPC").  Exhibit 12 (Application for Patent Term Extension) at 4.  SM-102 is an ionizable lipid, which under acidic conditions is a cationic lipid.  *Id.*

**ANSWER**    Paragraph 32 consists of a characterization of science and technology that CureVac appears to recite as background, or in an attempt to engage in premature expert discovery

52

and/or claim construction, and to which no response is required.  To the extent that a response is required, with respect to the first sentence of Paragraph 32, Moderna admits that the mRNA component of Spikevax® is encapsulated in a lipid nanoparticle (LNP).  Moderna otherwise denies the allegations of the first sentence of Paragraph 32.  With respect to the second sentence of Paragraph 32, Moderna admits that the LNP for Spikevax® comprises SM-102, polyethylene glycol [PEG] 2000 dimyristoyl glycerol [DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine.  Moderna otherwise denies the allegations of the second sentence of Paragraph 32.  With respect to the third sentence of Paragraph 32, Moderna admits that SM-102 is an ionizable cationic lipid.  Moderna otherwise denies the allegations of the third sentence of Paragraph 32.

33.    On information and belief, Moderna uses the same processes to manufacture the mRNA component across all versions of the Spikevax® vaccine.  Exhibit 13 (August 22, 2024, FDA Spikevax® (monovalent KP.2) vaccine EUA Review Memo) at 21 ("Effectiveness and safety data accrued with the Moderna COVID-19 Vaccine (Original monovalent), Moderna COVID-19 Vaccine, Bivalent (Original and Omicron BA.4/BA.5), and Moderna COVID-19 Vaccine (2023-2024 Formula) are relevant to Moderna COVID-19 Vaccine (2024-2025 Formula), because all these vaccines are manufactured using the same process."); Exhibit 14 (August 31, 2022, FDA Spikevax® (bivalent BA.4/BA.5) EUA Review Memo) at 6, 14–15, 41, 48; Exhibit 15 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 19; Exhibit 16 (October 19, 2022, EMA Spikevax® (bivalent BA.4/BA.5) Assessment Report) at 14 and 41; Exhibit 17 (January 2, 2024, EMA Spikevax® EPAR Product Information) at 142, 146, 150; Exhibit 18 (Transcript of January 18, 2023, CNBC Television Interview) at 2:15 (original video available at https://www.youtube.com/watch?v=FzgSE3yG-7E) ("Moderna CEO: "And the other great news about mRNA is because all the products use the same manufacturing process.  We don't have capacity constraint because we can use exactly the same equipment, people, and raw material as with the COVID shot.").

**ANSWER**    With respect to the exhibits cited in Paragraph 33, those documents speak for themselves.  Moderna otherwise denies the allegations in Paragraph 33.

34.    On information and belief, as described *infra*, the Accused Products used and continue to use the same composition of mRNA (apart from differences in the coding sequences), composition of lipid particles, and methods of manufacture in both the United States (as approved by the U.S. Food and Drug Administration ("FDA")) and in Europe (as approved by the European Medicines Agency ("EMA")).

53

**ANSWER**      Moderna denies the allegations of Paragraph 34.

### Spikevax® (original monovalent)

35.      Moderna did not develop its Spikevax® COVID-19 vaccine products from a blank slate.  Moderna developed its vaccines using mRNA technologies that incorporate CureVac's pioneering inventions—Moderna's COVID-19 vaccine program utilized the very technological advances that CureVac disclosed and claimed in the Patents-in-Suit.

**ANSWER**      With respect to the first sentence of Paragraph 35, Moderna admits that it independently developed Spikevax® based on Moderna's innovative work.  Moderna otherwise denies the allegations of Paragraph 35.

36.      Moderna's development of its COVID-19 vaccine was also heavily subsidized by the United States government.  On April 16, 2020, the Biomedical Advanced Research and Development Authority ("BARDA"), a division of the U.S. Department of Health and Human Services, awarded Moderna approximately $483 million to accelerate the development and manufacturing of its COVID-19 vaccine candidate.  On July 26, 2020, the U.S. government awarded an additional $472 million to Moderna to support the Phase III clinical trial and other development activities.  On August 11, 2020, the U.S. government awarded Moderna up to $1.525 billion to support large-scale manufacturing and to secure the first 100 million doses of its mRNA-1273 vaccine candidate.  Thus, Moderna leveraged CureVac's patented inventions while receiving $2.5 billion in federal funding to bring its vaccine products to market.

**ANSWER**      With respect to the first sentence of Paragraph 36, Moderna admits that it entered into numerous agreements with the U.S. Government regarding Spikevax®.  With respect to the second sentence, Moderna admits that on April 16, 2020, Moderna announced an agreement for a commitment of up to $483 million from the Biomedical Advanced Research and Development Authority (BARDA), a division of the Office of the Assistant Secretary for Preparedness and Response (ASPR) within the U.S. Department of Health and Human Services (HHS), to accelerate development of the Company's mRNA vaccine candidate (mRNA-1273) against the novel coronavirus (SARS-CoV-2).  With respect to the third sentence, Moderna admits that on July 26, 2020 , Moderna announced a modification to its contract with the Biomedical Advanced Research and Development Authority (BARDA) for an additional commitment of up to $472 million to support late stage clinical development including the expanded Phase 3 study of

54

the Company's mRNA vaccine candidate (mRNA-1273) against COVID-19.  With respect to the fourth sentence, Moderna admits that the U.S. government awarded up to $1.525 billion for manufacturing and delivery of 100 million doses of mRNA-1273.  With respect to the fifth sentence, Moderna admits to sales of Spikevax® to the U.S. Government and otherwise denies the allegations.  Moderna otherwise denies the allegations.

37.    Moderna used CureVac's inventions with great success.  On information and belief, Moderna's development of its first COVID-19 vaccine, designated "mRNA-1273," began following the release of the SARS-CoV-2 genetic sequence by Chinese authorities on January 11, 2020.  According to Moderna's SEC filings, Moderna and the National Institutes of Health finalized the sequence for the original version of the vaccine by January 13.  Exhibit 19 (Moderna SEC Filing) at 1.  On November 30, 2020, Moderna submitted an Emergency Use Authorization ("EUA") request to the FDA.  On December 18, 2020, the FDA granted the EUA for Spikevax® (original monovalent) to prevent COVID-19 caused by SARS-CoV-2.  The authorized regimen was a two-dose primary vaccination series administered one month apart, for use in adults 18 and older.

**ANSWER**    With respect to the first sentence of Paragraph 37, Moderna denies the allegations.  With respect to the second sentence of Paragraph 37, Moderna admits that the genetic sequence of the SARS-CoV-2 virus became public on January 10, 2020 and Moderna, leveraging its decade of research and proprietary technologies, quickly responded when the pandemic struck, swiftly developing, manufacturing, and providing doses of Spikevax® to people around the world.  With respect to the third sentence of Paragraph 37, the document speaks for itself.  With respect to the fourth sentence of Paragraph 37, Moderna admits that it submitted Emergency Use Authorization (EUA) from the FDA on November 30, 2020.  With respect to the fifth sentence of Paragraph 37, Moderna admits that the FDA issued emergency use authorization for its first version of its COVID-19 vaccine on December 18, 2020.  With respect to the sixth sentence of Paragraph 37, Moderna admits that the authorized regimen was a two-dose vaccine, administered one-month apart, for individuals 18 years of age and older.  Moderna otherwise denies the allegations of Paragraph 37.

38.     On August 12, 2021, the FDA expanded the EUA for Spikevax® (original monovalent) to a third primary dose (at least 1 month after the second dose) for certain immunocompromised individuals 18 years of age and older. On October 20, 2021, the FDA expanded the EUA for Spikevax® (original monovalent) to a third dose (a first booster) six months after completion of the primary two-dose vaccination series for individuals 65 years of age or older, or certain other higher-risk individuals 18 to 64 years of age. On November 19, 2021, the FDA expanded the EUA for Spikevax® (original monovalent) to a third dose (a first booster) for all individuals 18 years and older six months after completion of any authorized primary vaccination regimen.

**ANSWER**     With respect to the first sentence of Paragraph 38, Moderna admits that, on August 12, 2021, the FDA amended the EUA for Spikevax® to authorize an additional dose for certain immunocompromised individuals.  With respect to the second sentence of Paragraph 38, Moderna admits that, on October 20, 2021, the FDA amended the EUA for Spikevax® to authorize a single booster dose at least 6 months after completion of a primary series to individuals 65 years and older, high-risk individuals from 18 to 64 years, and individuals from 18 to 64 years who have frequent institutional or occupational SARS-CoV-2 exposure.  With respect to the third sentence of Paragraph 38, Moderna admits that, on November 19, 2021, the FDA extended the EUA for Spikevax® to include a booster dose for individuals 17 years and older.  Moderna otherwise denies the allegations of Paragraph 38.

39.     On January 31, 2022, the FDA granted full approval of Moderna's BLA for Spikevax® (original monovalent) two-dose primary vaccination series in individuals 18 years of age and older.  On March 29, 2022, the FDA expanded the EUA for Spikevax® (original monovalent) to a fourth dose (second booster) at least four months after receipt of a first booster dose of any FDA-authorized or -approved COVID-19 vaccine for individuals over 50 years of age and for immunocompromised patients 18 years of age and older.  On June 17, 2022, the FDA expanded the EUA for Spikevax® (original monovalent) to a two-dose primary vaccination series for children 6 months through 17 years of age.

**ANSWER**     With respect to the first sentence of Paragraph 39, Moderna admits that it received approval for its BLA for Spikevax® on January 31, 2022.  With respect to the second sentence of Paragraph 39, Moderna admits that, on March 29, 2022, the FDA approved Moderna's EUA amendment, allowing a second booster dose of Spikevax® for individuals 50 years or older

and immunocompromised individuals 18 years and older. With respect to the third sentence of Paragraph 39, Moderna admits that, on June 17, 2022, the FDA authorized Spikevax® for individuals from 6 months to 17 years. Moderna otherwise denies the allegations of Paragraph 39.

40. The mRNA component in Spikevax® (original monovalent) was referred to by Moderna as "CX-024414," and was given the recommended name "elasomeran" in the World Health Organization's register of International Nonproprietary Names for Pharmaceutical Substances. Exhibit 20 (Proposed International Nonproprietary Names List 125 – COVID-19) at 3. On information and belief, elasomeran/CX-024414 is 4,100 nucleotides in length.[53]

**ANSWER** With respect to the first sentence of Paragraph 40, Moderna states that the Exhibit referenced speaks for itself. With respect to the second sentence of Paragraph 40, Moderna states that elasomeran/CX-024414 is 4,100 nucleotides in length. With respect to the second sentence of Paragraph 40, Moderna further states that the document cited speaks for itself. Moderna otherwise denies the allegations of Paragraph 40.

41. Moderna also referred to Spikevax® (original monovalent) containing elasomeran as "mRNA-1273," and on information and belief, Moderna sold this version of the vaccine under the brand name Spikevax®.[54]

**ANSWER** Moderna admits the allegations of Paragraph 41.

### Spikevax® (bivalent BA.1)

42. On September 1, 2022, the European Medicines Agency (EMA) recommended approval of Moderna's bivalent COVID-19 vaccine targeting both the original SARS-CoV-2 strain and the Omicron BA.1 variant. The European Commission subsequently granted marketing authorization for Spikevax® (bivalent BA.1) for use as a booster in individuals 12 years of age and older who had completed a primary vaccination series with any COVID-19 vaccine.

**ANSWER** With respect to the first sentence of Paragraph 42, Moderna admits that, on September 1, 2022, the EMA recommended approval of a version of Spikevax® targeting SARS-

---

[53] Sequence of elasomeran/CX-024414 is available at https://gsrs.ncats.nih.gov/ginas/app/ui/substances/EPK39PL4R4, archived at https://perma.cc/YK42-2QP4.

[54] For ease of reference, we refer herein to the monovalent version of Spikevax® containing elasomeran as "Spikevax® (original monovalent)."

CoV-2 and Omicron BA.1.  With respect to the second sentence of Paragraph 42, Moderna admits that the European Commission authorized Spikevax®.  Moderna otherwise denies the allegations of Paragraph 42.

43.    Spikevax® (bivalent BA.1) contains two mRNA components: (1) the mRNA in Spikevax® (original monovalent), and (2) an mRNA designed specifically for the Omicron BA.1 variant.  Moderna referred to the mRNA component targeting the Omicron BA.1 variant in Spikevax® (bivalent BA.1) as "CX-031302," and it was given the recommended name "imelasomeran" in the World Health Organization's register of International Nonproprietary Names for Pharmaceutical Substances.  Exhibit 21 (Proposed International Nonproprietary Names List 127 – COVID-19) at 2.  On information and belief, imelasomeran/CX-031302 is 4,091 nucleotides in length.[55]  Moderna also referred to Spikevax® (bivalent BA.1) containing elasomeran and imelasomeran as mRNA-1273.214, and on information and belief, sold this version of the vaccine under the brand name Spikevax®.[56]

**ANSWER**    With respect to the first sentence of Paragraph 43, Moderna admits that Spikevax® (bivalent BA.1) contains two mRNA components: the original mRNA and an mRNA targeting Omicron BA.1.  With respect to the second sentence of Paragraph 43, Moderna states that the Exhibit referenced speaks for itself.  With respect to the third sentence of Paragraph 43, Moderna states that imelasomeran/CX-031302 is 4,091 nucleotides in length.  With respect to the third sentence of Paragraph 43, Moderna further states that the document cited speaks for itself.  With respect to the fourth sentence of Paragraph 43, Moderna admits that it sold a bivalent COVID-19 vaccine under the brand name Spikevax®.  Moderna otherwise denies the allegations of Paragraph 43.

### Spikevax® (bivalent BA.4/BA.5)

44.    On August 23, 2022, Moderna announced the completion of its submission to the FDA for an EUA on a bivalent form of Spikevax for use as a COVID-19 booster vaccine.  On August 31, 2022, the FDA granted Moderna an EUA for Spikevax® (bivalent BA.4/BA.5) as a single booster dose in patients 18 years of age and older who had received a primary series, or

---

[55]    Sequence    of    imelasomeran/CX-031302,    available    at https://gsrs.ncats.nih.gov/ginas/app/ui/substances/b04ecc09-83fe-4c25-9dcc-d362648ef076, archived at https://perma.cc/29XG-8EKL.
[56] For ease of reference, we refer herein to the bivalent version of Spikevax® containing elasomeran and imelasomeran as "Spikevax® (bivalent BA.1)."

primary series and first booster, of any FDA-authorized or -approved COVID-19 vaccine. The FDA also revised the EUA for Spikevax® (original monovalent) to no longer include use as a first or second booster dose. On October 12, 2022, the FDA expanded the EUA for Spikevax® (bivalent BA.4/BA.5) as a booster dose in children and adolescents 6 through 17 years of age who had received a primary series, or primary series and booster, of any authorized or approved COVID-19 vaccine. On December 8, 2022, the FDA expanded the EUA for Spikevax® (bivalent BA.4/BA.5) as a single booster dose in children 6 months through 5 years of age who had received a primary series of Spikevax® (original monovalent). On April 18, 2023, the FDA expanded the EUA for Spikevax® (bivalent BA.4/BA.5) to be used for all doses (primary and booster) in most adults and pediatric populations as well as other dosage regimes for certain individuals based on age or immunocompromised status. The FDA also rescinded all authorizations for use of Spikevax® (original monovalent) vaccine in the United States.

**ANSWER**    With respect to the first sentence of Paragraph 44, Moderna admits that, on August 23, 2022, Moderna announced that it completed its EUA application to the FDA relating to Spikevax® (bivalent BA.4/BA.5). With respect to the second sentence of Paragraph 44, Moderna admits that the FDA authorized a single booster dose for individuals 18 years and older under the EUA for Spikevax® (bivalent BA.4/BA.5). With respect to the third sentence of Paragraph 44, Moderna admits that, subsequent to approval of Spikevax® (bivalent BA.4/BA.5), the FDA revised the EUA for Spikevax® to no longer include the original Spikevax® vaccine as booster doses. With respect to the fourth sentence of Paragraph 44, Moderna admits that, on October 12, 2022, the FDA authorized a single booster dose in individuals 6 to 17 years under the EUA for Spikevax® (bivalent BA.4/BA.5). With respect to the fifth sentence of Paragraph 44, Moderna admits that, on December 8, 2022, the FDA authorized Spikevax® (bivalent BA.4/BA.5) as a single booster dose in individuals 6 months to 5 years under the EUA. With respect to the sixth sentence of Paragraph 44, Moderna admits that, on April 18, 2023, the FDA authorized use of Spikevax® (bivalent BA.4/BA.5) in individuals 6 months and older, booster doses for individuals 65 years and older, and additional doses for immunocompromised individuals. With respect to the seventh sentence of Paragraph 44, Moderna admits that, subsequent to approval of Spikevax®

(bivalent BA.4/BA.5), the FDA revised the EUA for Spikevax® to no longer include the original

Spikevax® vaccine.  Moderna otherwise denies the allegations of Paragraph 44.

45.    Spikevax® (bivalent BA.4/BA.5) contains two mRNA components: (1) the same mRNA in Spikevax® (original monovalent), and (2) an mRNA designed for the Omicron variants B.1.1.529.4 and B.1.1.529.5 (also known as BA.4 and BA.5, respectively).  Moderna referred to the mRNA component designed for the Omicron BA.4 and BA.5 variants in Spikevax® (bivalent BA.4/BA.5) as "CX-034476," and it was given the recommended name "davesomeran" in the World Health Organization's register of International Nonproprietary Names for Pharmaceutical Substances.  Exhibit 22 (Proposed International Nonproprietary Names List 128 – COVID-19 Addendum) at 2.  On information and belief, davesomeran/CX-034476 is 4,088 nucleotides in length.[57]  Moderna also referred to Spikevax® (bivalent BA.4/BA.5) containing elasomeran and davesomeran as "mRNA-1273.222," and on information and belief, sold this version of the vaccine under the brand name Spikevax®.[58]

**ANSWER**    With respect to the first sentence of Paragraph 45, Moderna admits that its

product is Spikevax® bivalent Original/Omicron BA.4-5.  With respect to the second sentence of

Paragraph 45, Moderna states that the Exhibit referenced speaks for itself.  With respect to the

third sentence of Paragraph 45, Moderna denies the allegations and admits that the mRNA

sequence molecular length of CX-034476 is 4,089 nucleotides.  Moderna further states that the

footnote reference speaks for itself.  With respect to the fourth sentence of Paragraph 45, Moderna

admits that it sold a COVID-19 vaccine under the brand name Spikevax®.  Moderna otherwise

denies the allegations of Paragraph 45.

### Spikevax® (2023-2024 Formula)

46.    On June 22, 2023, Moderna submitted an amendment to its existing EUA request for authorization of a monovalent COVID-19 vaccine targeting the Omicron XBB.1.5 variant.  On September 11, 2023, the FDA granted full approval of Moderna's supplemental BLA for Spikevax® (2023-2024 Formula) single-dose regimen for individuals 6 months through 11 years of age, and individuals 12 years of age and older.

---

[57]    Sequence    of    davesomeran/CX-034476    available    at https://gsrs.ncats.nih.gov/ginas/app/ui/substances/TYF7YW7ENF,    archived    at https://perma.cc/X2W9-EGSQ.

[58] For ease of reference, we refer herein to the bivalent version of Spikevax® containing elasomeran and davesomeran as "Spikevax® (bivalent BA.4/BA.5)."

**ANSWER**     With respect to the first sentence of Paragraph 46, Moderna admits that, on June 22, 2023, Moderna completed submission of an amendment seeking to update its COVID-19 vaccine to a monovalent XBB.1.6 composition.  With respect to the second sentence of Paragraph 46, Moderna admits that, on September 11, 2023, the FDA approved a supplement submitted by Moderna regarding labeling.  Moderna otherwise denies the allegations of Paragraph 46.

47.     Moderna referred to the mRNA component in the Omicron XBB.1.5 version of Spikevax® (2023-2024 Formula) as "CX-038839," and it was given the recommended name "andusomeran" in the World Health Organization's register of International Nonproprietary Names for Pharmaceutical Substances. Exhibit 23 (Proposed International Nonproprietary Names List 129 – COVID-19) at 2. On information and belief, andusomeran/CX-038839 is 4,101 nucleotides in length.[59]  Moderna also referred to Spikevax® (2023-2024 Formula) containing andusomeran as "mRNA-1273.815," and on information and belief, sold this version of the vaccine under the brand name Spikevax®.[60]

**ANSWER**     With respect to the first sentence, Moderna states that the Exhibit referenced speaks for itself.  With respect to the second sentence, Moderna denies the allegations and admits that the mRNA sequence molecular length of CX-038839 is 4,102 nucleotides.  With respect to the third sentence, Moderna admits that it sold a COVID-19 vaccine under the brand name Spikevax®.  Moderna otherwise denies the allegations of Paragraph 47.

### Spikevax® (2024-2025 Formula)

48.     On June 7, 2024, Moderna submitted an amendment to its existing EUA request for authorization of a monovalent COVID-19 vaccine targeting the Omicron JN.1 variant, which was later modified to target the Omicron KP.2 variant.  On August 22, 2024, the FDA granted full approval of Moderna's supplemental BLA for Spikevax® (2024-2025 Formula) single-dose regimen for individuals 6 months through 11 years of age, and individuals 12 years of age and older.

---

[59]     Sequence of andusomeran/CX-038839 available at https://gsrs.ncats.nih.gov/ginas/app/ui/substances/4F9QRS7ZV2, archived at https://perma.cc/2UZ4-ZAAH.

[60] For ease of reference, we refer herein to the version of Spikevax® containing andusomeran, an mRNA targeting the XBB 1.5 variant, as "Spikevax® (2023-2024 Formula)."

**ANSWER**    With respect to the first sentence of Paragraph 48, Moderna admits that, on June 7, 2024, Moderna completed submission of an application for a Spikevax® formula targeting SARS-CoV-2 variant JN.1.  With respect to the second sentence of Paragraph 48, Moderna admits that, on August 22, 2024, the FDA approved Moderna's application for a Spikevax® formula targeting SARS-CoV-2 variant KP.2.  Moderna otherwise denies the allegations of Paragraph 48.

49.    Moderna referred to the mRNA targeting the Omicron KP.2 variant in Spikevax® (2024-2025 Formula) as "CX-046684."   On information and belief, CX-046684 is 4,092 nucleotides in length.[61] Moderna also referred to Spikevax® (2024-2025 Formula) as "mRNA-1273.712," and on information and belief, sold this version of the vaccine under the brand name Spikevax®.[62]

**ANSWER**    With respect to the first sentence of Paragraph 49, Moderna admits that its Spikevax® (2024-2025 Formula) contained mRNA, also known as "CX-046684," targeting the Omicron KP.2 variant.  With respect to the second sentence of Paragraph 49, Moderna states that CX-046684 is 4,092 nucleotides in length.  With respect to the second sentence of Paragraph 49, Moderna further states that the document cited speaks for itself.  With respect to the third sentence of Paragraph 49, Moderna admits that it sold a COVID-19 vaccine under the brand name Spikevax®.  Moderna otherwise denies the allegations of Paragraph 49.

**Spikevax® (2025-2026 Formula)**

50.    On May 23, 2025, Moderna submitted a supplemental BLA for authorization of a monovalent COVID-19 vaccine targeting the Omicron LP.8.1 variant.  On August 27, 2025, the FDA granted full approval of Moderna's supplemental BLA for Spikevax® (2025-2026 Formula) single-dose regimen for individuals 6 months through 11 years of age, and individuals 12 years of age and older.

---

[61] Sequence of CX-046684, available at https://gsrs.ncats.nih.gov/ginas/app/ui/substances/6a4684df-509a-4de1-bbdd-ec48890d7da9, archived at https://perma.cc/9XP9-XA7Y.
[62] For ease of reference, we refer herein to the 2024-2025 formula version of Spikevax® containing mRNA-1273.712, an mRNA targeting the Omicron KP.2 variant, as "Spikevax® (2024-2025 Formula)."

**ANSWER**    With respect to the first sentence of Paragraph 50, Moderna admits that it submitted an application to the FDA on May 23, 2025, for review of its Spikevax® 2025-2026 formula, targeting the SARS-CoV-2 variant LP.8.1.  With respect to the second sentence of Paragraph 50, Moderna admits that the FDA approved the supplemental BLA for the 2025-2026 formula for Spikevax®, which was approved for individuals 6 months through 64 years of age with at least one underlying condition that puts them at risk for sever outcomes from COVID-19, and all adults 65 years of age and older.  Moderna otherwise denies the allegations of Paragraph 50.

51.    Moderna referred to the mRNA targeting the Omicron LP.8.1 variant in Spikevax® (2025-2026 Formula) as "CX-051869."   On information and belief, CX-051869 is 4,088 nucleotides in length.[63]  Moderna also refers to Spikevax® (2025-2026 Formula) as "mRNA-1273.251," and on information and belief, sells this version of the vaccine under the brand name Spikevax®.[64,65]

**ANSWER**    With respect to the first sentence of Paragraph 51, Moderna admits that CX-051869 is an mRNA sequence designed to encode the pre-fusion-stabilized Spike (S) protein of the 2019 novel Coronavirus (SARS-CoV-2) LP.8.1 variant, and it is in the Spikevax® (2025-2026 Formula).  With respect to the second sentence of Paragraph 51, Moderna denies the allegations and admits that the mRNA sequence molecular length of XC-051869 is 4,089 nucleotides.  Moderna further states that the footnote reference speaks for itself.  With respect to the third

---

[63]    Sequence    of    CX-051869,    available    at https://gsrs.ncats.nih.gov/ginas/app/ui/substances/e8e99376-ca51-42c4-a44e-698b01648f0e, archived at https://perma.cc/L75A-6RYK.

[64] For ease of reference, we refer herein to the 2025-2026 Formula version of Spikevax® containing mRNA-1273.215, an mRNA targeting the Omicron LP.8.1 variant, as "Spikevax® (2025-2026 Formula)."

[65] The use of the terms "Spikevax®" and "Accused Products" without reference to a specific version of Moderna's COVID-19 vaccine refers to all versions of Moderna's Spikevax®: Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), Spikevax® (2023-2024 Formula), Spikevax® (2024-2025 Formula), and Spikevax® (2025-2026 Formula).

sentence of Paragraph 51, Moderna admits that CX-051869 is associated with mRNA-1273.251.

Moderna otherwise denies the allegations of Paragraph 51.

**MODERNA'S FINANCIAL WINDFALL FROM SPIKEVAX®**

52.    Moderna profited significantly from its use of CureVac's patented technologies. From December 2020 through April 2023, Moderna provided over 353 million doses of Spikevax® for use in the United States.  Exhibit 24 (April 26, 2023, archival form of CDC data, archived site available at https://perma.cc/2Y4U-KPSU) at 5.  In its Annual Reports (Forms 10-K) and as shown in the chart below, Moderna reported more than $14 billion in total U.S. revenue (and over $47 billion globally) for the fiscal period from 2020 through 2025:

| Fiscal Year | U.S. Revenue | Global Revenue |
|---|---|---|
| 2020 | $200 million | |
| 2021 | $5.4 billion | $17.7 billion |
| 2022 | $4.4 billion | $18.4 billion |
| 2023 | $1.7 billion | $6.7 billion |
| 2024 | $1.7 billion | $3.1 billion |
| 2025 | $1.2 billion | $1.8 billion |
| **Total** | **$14.6 billion** | **$47.7 billion** |

Exhibit 25 (excerpts from February 26, 2021, Moderna, Inc. FY2020 Annual Report (Form 10-K)) at 165–66; Exhibit 26 (excerpts from February 25, 2022, Moderna, Inc. FY2021 Annual Report (Form 10-K)) at 100, 107, 129; Exhibit 27 (excerpts from February 24, 2023, Moderna, Inc. FY2022 Annual Report (Form 10-K)) at 18, 127; Exhibit 28 (excerpts from February 23, 2024, Moderna, Inc. FY2023 Annual Report (Form 10-K)) at 6, 87; Exhibit 29 (Moderna, Inc. FY2024 Annual Report (Form 10-K) dated February 21, 2025) at 86; Exhibit 30 (Moderna, Inc. FY2025 Annual Report (Form 10-K) dated February 20, 2026) at 86.

**ANSWER**    With respect to the first sentence of Paragraph 52, Moderna denies the allegations.  With respect to the rest of Paragraph 52, the Exhibits cited speak for themselves.

Moderna otherwise denies the allegations of Paragraph 52.

53.    On information and belief, Moderna intends to continue profiting from CureVac's patented technologies, including by continuing to manufacture its infringing mRNA vaccines in the United States for sale and use throughout the global market.  On November 19, 2025, Moderna announced that it "will now operate full end-to-end manufacturing for its mRNA medicines in the U.S."  Exhibit 31 (November 19, 2025, Moderna Press Release) at 1.  Moderna's CEO, Stephan Bancel, stated "[b]y onshoring Drug Product manufacturing to our campus in Norwood, Massachusetts, we have completed the full manufacturing loop under one roof in the U.S."  *Id.*

**ANSWER**    With respect to the first sentence of Paragraph 53, Moderna denies the allegations.  With respect to the rest of Paragraph 53, the Exhibits cited speak for themselves.

Moderna otherwise denies the allegations of Paragraph 53.

54.    On information and belief, all Spikevax® sold and administered in the United States was distributed by Moderna, or through a Moderna distributor, to hospitals, pharmacies, clinics, and numerous other entities, for the benefit of individual vaccine recipients in the United States.

**ANSWER**    Moderna denies the allegations of Paragraph 54.

55.    On information and belief, and as explained below, Moderna manufactures the mRNA component in each of the Accused Products with the materially same process and purification steps.  *See, e.g.*, Exhibit 15 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 10 (noting that "[t]he manufacturing process and process controls [for Moderna's mRNA imelasomeran in its bivalent vaccine] are the same as currently approved [by the EMA] for the manufacture of elasomeran [the mRNA in the Spikevax® monovalent vaccine]"; *id*. at 11 (noting use of the same raw materials and starting materials for the mRNAs in the monovalent and bivalent vaccines, and further noting that Moderna uses the same manufacturing method for both mRNAs); *id*. at 19 (noting "there are no changes in the manufacturing process" as it relates to encapsulation of the mRNAs for the bivalent vaccine relative to the monovalent vaccine).

**ANSWER**    Moderna states that the Exhibit referenced in Paragraph 55 speaks for itself.

Moderna otherwise denies the allegations of Paragraph 55.

56.    Moderna made and continues to make (and/or have third parties make) the mRNA component in the Accused Products, as well as the finished drug product, in the United States for use in the United States and Europe.  As explained in the FDA's 2022 CMC Review Memo, for example, the mRNA component in Spikevax® is made by ModernaTX, Inc. in Norwood, Massachusetts, by Lonza Biologics, Inc. in Portsmouth, New Hampshire, and by Aldevron in Fargo, North Dakota, while the finished drug product is made by Catalent Biologics, LLC, and Baxter Pharmaceutical Solutions, LLC, both in Bloomington, Indiana:

> The on-site pre-licensure inspections of ModernaTX, Inc. (Norwood, MA), Lonza Biologics, Inc. (Portsmouth, NH), and Aldevron (Fargo, ND) manufacturing facilities that are involved in

the manufacture, controls, and storage of CX-024414 mRNA, [] and mRNA-1273 LNP DS were accomplished by the FDA inspection team … For the subject BLA, inspections for Catalent Biologics, LLC (Bloomington, IN) and Baxter Pharmaceutical Solutions, LLC (Bloomington, IN) facilities used for the fill/finish, in-process testing, release testing (sterility), and storage of mRNA-1273 DP were waived as these facilities were determined to have an acceptable compliance history for manufacturing of previously approved FDA licensed products ….

Exhibit 32 (January 28, 2022, FDA Chemistry, Manufacturing, and Controls (CMC) Review Memo) at vii; *see also id*. at 2, 8, 62, 63, 86, 90, 93, 94, 96, 97.  This is consistent with the FDA's January 2022 Approval Letter:

> Under this license, you are approved to manufacture COVID-19 Vaccine, mRNA, drug substance at ModernaTX, Inc., 1 Moderna Way, Norwood, MA, and Lonza Biologics, Inc., 101 International Drive, Portsmouth, NH.  The final formulated product will be manufactured, filled, labeled and packaged at Catalent Indiana, LLC (a subsidiary of Catalent Pharma Solutions, LLC), 1300 S.  Patterson Drive, Bloomington, IN, and Baxter BioPharma Solutions, 927 S. Curry Pike, Bloomington, IN.

Exhibit 11 (January 31, 2022, FDA Spikevax® (original monovalent) Approval Letter) at 1; *see also* Exhibit 15 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 17–18; Exhibit 33 (September 11, 2023, FDA Spikevax® (monovalent XBB.1.5) Approval Letter) at 1 (identifying as manufacturers for "COVID-19 Vaccine, mRNA (SPIKEVAX)", Catalent Indiana, LLC); Exhibit 34 (August 22, 2024, FDA Spikevax® (monovalent KP.2) Approval Letter) at 1 (identifying as manufacturers for "COVID-19 Vaccine, mRNA (SPIKEVAX)", Catalent Indiana, LLC); Exhibit 35 (September 4, 2024 EMA Spikevax (monovalent JN.1)) Assessment Report) at 133 (identifying ModernaTX as the "manufacturers of the biological active substances … ModernaTX, Inc. One Moderna Way Norwood, MA 02062 USA"); Exhibit 27 (excerpts from February 24, 2023, Moderna, Inc. FY2022 Annual Report (Form 10-K)) at 32–33 ("[W]e have built a dedicated in-house multi-building manufacturing campus in Norwood, MA, the Moderna Technology Center (MTC); Exhibit 28 (excerpts from February 23, 2024, Moderna, Inc. FY2023 Annual Report (Form 10-K)) at 24–25 (similar).

**ANSWER**    Moderna admits that some Accused Products have been made in the United States and that, for at least some time periods, components of one or more of the Accused Products have been made both inside and outside the United States.  Moderna states that the Exhibits referenced in Paragraph 56 speak for themselves.  Moderna otherwise denies the allegations of Paragraph 56.

57.     On information and belief, Moderna manufactured the Accused Products in the United States and shipped the same to other countries.  Exhibit 36 (Wingrove et al. "Vaccine Exports from U.S. Accelerate as Moderna Ships Abroad," Bloomberg, May 20, 2021) at 2.

**ANSWER**     Moderna admits that for at least some time periods, Moderna manufactured one or more of the Accused Products in the United States and shipped the same to other countries. Moderna states that the Exhibit referenced in Paragraph 57 speaks for itself.  Moderna otherwise denies the allegations of Paragraph 57.

58.     Moderna also made and continues to make (and/or have third parties make) the mRNA component in the Accused Products, as well as the finished drug product, outside of the United States, and on information and belief imports those products into the United States.  As explained in the EMA's January 2024 Product Information document, for example, the mRNA component in Spikevax® is made by several manufacturers in Europe.

**ANSWER**     With respect to the first sentence, Moderna admits that for at least some time periods, components of one or more of the Accused Products have been made outside the United States.  With respect to the second sentence, Moderna states that the document cited in Paragraph 58 speaks for itself.  Moderna otherwise denies the allegations of Paragraph 58.

## THE INVENTIONS DESCRIBED AND CLAIMED IN CUREVAC'S TFF PATENTS

59.     The inventions described and claimed in CureVac's TFF Patents satisfied a long-felt need (as of May 29, 2015, when CureVac filed the first priority patent application) by providing a solution to the problem of producing mRNA at quantities and purities sufficient (a) for late-stage clinical development of vaccines and (b) to meet the demand for such vaccines against new infectious diseases.

**ANSWER**     Moderna denies the allegations of Paragraph 59.

60.     As of May 29, 2015, there were no established manufacturing processes that could be easily adapted to rapidly produce a vaccine, such as an mRNA vaccine, against an emergent or genetically modified infectious organism at the scale needed to address the demands of the military or the general population during a public health crisis.  Thus, there was a need in the art to develop new and better methods for manufacturing vaccines, like mRNA vaccines, at sufficient scale and purity to respond to such situations.

**ANSWER**     Paragraph 60 consists of a characterization of the science and technology that CureVac appears to recite as background, or in an attempt to engage in premature expert

67

discovery and/or claim construction, and to which no response is required.  To the extent that a response is required, Moderna denies the allegations of Paragraph 60.

61.    As part of a consortium of companies, CureVac was awarded a multi-year grant from the U.S. Defense Advanced Research Projects Agency ("DARPA") that could provide as much as €150 million over four years to allow CureVac "to strengthen its technology platform and scale it up for commercial use."  Exhibit 37 (November 15, 2011, Genetic Engineering News Article, "CureVac, Sanofi Pasteur, and In-Cell-Art Collaborate on €33.1M DARPA-Supported Vaccine Program") at 2.  CureVac's TFF Patents, initially filed on May 29, 2015, are one result of that work.  DARPA funds research that reaches for "transformational breakthroughs" instead of "incremental advances."  Exhibit 38 (DARPA Mission) at 2.  These research projects, like the project pursued by CureVac, often involve significant risks of failure, but have the potential to yield enormous rewards if successful.

**ANSWER**    Moderna states that the Exhibits referenced in Paragraph 61 speak for themselves.  Moderna otherwise lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 61 and therefore denies the allegations.

62.    In CureVac's case, pilot-scale experiments conducted to develop new purification and production processes for nucleic acid-based vaccines required significant quantities of linear DNA and large mRNA molecules.  As of the May 29, 2015, priority date of CureVac's TFF patents, making such large quantities of DNA and mRNA was difficult, time-consuming, and labor-intensive.  Further, the equipment needed to generate such quantities of materials requires significant capital investments and skilled-labor commitments, all for highly speculative success.

**ANSWER**    Paragraph 62 consists of a characterization of the science and technology that CureVac appears to recite as background, or in an attempt to engage in premature expert discovery and/or claim construction, and to which no response is required.  To the extent a response is required, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 62 and therefore denies the allegations.

63.    Against this backdrop, CureVac's TFF project led to key advances in mRNA production and purification.  For example, the inventors on the TFF Patents demonstrated (and described in the common specification of the TFF Patents) the advancement that TFF unit operations can be used to effectively process shear-sensitive molecules, such as transcribed (soluble) mRNA, with membrane cassettes.  Exhibit 1 ('070 Patent) at 11:15-22.

**ANSWER**    Moderna denies the allegations of Paragraph 63.

64.     The inventors on the TFF Patents discovered how to purify shear-sensitive molecules using TFF membrane cassettes and scale-up that process for the development of mRNA-based vaccines. These critical and transformational discoveries are described and claimed in CureVac's TFF Patents.

**ANSWER**     Moderna denies the allegations of Paragraph 64.

**MODERNA'S PRODUCTION AND PURIFICATION OF mRNA**

65.     Moderna's manufacture, use, sale, marketing, offer for sale, and/or importation of the Accused Products—including Spikevax® (original monovalent), Spikevax® (bivalent BA.4/BA.5), Spikevax® (2023-2024 Formula), Spikevax® (2024-2025 Formula), and Spikevax® (2025-2026 Formula)—directly and indirectly infringed and/or continue to infringe the TFF Patents.

**ANSWER**     Moderna denies the allegations of Paragraph 65.

66.     On January 28, 2022, the FDA published a Chemistry, Manufacturing, and Controls (CMC) Review Memo recommending approval of Moderna's Biological License Application (BLA File STN 125752) to market its COVID-19 Vaccine, mRNA (SPIKEVAX). Exhibit 32 (January 28, 2022, FDA Chemistry, Manufacturing, and Controls (CMC) Review Memo). That memo is more than 120 pages in length, but is heavily redacted. The unredacted information includes the identities and locations of Moderna's and its partners' facilities where they manufacture both the mRNA component in the Accused Products, and the finished Accused Products, as explained below. The redacted information includes (i) how Moderna manufactures the mRNA, (ii) the raw materials and starting materials Moderna uses to manufacture the mRNA, and (iii) how Moderna developed its manufacturing process. *Id*. at 2–18.

**ANSWER**     Moderna states that the document cited in Paragraph 66 speaks for itself.

Moderna otherwise denies the allegations of Paragraph 66.

67.     Portions of Moderna's BLA describing its manufacturing process are disclosed in its Marketing Authorisation Application that Moderna appears to have submitted to the European Medicines Agency (EMA) to support its request for regulatory approval to market Spikevax® in Europe. Exhibit 39 (Moderna BLA § 3.2.S.2.5 Process Validation and/or Evaluation {CX-024414, Lonza Portsmouth}) at 4 ("Detailed descriptions of the manufacturing process, including the process flow diagram, are provided in [BLA] Section 3.2.S.2.2.").

**ANSWER**     Moderna states that the Exhibit referenced in Paragraph 67 speaks for itself.

Moderna otherwise denies the allegations of Paragraph 67.

68.     This BLA document shows that Moderna's mRNA manufacturing process for Spikevax® involves several "major steps," including *in vitro* transcription ("IVT") of a template DNA to produce an uncapped mRNA; filtration to purify the transcribed mRNA; capping the mRNA; and subsequent "additional purification and filtration steps":

69

> The manufacturing process for CX-024414 mRNA involves several major steps. The uncapped mRNA is transcribed from linear DNA utilising an in vitro transcription (IVT) reaction followed by purification and filtration steps. Next, mRNA is enzymatically capped followed by additional purification and filtration steps. Finally, CX-214414 mRNA is filtered, dispensed and stored.

Exhibit 40 (March 11, 2021, EMA Spikevax® (original monovalent) Assessment Report) at 17.

**ANSWER**    Moderna states that the Exhibit referenced in Paragraph 68 speaks for itself.

Moderna otherwise denies the allegations of Paragraph 68.

69.    On information and belief, Moderna's manufacturing activities include manufacturing a master cell bank (MCB) and a working cell bank (WCB) containing cells that, on information and belief, produce a circular plasmid DNA encoding the mRNA component in the Accused Products. *See* Exhibit 40 (March 11, 2021, EMA Spikevax® (original monovalent) Assessment Report) at 18. On information and belief, Moderna harvests that circular plasmid DNA and linearizes it by cutting the circular plasmid DNA at a predetermined site with a restriction endonuclease enzyme to create a linear DNA template for *in vitro* transcription. Exhibit 15 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 11 ("A unique linearised DNA plasmid template specific for CX-031302 mRNA was manufactured at ModernaTX, Inc. (Norwood, MA, USA).").

**ANSWER**    Moderna states that the Exhibits referenced in Paragraph 69 speak for

themselves. Moderna otherwise denies the allegations of Paragraph 69.

70.    On information and belief, following linearization of the circular plasmid DNA, Moderna purifies the linearization reaction mixture to remove enzymes, nucleotides, buffer components, and any other impurities that might interfere with the subsequent *in vitro* transcription reaction to produce the mRNA. Exhibit 40 (March 11, 2021, EMA Spikevax® (original monovalent) Assessment Report) at 18 ("The linearised plasmid DNA is considered as the starting material. … [T]he linearised plasmid DNA is in principle thoroughly tested."). On information and belief, for commercial-scale production, Moderna subjects the linearization reaction mixture to TFF using membrane cassettes to purify the linearized DNA template.

**ANSWER**    Moderna states that the Exhibit referenced in Paragraph 70 speaks for itself.

Moderna otherwise denies the allegations of Paragraph 70.

71.    On information and belief, following purification, the linearized DNA (template) is *in vitro* transcribed (IVT) to produce the (uncapped) mRNA. Exhibit 40 at 17 ("The uncapped mRNA is transcribed from linear DNA utilising an in vitro transcription (IVT) reaction …."); Exhibit 39 (Moderna BLA § 3.2.S.2.5 Process Validation and/or Evaluation {CX-024414, Lonza Portsmouth}) at 5 (reporting "In Vitro Transcription Process Performance Qualification Results"). The IVT reaction mixture includes the linearized DNA template, an RNA polymerase enzyme,

nucleoside triphosphates (the building blocks of RNA), a transcription buffer that, on information and belief, includes spermidine, and optionally an RNase inhibitor to prevent degradation of the transcribed mRNA by any ribonucleases that may also be present in the mixture.  *See* Exhibit 39 at 5 (reporting the use of several nucleoside triphosphates, adenosine triphosphate, cytidine triphosphate, guanosine triphosphate, N1-methylpseudouridine triphosphate, as well as ethylenediaminetetraacetic acid (EDTA) and pyrophosphatase).

**ANSWER**   Moderna states that the Exhibits referenced in Paragraph 71 speak for themselves.  Moderna otherwise denies the allegations of Paragraph 71.

72.   On information and belief, the RNA polymerase enzyme in the IVT reaction mixture is a T7 RNA polymerase.  Following the IVT reaction, the linearized DNA (template) in the IVT reaction mixture is degraded by the introduction of DNase I enzyme.  Exhibit 41 (Recommendation for an Emergency Use Listing of Covid-19 mRNA Vaccine (nucleoside modified) Submitted by Moderna Biotech Spain) at 5 (noting the transcription of the linearized DNA template is done by "using T7 RNA polymerase" and the linearized DNA "template is then degraded by DNase I.").

**ANSWER**   Moderna states that the Exhibit referenced in Paragraph 72 speaks for itself.  Moderna otherwise denies the allegations of Paragraph 72.

73.   On information and belief, the transcribed (uncapped) mRNA is collected from the IVT reaction mixture and purified by a process that includes one or more TFF steps.  *See* Exhibit 39 at 5 ("TFF = tangential flow filtration"), 6 ("In Vitro Transcription Tangential Flow Filtration Process Performance Qualification Results").

**ANSWER**   Moderna states that the Exhibit referenced in Paragraph 73 speaks for itself.  Moderna otherwise denies the allegations of Paragraph 73.

74.   On information and belief, Moderna uses TFF membrane cassettes in its filtration step to obtain purified transcribed mRNA.  *See* Exhibit 41 at 5 ("First tangential flow filtration (TFF) step is performed for buffer exchange and to concentrate the transcribed [mRNA].").

**ANSWER**   Moderna states that the Exhibit referenced in Paragraph 74 speaks for itself.  Moderna otherwise denies the allegations of Paragraph 74.

75.   On information and belief, following the TFF step, Moderna subjects the transcribed mRNA to an (oligo dT) chromatography step to further purify the transcribed mRNA by binding to its poly(A) tail.  *See* Exhibit 39 at 7 (referring to a "First Oligo dT Chromatography"); Exhibit 41 at 5 ("Full-length, polyA tail-containing RNA is subsequently purified by chromatography.").  Then, Moderna subjects the chromatographically pure transcribed mRNA to another TFF step.  Exhibit 39 at 8 (referring to and offering performance characterization results

for a "dT Tangential Flow Filtration Process"); Exhibit 41 at 5 ("A second TFF is performed to adjust the concentration and prepare the RNA for capping.").

**ANSWER**    Moderna states that the Exhibits referenced in Paragraph 75 speak for themselves.  Moderna otherwise denies the allegations of Paragraph 75.

76.    On information and belief, following the TFF and chromatography steps, Moderna "caps" the purified mRNA.  *See* Exhibit 39 at 9 (referring to and offering performance characterization results for a "Capping").  On information and belief, Moderna then purifies the capped mRNA from the capping reaction mixture by another TFF step using membrane cassettes. *Id.* at 10 (referring to and offering performance characterization results for a "Cap Tangential Flow Filtration Process"); Exhibit 41 at 5 ("A third TFF is performed for buffer exchange and concentration adjustment.").

**ANSWER**    Moderna states that the Exhibits referenced in Paragraph 76 speak for themselves.  Moderna otherwise denies the allegations of Paragraph 76.

77.    On information and belief, after this TFF step, Moderna subjects the purified capped mRNA to an (oligo dT) chromatography step to further purify the capped mRNA.  Exhibit 39 at 11 (referring to a "Second Oligo dT Chromatography Process Parameters"); Exhibit 41 at 6 ("Capped mRNA is subsequently purified by a second chromatography step.").  Moderna then subjects the mRNA to another TFF step to produce the mRNA component used in the Accused Products.  Exhibit 39 at 12 (referring to "Final Tangential Flow Filtration Process Parameters"); Exhibit 41 at 6 ("A final TFF is performed to concentrate the mRNA and to change the buffer.").

**ANSWER**    Moderna states that the Exhibits referenced in Paragraph 77 speak for themselves.  Moderna otherwise denies the allegations of Paragraph 77.

78.    On information and belief, Moderna encapsulates the purified, capped mRNA in a lipid nanoparticle (LNP) and combines it with a buffer and other preservatives (e.g., a cryoprotectant) in water to produce the finished drug product, *i.e.*, the Accused Products.  Exhibit 41 at 7.  To encapsulate the mRNA, Moderna mixes the mRNA with a lipid stock solution containing    "SM-102"    ((heptadecan-9-yl    8-{(2-hydroxyethyl)[6-oxo-6-(undecyloxy) hexyl]amino}octanoate), an ionizable lipid that is protonated and therefore cationic in the acidic conditions in which the (negatively charged) mRNA is complexed and encapsulated by the formation of the LNP with the other lipid stock solution components such as phospholipids, pegylated lipids, and cholesterol.  *Id.* at 6 (noting that in the manufacture of the LNP, the mRNA is mixed with SM-102, cholesterol, PEG2000-DMG (a pegylated lipid) and 1,2-distearoyl-sn-glycero-3-phosphatidylcholine or DSPC (phospholipids)); Exhibit 15 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 9.  The LNP encapsulation is similar to placing the mRNA component in a "package" that protects it and facilitates its delivery to a patient's cells. The mRNA component has the same biological properties and function before and after it is released from the LNP "package" in the patient's body.  That is, the protection that LNP

encapsulation offers does not change—but rather preserves—the basic utility of the mRNA component.

**ANSWER**    With respect to the first and second sentences of Paragraph 78, Moderna states that the Exhibits referenced speak for themselves. Moderna otherwise denies the allegations of the first and second sentences of Paragraph 78. With respect to the third, fourth, and fifth sentences of Paragraph 78, those sentences consist of a characterization of the science and technology that CureVac appears to recite as background, or in an attempt to engage in premature expert discovery and/or claim construction, and to which no response is required. To the extent that a response is required, Moderna admits that it developed, over years of extensive work, its proprietary LNP delivery technologies to encapsulate the mRNA for delivery, and that the LNPs function to protect the mRNA and deliver it into cells. Moderna otherwise denies the allegations of Paragraph 78.

79.    Thus, on information and belief, Moderna produces the Accused Products by (i) manufacturing and maintaining a cell bank for the production of a circular plasmid DNA encoding the mRNA in the Accused Products, (ii) harvesting and linearizing the circular plasmid DNA in a reaction mixture to produce a linearized DNA template for in vitro transcription, (iii) purifying the linearization reaction mixture by tangential flow filtration (TFF) using membrane cassettes to obtain a purified linearized DNA, (iv) transcribing the linearized DNA in a transcription reaction mixture to produce an uncapped mRNA with a poly(A) tail, (v) purifying the transcribed mRNA from the transcription reaction mixture through two TFF steps that use membrane cassettes and a chromatography step, (vi) capping the purified mRNA, (vii) purifying the capped mRNA through two TFF steps, at least one of which uses a membrane cassette, and a chromatography step, and (viii) encapsulating the mRNA in a liquid nanoparticle and combining the LNP-encapsulated mRNA with pharmaceutical excipients (*e.g.*, buffers, preservatives, sucrose, and water). On information and belief, at least one of the TFF steps described above includes use of a TFF membrane cassette filter.

**ANSWER**    To the extent Paragraph 79 is relying upon the Exhibits cited in Paragraphs 68 through 78 above, those Exhibits speak for themselves. Moderna otherwise denies the allegations of Paragraph 79.

80.    On information and belief, Moderna manufactures the mRNA(s) in each of the Accused Products by the same process and purification steps described above. Exhibit 15 at 10 ("The manufacturing process and process controls [for the imelasomeran in the Spikevax® bivalent

73

vaccine] are the same as currently approved [by the EMA] for the manufacture of elasomeran" in Spikevax® (original monovalent)); *id*. at 11 (noting use of the same raw materials and starting materials for the mRNAs in the bivalent and monovalent vaccines and further noting the same manufacturing method is used for both mRNAs); *id*. at 19 (noting "there are no changes in the manufacturing process" as it relates to encapsulation of the mRNAs for the bivalent vaccine relative to the monovalent vaccine).

**ANSWER**    Moderna denies the allegations of Paragraph 80.  Moderna also states that the Exhibit referenced in Paragraph 80 speaks for itself.

81.    When manufacturing an mRNA vaccine, it is critical to produce and purify the drug substance to pharmaceutical-grade quality at a scale that is large enough to meet market demand. With respect to the Accused Products, Moderna faced an even more critical production capacity issue because, particularly during the "lock-down" phase in 2020 and 2021, the global pandemic created an immediate, unprecedented demand for billions of doses of an mRNA vaccine.

**ANSWER**    With respect to the first sentence of Paragraph 81, Moderna admits that an mRNA vaccines should be pharmaceutical-grade quality.  With respect to the second sentence of Paragraph 81, Moderna admits that it was Moderna's own innovations that allowed Moderna to respond quickly to the unprecedented challenges of the COVID-19 pandemic.  Moderna otherwise denies the allegations of Paragraph 81.

82.    The inventions described and claimed in CureVac's TFF Patents provided and continue to provide high technical value and guidance to those in the field, including Moderna.  On information and belief, Moderna would not have been able to meet the demand for billions of doses of its mRNA vaccine without the use of CureVac's patented TFF methods.

**ANSWER**    Moderna denies the allegations of Paragraph 82.

### COUNT I – INFRINGEMENT OF THE '070 PATENT

83.    CureVac incorporates by reference the allegations set forth in paragraphs 1–82 as though fully set forth here.

**ANSWER**    Moderna incorporates its counterclaims and answers to Paragraphs 1 to 82 of the Complaint as set forth fully herein.

84.    The '070 Patent addressed an unmet need in the art as of May 29, 2015, for "a cost- and time-efficient" method of producing and "purify[ying] RNA at an industrial scale with high yield and pharmaceutical-grade purity, stability and/or shelf life."  Exhibit 1 ('070 Patent) at 2:32–36.  The '070 Patent describes and claims such a method, generally including the steps of providing

74

DNA encoding the RNA, transcribing the DNA to produce RNA, and purifying the transcribed RNA by one or more steps of TFF using a membrane cassette.  Separately, in providing the plasmid DNA, the method includes linearizing a plasmid DNA and purifying the linearized plasmid DNA by one or more TFF steps using a membrane cassette.

**ANSWER**    The '070 patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 84.

85.    The '070 Patent issued with 24 claims.  Claim 1 recites:

**1.** A method for producing and purifying a RNA, comprising the steps of

A) providing a plasmid DNA encoding the RNA by

A1) linearizing the plasmid DNA in a linearization reaction;

A2) optionally terminating the linearization reaction; and

A3) diafiltering and/or concentrating and/or purifying the linearization reaction comprising linearized plasmid DNA by one or more steps of tangential flow filtration TFF) using a TFF membrane cassette;

B) transcribing the linearized DNA to yield a solution comprising a transcribed RNA; and

C) diafiltering and/or concentrating and/or purifying the solution comprising the transcribed RNA by one or more steps of TFF, optionally a TFF membrane cassette.

**ANSWER**    The '070 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 85.

86.    On information and belief, the method Moderna uses to manufacture the mRNA in the Accused Products satisfies all of the limitations in at least Claim 1 of the '070 Patent, for the reasons described above.

**ANSWER**    Moderna denies the allegations of Paragraph 86.

87.    Moderna has directly infringed and continues to directly infringe one or more claims of the '070 Patent, either literally or under the doctrine of equivalents, by making the mRNA in the Accused Products and/or making, using, selling, offering for sale, and/or importing the Accused Products in the United States in violation of 35 U.S.C. § 271(a).

**ANSWER**    Moderna denies the allegations of Paragraph 87.

88.     Moderna has had knowledge of the TFF Patent Family since at least December 13, 2018, when Moderna was mailed an International Search Report from WIPO in connection with its International Patent Application No. PCT/US2018/046993 that identified CureVac's International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration" as one of three documents deemed relevant to the patentability of Moderna's application. Moderna was later mailed an International Search Report from WIPO on September 5, 2023 in connection with its International Patent Application No. PCT/US2023/067077 that again identified CureVac's International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration" as one of three documents deemed relevant to the patentability of Moderna's application. WO2016/193206 is a publication of PCT/EP2016/062152, filed May 30, 2016. The '070 Patent is the patent that issued from the national phase application of PCT/EP2016/062152. The application that led to the '070 Patent was published as Patent Publication No. US2018/0298372, and is also identified on both International Search Reports as a family member in the same patent family as WO2016/193206.

**ANSWER**     With respect to the first sentence of Paragraph 88, Moderna admits that Wolf, Greenfield & Sacks, P.C. was mailed an International Search Report from WIPO on December 13, 2018, in connection with its International Patent Application No. PCT/US2018/046993 that identified International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration." Moderna otherwise denies the allegations of the first sentence of Paragraph 88. With respect to the second sentence of Paragraph 88, Moderna admits that Wolf, Greenfield & Sacks, P.C. was mailed an International Search Report from WIPO on September 5, 2023 in connection with its International Patent Application No. PCT/US2023/067077 that identified International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration." Moderna otherwise denies the allegations of the second sentence of Paragraph 88. With respect to the third sentence of Paragraph 88, WO2016/193206 speaks for itself. With respect to the fourth and fifth sentences of Paragraph 88, the '070 Patent speaks for itself. Moreover, with respect to the fifth sentence of Paragraph 88, the International Search Reports from WIPO speak for themselves. Moderna otherwise denies the allegations of Paragraph 88.

89.     Moderna has indirectly infringed and continues to indirectly infringe one or more claims of the '070 Patent in violation of 35 U.S.C. § 271(b).  Moderna has actively induced and continues to actively induce third-party manufacturers to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '070 Patent by making the mRNA in the Accused Products, and/or the Accused Products themselves, in the United States, during the term of the '070 Patent.  For example, on information and belief, Moderna instructs and requires third-party manufacturers to use the purification process approved by the FDA that is described in Moderna's BLAs covering the Accused Products.

**ANSWER**     With respect to the first and second sentences of Paragraph 89, Moderna denies the allegations.  With respect to the third sentence of Paragraph 89, Moderna admits that Spikevax® is manufactured using a purification process approved by the FDA.  Moderna otherwise denies the allegations of Paragraph 89.

90.     Moderna has infringed and/or will infringe one or more claims of the '070 Patent, either literally or under the doctrine of equivalents, by using, selling, offering for sale, and/or importing the mRNA used in the Accused Products, and/or the Accused Products themselves, made by the patented process claimed in the '070 Patent, in violation of 35 U.S.C. § 271(g).

**ANSWER**     Moderna denies the allegations of Paragraph 90.

91.     Moderna's infringement of the claims of the '070 Patent has been and continues to be willful.  On information and belief, Moderna acted with deliberate disregard for the '070 Patent when it directly infringed, and encouraged direct infringement by others, with knowledge of the '070 Patent and knowledge that its actions and the actions it directed constituted infringement of the '070 Patent.

**ANSWER**     Moderna denies the allegations of Paragraph 91.

92.     CureVac has suffered and continues to suffer damages as a result of Moderna's infringement of the claims of the '070 Patent.  CureVac is entitled to an award of compensatory damages, including reasonable royalties, for Moderna's infringement of the '070 Patent.

**ANSWER**     Moderna denies the allegations of Paragraph 92.

93.     Moderna has engaged in egregious infringement behavior with respect to the '070 Patent, warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

**ANSWER**     Moderna denies the allegations of Paragraph 93.

94.     Moderna's conduct with respect to the '070 Patent makes this case stand out from others and warrants an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**ANSWER**     Moderna denies the allegations of Paragraph 94.

**COUNT II – INFRINGEMENT OF THE '910 PATENT**

95.     CureVac incorporates by reference the allegations set forth in paragraphs 1–94 as though fully set forth here.

**ANSWER**     Moderna incorporates its counterclaims and answers to Paragraphs 1 to 94

of the Complaint as set forth fully herein.

96.     Like the '070 Patent, the '910 Patent also describes and claims a commercial-scale method of producing purified RNA.  The method includes providing and linearizing plasmid DNA encoding an RNA having 500 to 10,000 nucleotides, transcribing the linearized DNA to produce the RNA, and purifying the transcribed RNA by one or more steps of tangential flow filtration (TFF) using a TFF membrane cassette.  The method also includes at least one step of DNA or RNA purification using chromatography.

**ANSWER**     The '910 Patent speaks for itself.  Moderna otherwise denies the allegations

of Paragraph 96.

97.     The '910 Patent issued with 26 claims.  Claim 1 recites:

> **1.** A method for producing purified RNA, comprising the steps of:
>
> > A1) providing plasmid DNA encoding a RNA of 500 to 10000 nucleotides in length;
> >
> > A2) linearizing the DNA with a restriction endonuclease to produce linearized DNA;
>
> B) transcribing the linearized DNA to yield transcribed RNA, wherein said transcribing is in a solution comprising: nucleoside triphosphates (NTPs); T7 polymerase, spermidine, salts and a HEPES or TRIS buffer; and
>
> C) purifying the transcribed RNA by performing at least one step of tangential flow filtration (TFF) using a TFF membrane cassette, thereby producing purified RNA, wherein the method comprises at least one step of DNA or RNA purification using chromatography.

**ANSWER**     The '910 Patent speaks for itself.  Moderna otherwise denies the allegations

of Paragraph 97.

98.     On information and belief, the method Moderna used and uses to manufacture the mRNA in the Accused Products satisfies all of the limitations in at least Claim 1 of the '910 Patent for all of the reasons described above.

**ANSWER**     Moderna denies the allegations of Paragraph 98.

99.    Moderna has directly infringed and continues to directly infringe one or more claims of the '910 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the mRNA in the Accused Products, and/or the Accused Products themselves, in the United States, in violation of 35 U.S.C. § 271(a).

**ANSWER**    Moderna denies the allegations of Paragraph 99.

100.    Moderna has had knowledge of the TFF Patent Family since at least December 13, 2018 when Moderna was mailed an International Search Report from WIPO in connection with its International Patent Application No. PCT/US2018/046993 that identified CureVac's International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration" as one of three documents deemed relevant to the patentability of Moderna's application.  Moderna was later mailed an International Search Report from WIPO on September 5, 2023 in connection with its International Patent Application No. PCT/US2023/067077 that again identified CureVac's International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration" as one of three documents deemed relevant to the patentability of Moderna's application.  WO2016/193206 is a publication of PCT/EP2016/062152, filed May 30, 2016.  The '910 Patent is a continuation of U.S. Application No. 16/934,279, filed Jul.  21, 2020, which is a continuation of U.S. application Ser.  No. 15/580,092, filed Dec.  6, 2017, now U.S. Pat. No. 10,760,070, which is a national phase application under 35 U.S.C. § 371 of International Application No. PCT/EP2016/062152.   The application that led to the '910 Patent was published as Patent Publication No. US2022/0325273, and is identified on the September 5, 2023 International Search Reports as a family member in the same patent family as WO2016/193206.

**ANSWER**    With respect to the first sentence of Paragraph 100, Moderna admits that Wolf, Greenfield & Sacks, P.C. was mailed an International Search Report from WIPO on December 13, 2018 in connection with its International Patent Application No. PCT/US2018/046993 that identified International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration." Moderna otherwise denies the allegations of the first sentence of Paragraph 100.  With respect to the second sentence of Paragraph 100, Moderna admits that Wolf, Greenfield & Sacks, P.C. was mailed an International Search Report from WIPO on September 5, 2023 in connection with its International Patent Application No. PCT/US2023/067077 that identified International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration." Moderna otherwise denies the allegations of the second sentence of

79

Paragraph 100. With respect to the third sentence of Paragraph 100, WO2016/193206 speaks for itself. With respect to the fourth and fifth sentences of Paragraph 100, the '910 Patent speaks for itself. Moreover, with respect to the fifth sentence of Paragraph 100, the September 5, 2023 International Search Report from WIPO speaks for itself. Moderna otherwise denies the allegations of Paragraph 100.

101. Moderna has indirectly infringed and continues to indirectly infringe one or more claims of the '910 Patent in violation of 35 U.S.C. § 271(b). Moderna has actively induced and continues to actively induce third-party manufacturers to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '910 Patent by making the mRNA in the Accused Products, and/or the Accused Products themselves, in the United States, during the term of the '910 Patent. For example, on information and belief, Moderna instructs and requires third party-manufacturers to use the purification process approved by the FDA that is described in Moderna's BLAs covering the Accused Products.

**ANSWER** With respect to the first and second sentences of Paragraph 101, Moderna denies the allegations. With respect to the third sentence of Paragraph 101, Moderna admits that Spikevax® is manufactured using a purification process approved by the FDA. Moderna otherwise denies the allegations of Paragraph 101.

102. Moderna has infringed or will infringe one or more claims of the '910 Patent, either literally or under the doctrine of equivalents, by using, selling, offering for sale, and/or importing the mRNA used in the Accused Products, and/or the Accused Products themselves, made by the patented process claimed in the '910 Patent, in violation of 35 U.S.C. § 271(g).

**ANSWER** Moderna denies the allegations of Paragraph 102.

103. Moderna's infringement of the claims of the '910 Patent has been and continues to be willful. On information and belief, Moderna acted with deliberate disregard for the '910 Patent when it directly infringed, and encouraged direct infringement by others, with knowledge of the '910 Patent and knowledge that its actions and the actions it directed constituted infringement of the '910 Patent.

**ANSWER** Moderna denies the allegations of Paragraph 103.

104. CureVac has suffered and continues to suffer damages as a result of Moderna's infringement of the claims of the '910 Patent. CureVac is entitled to an award of compensatory damages, including reasonable royalties, for Moderna's infringement of the '910 Patent.

**ANSWER** Moderna denies the allegations of Paragraph 104.

105.    Moderna has engaged in egregious infringement behavior with respect to the '910 Patent, warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

**ANSWER**    Moderna denies the allegations of Paragraph 105.

106.    Moderna's conduct with respect to the '910 Patent makes this case stand out from others and warrants an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**ANSWER**    Moderna denies the allegations of Paragraph 106.

### COUNT III – INFRINGEMENT OF THE '992 PATENT

107.    CureVac incorporates by reference the allegations set forth in paragraphs 1–106 as though fully set forth here.

**ANSWER**    Moderna incorporates its counterclaims and answers to Paragraphs 1 to 106 of the Complaint as set forth fully herein.

108.    The '992 Patent also describes and claims a commercial-scale method of producing purified RNA.  The method generally includes the steps of providing and linearizing plasmid DNA encoding an RNA having 500 to 10,000 nucleotides, and purifying the linearized DNA by tangential flow filtration (TFF).  The method also includes the steps of transcribing the purified linearized DNA to produce RNA, and purifying the transcribed RNA by one or more TFF steps using a TFF membrane cassette.

**ANSWER**    The '992 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 108.

109.    The '992 Patent issued with 30 claims.  Claim 1 recites:

**1.** A method for producing purified RNA, comprising the steps of:

A1) providing a plasmid DNA encoding a RNA, wherein said RNA is 500 to 10000 nucleotides in length;

A2) linearizing the plasmid DNA to produce linearized DNA;

A3) ultrafiltering the linearized DNA by tangential flow filtration (TFF), to produce purified linearized DNA;

B1) transcribing the purified linearized DNA to produce transcribed RNA;

B2) treating the transcribed RNA with a DNase; and C1) ultrafiltering the transcribed RNA by performing at least one step of TFF using a TFF membrane cassette having a molecular weight

81

cutoff (MWCO) of less than or equal to 500 kDa, to produce the purified RNA.

**ANSWER**    The '992 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 109.

110.    Independent Claim 6 differs from Claim 1 insofar as it specifies transcribing the DNA in the presence of a cap to produce a transcribed capped RNA and includes a further TFF filtration step to further purify the RNA:

> **6.** A method for producing purified RNA, comprising the steps of:
>
> > A1) providing a plasmid DNA encoding a RNA, wherein said RNA is 500 to 10000 nucleotides in length;
> >
> > A2) linearizing the plasmid DNA to produce linearized DNA;
> >
> > A3) ultrafiltering the linearized DNA by tangential flow filtration (TFF) to produce a purified linearized DNA;
> >
> > B1) transcribing the purified linearized DNA in the presence of a cap analog to produce a transcribed capped RNA;
> >
> > B2) treating the transcribed capped RNA with a DNase;
> >
> > C1) ultrafiltering the transcribed capped RNA by at least one step of TFF with an aqueous salt solution using a TFF membrane cassette having a molecular weight cutoff (MWCO) of less than or equal to 500 kDa; and C2) performing at least one further filtration using TFF, to obtain the purified RNA.

**ANSWER**    The '992 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 110.

111.    On information and belief, the method Moderna uses to manufacture the mRNA in the Accused Products satisfies all of the limitations in at least Claims 1 and 6 of the '992 Patent, for the reasons described above.

**ANSWER**    Moderna denies the allegations of Paragraph 111.

112.    Moderna has directly infringed and continues to directly infringe one or more claims of the '992 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the mRNA in the Accused Products, and/or the Accused Products themselves, in the United States in violation of 35 U.S.C. § 271(a).

**ANSWER**    Moderna denies the allegations of Paragraph 112.

82

113.    Moderna has had knowledge of the TFF Patent Family since at least December 13, 2018 when Moderna was mailed an International Search Report from WIPO in connection with its International Patent Application No. PCT/US2018/046993 that identified CureVac's International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration" as one of three documents deemed relevant to the patentability of Moderna's application.  Moderna was later mailed an International Search Report from WIPO on September 5, 2023 in connection with its International Patent Application No. PCT/US2023/067077 that again identified CureVac's International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration" as one of three documents deemed relevant to the patentability of Moderna's application. WO2016/193206 is a publication of PCT/EP2016/062152, filed May 30, 2016.  The '992 Patent is a continuation of U.S. application Ser.  No. 17/591,978, filed Feb.  3, 2022, which is a continuation of U.S. Application No. 16/934,279, filed Jul.  21, 2020, which is a continuation of U.S. Application No. 15/580, 092, filed Dec.  6, 2017, now U.S. Pat. No. 10,760,070, which is a national phase application under 35 U.S.C. § 371 of International Application No. PCT/EP2016/062152.  The application that led to the '992 Patent was published as Patent Publication No. US2023/0151352, and is identified on the September 5, 2023 International Search Report as a family member in the same patent family as WO2016/193206.

**ANSWER**    With respect to the first sentence of Paragraph 113, Moderna admits that Wolf, Greenfield & Sacks, P.C. was mailed an International Search Report from WIPO on December 13, 2018 in connection with its International Patent Application No. PCT/US2018/046993 that identified International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration." Moderna otherwise denies the allegations of the first sentence of Paragraph 113.  With respect to the second sentence of Paragraph 113, Moderna admits that Wolf, Greenfield & Sacks, P.C. was mailed an International Search Report from WIPO on September 5, 2023 in connection with its International Patent Application No. PCT/US2023/067077 that identified International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration." Moderna otherwise denies the allegations of the second sentence of Paragraph 113.  With respect to the third sentence of Paragraph 113, WO2016/193206 speaks for itself.  With respect to the fourth and fifth sentences of Paragraph 113, the '992 Patent speaks for itself.  Moreover, with respect to the fifth sentence of Paragraph 113, the September 5, 2023

International Search Report from WIPO speaks for itself. Moderna otherwise denies the allegations of Paragraph 113.

114. Moderna has indirectly infringed and continues to indirectly infringe one or more claims of the '992 Patent in violation of 35 U.S.C. § 271(b). Moderna has actively induced third-party manufacturers to directly, either literally or under the doctrine of equivalents, infringe one or more claims of the '992 Patent by making the mRNA in the Accused Products, and/or the Accused Products themselves, in the United States, during the term of the '992 Patent. For example, on information and belief, Moderna instructs and requires third party-manufacturers to use the purification process approved by the FDA that is described in Moderna's BLAs covering the Accused Products.

**ANSWER** With respect to the first and second sentences of Paragraph 114, Moderna denies the allegations. With respect to the third sentence of Paragraph 114, Moderna admits that Spikevax® is manufactured using a purification process approved by the FDA. Moderna otherwise denies the allegations of Paragraph 114.

115. Moderna has infringed or will infringe one or more claims of the '992 Patent, either literally or under the doctrine of equivalents, by using, selling, offering for sale, and/or importing the mRNA used in the Accused Products, and/or the Accused Products themselves, made by the patented process claimed in the '992 Patent, in violation of 35 U.S.C. § 271(g).

**ANSWER** Moderna denies the allegations of Paragraph 115.

116. Moderna's infringement of the claims of the '992 Patent has been and continues to be willful. On information and belief, Moderna acted with deliberate disregard for the '992 Patent when it directly infringed, and encouraged direct infringement by others, with knowledge of the '992 Patent and knowledge that its actions and the actions it directed constituted infringement of the '992 Patent.

**ANSWER** Moderna denies the allegations of Paragraph 116.

117. Moderna has caused (and CureVac has suffered and continues to suffer) damages as a result of Moderna's infringement of the claims of the '992 Patent. CureVac is entitled to an award of compensatory damages, including reasonable royalties, for Moderna's infringement of the '992 Patent.

**ANSWER** Moderna denies the allegations of Paragraph 117.

118. Moderna has engaged in egregious infringement behavior with respect to the '992 Patent warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

**ANSWER** Moderna denies the allegations of Paragraph 118.

119.    Moderna's conduct with respect to the '992 Patent makes this case stand out from others and warrants an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**ANSWER**    Moderna denies the allegations of Paragraph 119.

## COUNT IV – INFRINGEMENT OF THE '651 PATENT

120.    CureVac incorporates by reference the allegations set forth in paragraphs 1–119 as though fully set forth here.

**ANSWER**    Moderna incorporates its counterclaims and answers to Paragraphs 1 to 119 of the Complaint as set forth fully herein.

121.    The '651 Patent also describes and claims a commercial-scale method of producing purified RNA.  The method generally includes the steps of providing and linearizing plasmid DNA encoding an RNA that is no greater than 15,000 nucleotides, and purifying the linearized DNA by tangential flow filtration (TFF).  The method also includes the steps of transcribing the purified linearized DNA to produce RNA, purifying the transcribed RNA by one or more TFF steps using a TFF membrane cassette, and formulating the purified RNA.

**ANSWER**    The '651 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 121.

122.    The '651 Patent issued with 45 claims.  Claim 1 recites:

**1.** A method for producing formulated purified RNA, comprising the steps of:

A1) providing a plasmid DNA encoding a RNA polymerase promoter sequence, a RNA coding sequence, and a restriction endonuclease cleavage site, wherein the coding sequence for said RNA is no greater than 15,000 nucleotides in length;

A2) linearizing the plasmid DNA with a restriction endonuclease to produce linearized DNA;

A3) ultrafiltering the linearized DNA by tangential flow filtration (TFF), to produce purified linearized DNA;

B1) transcribing the purified linearized DNA to produce transcribed RNA;

B2) treating the transcribed RNA with a DNase;

C1) ultrafiltering the transcribed RNA by performing at least one step of TFF using a TFF membrane cassette having a molecular

85

weight cutoff (MWCO) of less than or equal to 500 kDa, to produce purified RNA; and

D) formulating the purified RNA to produce the formulated purified RNA.

**ANSWER**    The '651 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 122.

123.    Claim 31 recites:

**31**.  A method for producing formulated purified RNA, comprising the steps of:

A1) providing a plasmid DNA encoding a RNA polymerase promoter sequence, a RNA coding sequence, and a restriction endonuclease cleavage site, wherein the coding sequence for said RNA is no greater than 15,000 nucleotides in length;

A2) linearizing the plasmid DNA with a restriction endonuclease to produce linearized DNA;

B1) transcribing the linearized DNA in the presence of nucleoside triphosphates (NTPs), T7 RNA polymerase, salts, and a buffer to produce a transcribed RNA;

B2) treating the transcribed RNA with a DNase;

C1) performing at least a first step of tangential flow filtration (TFF) on the transcribed RNA;

C2) performing at least a first step of chromatography on the transcribed RNA to obtain a purified RNA;

C3) performing at least a second step of TFF on the purified RNA; and

D) formulating the purified RNA by complexing the purified RNA with a cationic compound, to obtain the formulated purified RNA.

**ANSWER**    Claim 31 of the '651 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 123.

124.    On information and belief, the method Moderna uses to manufacture the mRNA in the Accused Products satisfies all of the limitations in at least Claims 1 and 31 of the '651 Patent for the reasons described above.

**ANSWER**    Moderna denies the allegations of Paragraph 124.

125.    Moderna has directly infringed and continues to directly infringe one or more claims of the '651 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the mRNA in the Accused Products, and/or the Accused Products themselves, in the United States in violation of 35 U.S.C. § 271(a).

**ANSWER**    Moderna denies the allegations of Paragraph 125.

126.    Moderna has had knowledge of the TFF Patent Family since at least December 13, 2018 when Moderna was mailed an International Search Report from WIPO in connection with its International Patent Application No. PCT/US2018/046993 that identified CureVac's International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration" as one of three documents deemed relevant to the patentability of Moderna's application.  Moderna was later mailed an International Search Report from WIPO on September 5, 2023 in connection with its International Patent Application No. PCT/US2023/067077 that again identified CureVac's International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration" as one of three documents deemed relevant to the patentability of Moderna's application. WO2016/193206 is a publication of PCT/EP2016/062152, filed May 30, 2016.  The '651 Patent is a continuation of U.S. Application No. 17/820,242, filed August 16, 2022, which is a continuation of U.S. Application No. 17/591,978, filed February 3, 2022, which is a continuation of U.S. Application No. 16/934,279, filed July 21, 2020, now U.S. Patent No. 11,274,293, which is a continuation of U.S. Application No. 15/580,092, filed December 6, 2017, now U.S. Patent No. 10,760,070, which is a national phase application under 35 U.S.C. § 371 of International Application No. PCT/EP2016/062152.

**ANSWER**    With respect to the first sentence of Paragraph 126, Moderna admits that Wolf, Greenfield & Sacks, P.C. was mailed an International Search Report from WIPO on December 13, 2018 in connection with its International Patent Application No. PCT/US2018/046993 that identified International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration." Moderna otherwise denies the allegations of the first sentence of Paragraph 126.  With respect to the second sentence of Paragraph 126, Moderna admits that Wolf, Greenfield & Sacks, P.C. was mailed an International Search Report from WIPO on September 5, 2023 in connection with its International Patent Application No. PCT/US2023/067077 that identified International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step

of tangential flow filtration." Moderna otherwise denies the allegations of the second sentence of Paragraph 126. With respect to the third sentence of Paragraph 126, WO2016/193206 speaks for itself. With respect to the fourth sentence of Paragraph 126, the '651 Patent speaks for itself. Moderna otherwise denies the allegations of Paragraph 126.

127. Moderna has indirectly infringed and continues to indirectly infringe one or more claims of the '651 Patent in violation of 35 U.S.C. § 271(b). Moderna has actively induced and continues to actively induce third-party manufacturers to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '651 Patent by making the mRNA in the Accused Products, and/or the Accused Products themselves, in the United States, during the term of the '651 Patent. For example, on information and belief, Moderna instructs and requires third party-manufacturers to use the purification process approved by the FDA that is described in Moderna's BLAs covering the Accused Products.

**ANSWER**    With respect to the first and second sentences of Paragraph 127, Moderna denies the allegations. With respect to the third sentence of Paragraph 127, Moderna admits that Spikevax® is manufactured using a purification process approved by the FDA. Moderna otherwise denies the allegations of Paragraph 127.

128. Moderna has infringed or will infringe one or more claims of the '651 Patent, either literally or under the doctrine of equivalents, by using, selling, offering for sale, and/or importing the mRNA used in the Accused Products, and/or the Accused Products themselves, made by the patented process claimed in the '651 Patent, in violation of 35 U.S.C. § 271(g).

**ANSWER**    Moderna denies the allegations of Paragraph 128.

129. Moderna's infringement of the claims of the '651 Patent has been and continues to be willful. On information and belief, Moderna acted with deliberate disregard for the '651 Patent when it directly infringed, and encouraged direct infringement by others, with knowledge of the '651 Patent and knowledge that its actions and the actions it directed constituted infringement of the '651 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 129.

130. Moderna has caused (and CureVac has suffered and continues to suffer) damages as a result of Moderna's infringement of the claims of the '651 Patent. CureVac is entitled to an award of compensatory damages, including reasonable royalties, for Moderna's infringement of the '651 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 130.

131.    Moderna has engaged in egregious infringement behavior with respect to the '651 Patent warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

**ANSWER**    Moderna denies the allegations of Paragraph 131.

132.    Moderna's conduct with respect to the '651 Patent makes this case stand out from others and warrants an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**ANSWER**    Moderna denies the allegations of Paragraph 132.

## COUNT V – INFRINGEMENT OF THE '605 PATENT

133.    CureVac incorporates by reference the allegations set forth in paragraphs 1–132 as though fully set forth here.

**ANSWER**    Moderna incorporates its counterclaims and answers to Paragraphs 1 to 132 of the Complaint as set forth fully herein.

134.    The '605 Patent also describes and claims a commercial-scale method of producing purified RNA.  The method generally includes the steps of providing and linearizing plasmid DNA encoding an RNA that is no greater than 15,000 nucleotides, and purifying the linearized DNA by tangential flow filtration (TFF).  The method also includes the steps of transcribing the purified linearized DNA to produce RNA, purifying the transcribed RNA by (i) one or more TFF steps using a TFF membrane cassette (ii) chromatography, and (iii) and a further TFF step using a TFF membrane cassette, followed by a step of formulating the purified RNA.

**ANSWER**    The '605 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 134.

135.    The '605 Patent issued with 55 claims.  Claim 1 recites:

> **1.** A method for producing formulated purified RNA, comprising the steps of:
>
> > A1) providing a plasmid DNA comprising a RNA polymerase promoter sequence, a RNA coding sequence, and a restriction endonuclease cleavage site, wherein the coding sequence for said RNA is no greater than 15,000 nucleotides in length;
> >
> > A2) linearizing the plasmid DNA with a restriction endonuclease to produce linearized DNA;
> >
> > A3) ultrafiltering the linearized DNA by tangential flow filtration (TFF), to produce purified linearized DNA;

B1) transcribing the purified linearized DNA to produce transcribed RNA;

B2) treating the transcribed RNA with a DNase;

C1) performing at least one step of TFF using a TFF membrane cassette having a molecular weight cutoff (MWCO) of less than or equal to 500 kDa;

C2) further purifying the RNA by a step filtration or chromatography;

C3) performing at least one further step of TFF using a TFF membrane cassette to produce purified RNA; and

D) formulating the purified RNA to produce the formulated purified RNA.

**ANSWER**    The '605 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 135.

136.    Claim 28 recites:

**28**. A method for producing formulated purified RNA, comprising the steps of:

A1) providing a plasmid DNA comprising a RNA polymerase promoter sequence, a RNA coding sequence, and a restriction endonuclease cleavage site, wherein the coding sequence for said RNA is no greater than 15,000 nucleotides in length;

A2) linearizing the plasmid DNA with a restriction endonuclease to produce linearized DNA;

A3) ultrafiltering the linearized DNA by tangential flow filtration (TFF), to produce purified linearized DNA;

B1) transcribing the purified linearized DNA to produce transcribed RNA;

B2) treating the transcribed RNA with a DNase;

C1) performing at least one step of TFF using a TFF membrane cassette having a molecular weight cutoff (MWCO) of less than or equal to 500 kDa;

C2) further purifying the RNA by a step filtration or chromatography to produce purified RNA; and

D) formulating the purified RNA to produce the formulated purified RNA.

**ANSWER**    Claim 28 of the '605 patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 136.

137.    On information and belief, the method Moderna uses to manufacture the mRNA in the Accused Products satisfies all of the limitations in at least Claims 1 and 28 of the '605 Patent for all of the reasons described above.

**ANSWER**    Moderna denies the allegations of Paragraph 137.

138.    Moderna has directly infringed and continues to directly infringe one or more claims of the '605 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the mRNA in the Accused Products, and/or the Accused Products themselves, in the United States, in violation of 35 U.S.C. § 271(a).

**ANSWER**    Moderna denies the allegations of Paragraph 138.

139.    Moderna has had knowledge of the TFF Patent Family since at least December 13, 2018 when Moderna was mailed an International Search Report from WIPO in connection with its International Patent Application No. PCT/US2018/046993 that identified CureVac's International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration" as one of three documents deemed relevant to the patentability of Moderna's application.  Moderna was later mailed an International Search Report from WIPO on September 5, 2023 in connection with its International Patent Application No. PCT/US2023/067077 that again identified CureVac's International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration" as one of three documents deemed relevant to the patentability of Moderna's application. WO2016/193206 is a publication of PCT/EP2016/062152, filed May 30, 2016.  The '605 Patent is a continuation of U.S. Application No. 18/198,258, filed May 16, 2023, which is a continuation of U.S. Application No. 17/820,242, filed August 16, 2022, now U.S. Patent No. 11,760,992, which is a continuation of U.S. Application No. 17/591,978, filed February 3, 2022, now U.S. Patent No. 11,667,910, which is a continuation of U.S. Application No. 16/934,279, filed July 21, 2020, now U.S. Patent No. 11,274,293, which is a continuation of U.S. Application No. 15/580,092, filed December 6, 2017, now U.S. Patent No. 10,760,070, which is a national phase application under 35 U.S.C. § 371 of International Application No. PCT/EP2016/062152.

**ANSWER**    With respect to the first sentence of Paragraph 139, Moderna admits that Wolf, Greenfield & Sacks, P.C. was mailed an International Search Report from WIPO on December 13, 2018 in connection with its International Patent Application No. PCT/US2018/046993 that identified International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration."

Moderna otherwise denies the allegations of the first sentence of Paragraph 139. With respect to the second sentence of Paragraph 139, Moderna admits that Wolf, Greenfield & Sacks, P.C. was mailed an International Search Report from WIPO on September 5, 2023 in connection with its International Patent Application No. PCT/US2023/067077 that identified International Publication WO2016/193206 titled "A method for producing and purifying RNA, comprising at least one step of tangential flow filtration." Moderna otherwise denies the allegations of the second sentence of Paragraph 126. With respect to the third sentence of Paragraph 139, WO2016/193206 speaks for itself. With respect to the fourth sentence of Paragraph 139, the '605 Patent speaks for itself. Moderna otherwise denies the allegations of Paragraph 139.

140. Moderna has indirectly infringed and continues to indirectly infringe one or more claims of the '605 Patent in violation of 35 U.S.C. § 271(b). Moderna has actively induced and continues to actively induce third-party manufacturers to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '605 Patent by making the mRNA in the Accused Products, and/or the Accused Products themselves, in the United States, during the term of the '605 Patent. For example, on information and belief, Moderna instructs and requires third party-manufacturers to use the purification process approved by the FDA that is described in Moderna's BLAs covering the Accused Products.

**ANSWER** With respect to the first and second sentences of Paragraph 140, Moderna denies the allegations. With respect to the third sentence of Paragraph 140, Moderna admits that Spikevax® is manufactured using a purification process approved by the FDA. Moderna otherwise denies the allegations of Paragraph 140.

141. Moderna has infringed or will infringe one or more claims of the '605 Patent, either literally or under the doctrine of equivalents, by using, selling, offering for sale, and/or importing the mRNA used in the Accused Products, and/or the Accused Products themselves, made by the patented process claimed in the '605 Patent, in violation of 35 U.S.C. § 271(g).

**ANSWER** Moderna denies the allegations of Paragraph 141.

142. Moderna's infringement of the claims of the '605 Patent has been and continues to be willful. On information and belief, Moderna acted with deliberate disregard for the '605 Patent when it directly infringed, and encouraged direct infringement by others, with knowledge of the '605 Patent and knowledge that its actions and the actions it directed constituted infringement of the '605 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 142.

143.    Moderna has caused (and CureVac has suffered and continues to suffer) damages as a result of Moderna's infringement of the claims of the '605 Patent.  CureVac is entitled to an award of compensatory damages, including reasonable royalties, for Moderna's infringement of the '605 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 143.

144.    Moderna has engaged in egregious infringement behavior with respect to the '605 Patent warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

**ANSWER**    Moderna denies the allegations of Paragraph 144.

145.    Moderna's conduct with respect to the '605 Patent makes this case stand out from others and warrants an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**ANSWER**    Moderna denies the allegations of Paragraph 145.

### COUNT VI – INFRINGEMENT OF THE '312 Patent

146.    CureVac incorporates each of the above Paragraphs 1–145 as though fully set forth here.

**ANSWER**    Moderna incorporates its counterclaims and answers to Paragraphs 1 to 145 of the Complaint as set forth fully herein.

147.    The '312 Patent is directed to methods for stabilizing mRNA molecules by altering their coding sequence.  The inventors of the '312 Patent discovered that increasing the content of guanine and cytosine nucleotides ("the G/C content") in the coding sequence of an mRNA increases its stability and allows for increased production of protein ("polypeptide") from the mRNA.

**ANSWER**    The '312 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 147.

148.    The '312 Patent issued with sixteen claims.  Claim 1 recites:

> **1.** A method for producing a stabilized mRNA comprising synthesizing a stabilized mRNA molecule encoding a polypeptide, wherein the stabilized mRNA molecule encoding the polypeptide comprises a coding sequence that has an increased Guanine/Cytosine (G/C) content relative to the original coding sequence encoding the polypeptide, said relative G/C content being increased by at least 7 percentage points compared to the original

coding sequence encoding the polypeptide, to thereby produce a stabilized mRNA molecule, wherein said increase in relative G/C content results in the elimination of at least one destabilizing sequence element (DSE), wherein the stabilized mRNA molecule exhibits enhanced expression of the polypeptide compared to mRNA having the original coding sequence encoding the polypeptide.

**ANSWER**    The '312 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 148.

149.    Claims 2 and 3 serially narrow Claim 1:

**2.** The method of claim 1, wherein the sequence encoding the polypeptide has a G/C content increased by at least 15 percentage points compared to the original nucleic acid sequence encoding the polypeptide.

**3.** The method of claim 2, wherein the sequence encoding the polypeptide has a G/C content increased by at least 20 percentage points compared to the original nucleic acid sequence encoding the polypeptide.

**ANSWER**    The '312 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 149.

150.    Claims 7–9 serially narrow Claim 1:

**7.** The method of claim 1, wherein synthesizing the stabilized mRNA comprises producing a DNA molecule encoding the stabilized mRNA.

**8.** The method of claim 7, wherein synthesizing the stabilized mRNA further comprises transcribing the stabilized mRNA from the DNA molecule.

**9.** The method of claim 8, wherein the transcription is in vitro transcription.

**ANSWER**    The '312 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 150.

151.    Claim 14 depends from Claim 1, and recites:

**14.** The method of claim 1, further comprising the formulating the stabilized mRNA into a pharmaceutically acceptable carrier.

**ANSWER**   The '312 Patent speaks for itself. Moderna otherwise denies the allegations of Paragraph 151.

152.   Claim 15 depends from Claim 1, and recites:

**15.** The method of claim 1, further comprising synthesizing a stabilized mRNA comprising at least one nucleotide position replaced with a nucleotide analogue.

**ANSWER**   The '312 Patent speaks for itself. Moderna otherwise denies the allegations of Paragraph 152.

153.   On information and belief, the method Moderna used to manufacture Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), and Spikevax® (2023-2024 Formula) satisfies all of the limitations of at least Claims 1-3, 7–9, 14, and 15 of the '312 Patent. Moderna's actions with respect to these products have thus infringed at least these claims of the '312 Patent.

**ANSWER**   Moderna denies the allegations of Paragraph 153.

154.   On information and belief, Moderna increased the G/C-content of the coding sequence of elasomeran/CX-024414, which was present in Spikevax® (original monovalent), Spikevax® (bivalent BA.1), and Spikevax® (bivalent BA.4/BA.5), relative to the original coding sequence. In fact, the coding sequence in elasomeran has a G/C-content greater than 62%, which is more than a 20% point increase over the original coding sequence. *See* Exhibit 20 (Proposed International Nonproprietary Names List 125 – COVID-19) at 3 (identifying GenBank ID MN908947.3 as the original coding sequence for elasomeran).

**ANSWER**   Moderna admits that the coding sequence in elasomeran has a G/C-content greater than 62%. The Exhibit referenced in Paragraph 154 speaks for itself. Moderna otherwise denies the allegations in Paragraph 154.

155.   On information and belief, Moderna increased the G/C content of imelasomeran/CX-031302, which was present with elasomeran in Spikevax® (bivalent BA.1), and davesomeran/CX-034476, which was present with elasomeran in Spikevax® (bivalent BA.4/BA.5), relative to the original coding sequences. On information and belief, Moderna increased the G/C-content of these mRNAs relative to their original sequences in roughly the same amount that it increased G/C-content in elasomeran relative to its original sequence.

**ANSWER**     Moderna denies the allegations in Paragraph 155.

156.    On information and belief, Moderna increased the G/C-content of the coding sequence of andusomeran/CX-038839, which was present in Spikevax® (2023-2024 Formula), relative to the original coding sequence.  In fact, andusomeran has a G/C-content greater than 62%, which is more than a 20% point increase over the original coding sequence.  *See* Exhibit 23 (Proposed International Nonproprietary Names List 129 – COVID-19) at 2 (identifying GISAID: EPI_ISL_15948646 as the original coding sequence for andusomeran).

**ANSWER**     Moderna admits that andusomeran has a G/C-content greater than 62%.

Moderna states that the Exhibit referenced in Paragraph 156 speaks for itself.  Moderna otherwise

denies the allegations of Paragraph 156.

157.    On information and belief, the method Moderna used to increase the G/C-content of the coding sequences in elasomeran, imelasomeran, davesomeran, and andusomeran relative to their original coding sequences resulted in each mRNA being more stable.  Indeed, Moderna promoted the stability effects of increasing G/C content in its mRNAs in David M. Mauger et al., *mRNA Structure Regulates Protein Expression Through Changes in Functional Half-Life*, 116(48) Proc. Natl. Acad. Sci. U.S.A. 24075, 24075-83 (2019).  Moderna developed the mRNA molecules in Spikevax® by, among other things, increasing the G/C content of their coding regions to increase the stability of the molecules and to increase the expression of protein from those molecules.  In its 2020 annual report, Moderna explained that in addition to codon preferences, "the amount of protein produced is also determined by the secondary structure of mRNA, or the propensity of mRNA to fold on itself, with more structured mRNAs producing more protein."  Exhibit 25 (excerpts from February 26, 2021, Moderna, Inc. FY2020 Annual Report (Form 10-K)) at 13-14.

**ANSWER**     With respect to the first sentence of Paragraph 157, Moderna denies the

allegations.  With respect to the second sentence of Paragraph 157, Moderna states that the article

cited speaks for itself.  With respect to the third sentence of Paragraph 157, Moderna denies the

allegations.  With respect to the fourth sentence of Paragraph 157, the document cited speaks for

itself.  Moderna otherwise denies the allegations of Paragraph 157.

158.    On information and belief, the method Moderna used to increase the G/C content of the coding sequences in elasomeran, imelasomeran, davesomeran, and andusomeran relative to their original coding sequences resulted in the elimination of at least one destabilizing sequence element in each coding sequence.  On information and belief, Moderna's increase in G/C content of the coding sequences of elasomeran, imelasomeran, davesomeran, and andusomeran relative to their original coding sequences resulted in each accused mRNA exhibiting enhanced expression of spike protein compared to the original coding sequence.  Moderna's manufacture of the Accused Products therefore infringed at least Claims 1-3 of the '312 Patent.

**ANSWER**    Moderna denies the allegations in Paragraph 158.

159.    Moderna made each mRNA used in the manufacture of Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), and Spikevax® (2023-2024 Formula) by producing a template DNA molecule encoding the mRNA, followed by the *in vitro* transcription of the template DNA molecule to produce the mRNA.  Exhibit 25 (excerpts from February 26, 2021, Moderna, Inc. FY2020 Annual Report (Form 10-K)) at 16 ("Our platform creates mRNA using a cell-free approach called *in vitro* transcription in which an RNA polymerase enzyme binds to and transcribes a DNA template, adding the nucleotides encoded by the DNA to the growing RNA strand."); Exhibits 26 at 12, 27 at 12, 28 at 10, 29 at 10, 30 at 10 (Annual Reports of Moderna Inc. for FY2021-25) (stating same).  Moderna's manufacture of the Accused Products therefore infringed at least Claims 7-9 of the '312 Patent.

**ANSWER**    With respect to the first sentence of Paragraph 159, the exhibits cited speak for themselves.  Moderna otherwise denies the allegations of the first sentence of Paragraph 159.

With respect to the second sentence of Paragraph 159, Moderna denies the allegations.

160.    On information and belief, the accused Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), and Spikevax® (2023-2024 Formula) were formulated with a pharmaceutically acceptable carrier.  On information and belief, those vaccine products included the following excipients: (1) SM-102 (heptadecan-9-yl 8-{(2-hydroxyethyl)[6-oxo-6-(undecyloxy)hexyl]amino}octanoate); (2) cholesterol; (3) 1,2-distearoyl-sn-glycero-3-phosphocholine (DSPC); (4) 1,2-dimyristoyl-rac-glycero-3-methoxypolyethylene glycol-2000 (PEG2000-DMG); (5) tromethamine; (6) tromethamine hydrochloride; (7) acetic acid; (8) sodium acetate trihydrate, (9) sucrose; and (10) water for injection.  Exhibit 42 (Spikevax® (original monovalent) Package Insert) at 11; Exhibit 15 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 9; Exhibit 43 (Spikevax® (bivalent BA.4/BA.5) Package insert) at 48; Exhibit 44 (Spikevax® (2023-2024 Formula) Package Insert) at 28.  Moderna's manufacture of the Accused Products therefore infringed at least Claim 14 of the '312 Patent.

**ANSWER**    With respect to the first sentence of Paragraph 160, Moderna admits that the accused Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), and Spikevax® (2023-2024 Formula) were formulated with a pharmaceutically acceptable carrier.  With respect to the second sentence of Paragraph 160, the exhibits cited speak for themselves.  Moderna otherwise denies the allegations.  With respect to the third sentence of Paragraph 160, Moderna denies the allegations.

161.    On information and belief, when each mRNA in the Accused Products was transcribed from its respective plasmid, a modified form of uridine, 1-methyl-3'-pseudouridylyl, was incorporated at the positions that would otherwise contain uridine residues.  Exhibit 25

(excerpts from February 26, 2021, Moderna, Inc. FY2020 Annual Report (Form 10-K)) at 13; Exhibit 27 (excerpts from February 24, 2023, Moderna, Inc. FY2022 Annual Report (Form 10-K)) at 11 (stating same); Exhibit 29 (Moderna, Inc. FY2024 Annual Report (Form 10-K) dated February 21, 2025) at 9 (stating same); Exhibit 40 (March 11, 2021, EMA Spikevax® (original monovalent) Assessment Report) at 17; Exhibit 15 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 10; Exhibit 16 (October 19, 2022, EMA Spikevax® (bivalent BA.4/BA.5) Assessment Report) at 8; Exhibit 45 (September 11, 2023, FDA Spikevax® (2023-2024 Formula) EUA Review Memo) at 17. Moderna's manufacture of the Accused Products therefore infringed at least Claim 15 of the '312 Patent.

**ANSWER**    With respect to the first sentence of Paragraph 161, the exhibits cited speak for themselves. Moderna otherwise denies the allegations. With respect to the second sentence of Paragraph 161, Moderna denies the allegations.

162.    Thus, on information and belief, Moderna has directly infringed at least Claims 1-3, 7–9, 14, and 15 of the '312 Patent, either literally or under the doctrine of equivalents, by manufacturing the mRNA in Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), and Spikevax® (2023-2024 Formula) in the United States for use in the Accused Products sold in the United States and outside the United States, in violation of 35 U.S.C. § 271(a).

**ANSWER**    Moderna denies the allegations of Paragraph 162.

163.    Moderna is a sophisticated competitor in this relatively small market. Moderna was aware of CureVac's role as a market leader in research and development of mRNA-based technologies. In fact, in November of 2022, Moderna jointly organized the 10th Annual mRNA Health Conference with CureVac and others. Exhibit 46 (November 11, 2022, Moderna Blog Post). As described on Moderna's website, the mRNA Health Conference is "the only annual conference dedicated solely to mRNA-based science and medicine. The event brings together thought leaders from pharma, biotech and academic institutions to learn the latest on the rapidly expanding science, business, and regulatory landscape of mRNA medicine." *Id*. At least as early as 2014, Moderna has been aware of CureVac's patent family that includes the '312 Patent, as a result of licensing discussions that occurred between Moderna and CureVac related to several patent families, including the '312 Patent family. Additionally, on information and belief, Moderna has had knowledge of the '312 Patent because it was actively tracking the prosecution of the '312 Patent family. For example, in its U.S. Patent No. 9,572,897 ("the '897 Patent"), Moderna recites the priority chain for the '312 Patent and expressly incorporated the entirety of its contents by reference into the body of the '897 Patent. To the extent Moderna contends it was unaware of its infringement of the '312 Patent, it must have taken deliberate steps to avoid learning of the '312 Patent and confirming its infringement.

**ANSWER**    With respect to the first sentence of Paragraph 163, it consists of a characterization that CureVac appears to recite as background, or in an attempt to engage in

premature expert discovery, and to which no response is required. To the extent a response is required, Moderna denies the allegations at least because it is unclear what "this relatively small market" refers to. With respect to the second sentence of Paragraph 163, Moderna denies the allegations. With respect to the third, fourth, and fifth sentences of Paragraph 163, the Exhibit cited speaks for itself. With respect to the sixth sentence of Paragraph 163, Moderna admits that it had discussions with CureVac in 2014. With respect to the seventh sentence of Paragraph 163, Moderna denies the allegations. With respect to the eighth sentence of Paragraph 163, U.S. Patent No. 9,572,897 speaks for itself. With respect to the ninth sentence of Paragraph 163, Moderna denies the allegations. Moderna otherwise denies the allegations of Paragraph 163.

164.    Moderna has indirectly infringed one or more claims of the '312 Patent in violation of 35 U.S.C. § 271(b), by actively inducing third-party manufacturers to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '312 Patent by manufacturing the mRNA in, and/or making the accused Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), and Spikevax® (2023-2024 Formula), in the United States, during the term of the '312 Patent. For example, on information and belief, Moderna instructed and required third party-manufacturers to manufacture the mRNA in the accused Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), and Spikevax® (2023-2024 Formula) using the coding sequence that is described in Moderna's BLAs covering the Accused Products with knowledge of the '312 Patent and with knowledge that it was encouraging the direct infringement of the '312 Patent.

**ANSWER**    Moderna admits that Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), and Spikevax® (2023-2024 Formula) use the coding sequence that is described in the relevant Moderna BLA. Moderna otherwise denies the allegations of Paragraph 164.

165.    Moderna has infringed one or more claims of the '312 Patent, either literally or under the doctrine of equivalents, by using, selling, offering for sale, and/or importing the mRNA used to manufacture Spikevax® (original monovalent), Spikevax® (bivalent BA.1), Spikevax® (bivalent BA.4/BA.5), and Spikevax® (2023-2024 Formula) made by the patented process claimed in the '312 Patent, in violation of 35 U.S.C. § 271(g).

**ANSWER**    Moderna denies the allegations of Paragraph 165.

99

166.    Moderna's infringement of the claims of the '312 Patent was willful.    On information and belief, Moderna acted with deliberate disregard for the '312 Patent when it directly infringed, and encouraged direct infringement by others, with knowledge of the '312 Patent and knowledge that its actions and the actions it directed constituted infringement of the '312 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 166.

167.    CureVac has suffered damages as a result of Moderna's infringement of the claims of the '312 Patent.  CureVac is entitled to an award of compensatory damages, including reasonable royalties, for Moderna's infringement of the claims of the '312 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 167.

168.    Moderna has engaged in egregious infringement behavior with respect to the '312 Patent warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

**ANSWER**    Moderna denies the allegations of Paragraph 168.

169.    Moderna's conduct with respect to the '312 Patent makes this case stand out from others and warrants an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**ANSWER**    Moderna denies the allegations of Paragraph 169.

### COUNT VII – INFRINGEMENT OF THE '966 PATENT

170.    CureVac incorporates each of the above paragraphs 1–169 as though fully set forth here.

**ANSWER**    Moderna incorporates its counterclaims and answers to Paragraphs 1 to 169 of the Complaint as set forth fully herein.

171.    The '966 Patent is directed to RNA-based vaccine compositions for treating coronavirus infections, in particular SARS-CoV-2 infections, containing an mRNA that encodes a pre-fusion stabilized form of the spike protein on the SARS-CoV-2 virus, also containing additional mutations in the coding sequence.  The '966 Patent also describes formulating such mRNAs in an LNP containing at least one cationic lipid, at least one neutral lipid, at least one steroid or steroid analog, preferably cholesterol, and at least one polymer conjugated lipid, preferably a polyethylene glycol-lipid.  The '966 Patent also describes formulating such mRNAs in a pharmaceutically acceptable carrier.

**ANSWER**    The '966 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 171.

172.    The '966 Patent issued with 27 claims.  Claim 1 recites:

**1.** A composition comprising a mRNA comprising:

100

(a) at least one coding sequence encoding a SARS-CoV-2 spike protein (S) at least 95% identical to SEQ ID NO: 10 that is a pre-fusion stabilized spike protein (S_stab) comprising K986P and V987P stabilizing mutations and H69del, V70del, S477N, T478K, E484A, N501Y, and D614G amino acid substitutions relative to SEQ ID NO: 10;

(b) at least one heterologous untranslated region (UTR); and

(c) at least one pharmaceutically acceptable carrier,

wherein the mRNA is complexed or associated with lipid nanoparticles (LNP) and wherein the LNP comprises:

(i) at least one cationic lipid;

(ii) at least one neutral lipid;

(iii) at least one steroid or steroid analogue; and

(iv) at least one PEG-lipid, wherein (i) to (iv) are in a molar ratio of about 20-60% cationic lipid, 5-25% neutral lipid, 25-55% sterol, and 0.5-10% PEG-lipid.

**ANSWER**    The '966 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 172.

173.    On information and belief, davesomeran/CX-034476 has a coding sequence that encodes a SARS-CoV-2 spike protein (S) that is about 97% identical to SEQ ID NO: 10 in the '966 Patent, contains the pre-fusion stabilizing K986P and V987P mutations, and has the following amino acid substitutions relative to SEQ ID NO: 10: H69del, V70del, S477N, T478K, E484A, N501Y, and D614G.  Exhibit 22 (Proposed International Nonproprietary Names List 128 – COVID-19 Addendum) at 2.

**ANSWER**    Moderna states that the Exhibit referenced in Paragraph 173 speaks for itself.  Moderna also states that the '966 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 173.

174.    On information and belief, davesomeran/CX-034476 comprises at least one heterologous untranslated region.  Exhibit 22 (Proposed International Nonproprietary Names List 128 – COVID-19 Addendum) at 2 ("… flanked by an artificial 5' untranslated region (UTR) and a 3' UTR derived from the human alpha globin gene (HBA1) modified to contain an identification and ratio (IDR) sequence to enable identification and relative ratio determination of individual RNA components in a multivalent mRNA vaccine, and terminated by a 3' poly(A) tail.").

101

**ANSWER**    Moderna states that the Exhibit referenced in Paragraph 174 speaks for itself.  Moderna otherwise denies the allegations of Paragraph 174.

175.    On information and belief, Spikevax® (bivalent BA.4/BA.5) is formulated with a pharmaceutically acceptable carrier.  On information and belief, the Accused Product includes mRNA complexed or associated with lipid nanoparticles comprising: at least (1) one cationic lipid, SM-102 (heptadecan-9-yl 8-{(2-hydroxyethyl)[6-oxo-6-(undecyloxy)hexyl]amino}octanoate));(2) at least one neutral lipid, 1,2-distearoyl-sn-glycero-3-phosphocholine (DSPC); (3) at least one steroid or steroid analogue, cholesterol; and (4) at least one PEG-lipid, 1,2-dimyristoyl-rac-glycero-3-methoxypolyethylene glycol-2000 (PEG2000-DMG).  Exhibit 43 (Spikevax® (bivalent BA.4/BA.5) Package insert) at 48.  On information and belief, additional excipients in Spikevax® (bivalent BA.4/BA.5) include tromethamine, tromethamine hydrochloride, acetic acid, sodium acetate trihydrate, sucrose, and water for injection.  *Id.*

**ANSWER**    With respect to the first sentence of Paragraph 175, Moderna admits that Spikevax® (bivalent BA.4/BA.5) is formulated with a pharmaceutically acceptable carrier.  With respect to the second and third sentences of Paragraph 175, Moderna states that the Exhibit referenced speaks for itself.  Moderna otherwise denies the allegations of Paragraph 175.

176.    On information and belief, the lipid nanoparticles in the accused Spikevax® (bivalent BA.4/BA.5) product includes the cationic, neutral, and PEG lipids and sterol in a molar ratio of about 48% cationic lipid, 11% neutral lipid, 39% sterol, and 1% PEG-lipid.  Exhibit 41 (Recommendation for an Emergency Use Listing of Covid-19 mRNA Vaccine (nucleoside modified) Submitted by Moderna Biotech Spain) at 7.

**ANSWER**    Moderna states that the Exhibit referenced in Paragraph 176 speaks for itself.  Moderna otherwise denies the allegations of Paragraph 176.

177.    On information and belief, the accused Spikevax® (bivalent BA.4/BA.5) satisfies all of the limitations of at least Claim 1 of the '966 Patent for the reasons described above.

**ANSWER**    Moderna denies the allegations of Paragraph 177.

178.    On information and belief, Moderna has directly infringed at least Claim 1 of the '966 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing Spikevax® (bivalent BA.4/BA.5) in the United States and in this District without authority, in violation of 35 U.S.C. § 271(a).

**ANSWER**    Moderna denies the allegations of Paragraph 178.

179.    On information and belief, Moderna has induced infringement of at least Claim 1 of the '966 Patent by encouraging others, including but not limited to healthcare providers and

patients, to use Spikevax® (bivalent BA.4/BA.5) in the United States in a manner that would directly infringe, either literally or under the doctrine of equivalents, the '966 Patent. Moderna has intentionally encouraged and will continue to intentionally encourage acts of direct infringement by others, including but not limited to healthcare providers and patients, with knowledge of the '966 Patent and with knowledge that its acts are encouraging infringement, in violation of 35 U.S.C. § 271(b). For example, Moderna provides an FDA-approved label with each of its products instructing such healthcare providers to administer the Accused Products to patients.

**ANSWER**    Moderna admits that it provides an FDA-approved label for its products sold in the United States. Moderna otherwise denies the allegations of Paragraph 179.

180.    On information and belief, Moderna has induced infringement of at least Claim 1 of the '966 Patent by encouraging others to manufacture and/or make Spikevax® (bivalent BA.4/BA.5) in the United States, during the term of the '966 Patent, in a manner that would directly infringe, either literally or under the doctrine of equivalents, the '966 Patent. Moderna has intentionally encouraged and will continue to intentionally encourage acts of direct infringement by others, with knowledge of the '966 Patent and with knowledge that its acts are encouraging infringement, in violation of 35 U.S.C. § 271(b). For example, Moderna instructs third-party manufacturers to manufacture the Accused Products pursuant to the process set forth in its BLA. That process results in the manufacture of the Accused Products.

**ANSWER**    Moderna admits that Spikevax® (bivalent BA.4/BA.5) is manufactured according to the process set forth in its BLA. Moderna otherwise denies the allegations of Paragraph 180.

181.    On information and belief, the accused Spikevax® (bivalent BA.4/BA.5) constitutes a material part of the invention of at least Claim 1 of the '966 Patent and is not a staple article or commodity of commerce suitable for substantial non-infringing use. Moderna has contributorily infringed and continues to contributorily infringe at least Claim 1 of the '966 Patent by promoting the use of Spikevax® (bivalent BA.4/BA.5) in accordance with their authorized uses in the United States by others, including but not limited to healthcare providers and patients, and knowing that the Accused Products are especially made or especially adapted for use to directly infringe, either literally or under the doctrine of equivalents, the '966 Patent, in violation of 35 U.S.C. § 271(c).

**ANSWER**    Moderna denies the allegations of Paragraph 181.

182.    On information and belief, Moderna had knowledge of the '966 Patent and knowledge that its actions promoting the use of Spikevax® (bivalent BA.4/BA.5) in the United States induces infringement and contributorily infringes the '966 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 182.

183.    Moderna's infringement of the claims of the '966 Patent has been and continues to be willful. On information and belief, Moderna acted with deliberate disregard for the '966 Patent

when it directly infringed, and encouraged direct infringement by others, with knowledge of the '966 Patent and knowledge that its actions and the actions it directed constituted infringement of the '966 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 183.

184.    CureVac has suffered damages as a result of Moderna's infringement of the claims of the '966 Patent.  CureVac is entitled to an award of compensatory damages, including reasonable royalties, for Moderna's infringement of the claims of the '966 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 184.

185.    Moderna has engaged in egregious infringement behavior with respect to the '966 Patent warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

**ANSWER**    Moderna denies the allegations of Paragraph 185.

186.    Moderna's conduct with respect to the '966 Patent makes this case stand out from others and warrants an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**ANSWER**    Moderna denies the allegations of Paragraph 186.

## COUNT VIII – INFRINGEMENT OF THE '686 PATENT

187.    CureVac incorporates each of the above paragraphs 1–186 as though fully set forth here.

**ANSWER**    Moderna incorporates its counterclaims and answers to Paragraphs 1 to 186 of the Complaint as set forth fully herein.

188.    The '686 Patent is directed to purified mRNAs that encode a pre-fusion stabilized form of the spike protein on the SARS-CoV-2 virus, and that contain an additional "D614G" mutation in their coding sequence.  The '686 Patent also describes formulating such mRNAs in a pharmaceutically acceptable carrier.

**ANSWER**    The '686 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 188.

189.    The '686 Patent issued with 30 claims.  Claim 1 recites:

**1.** A purified mRNA comprising:

(a) a 5′ cap structure;

(b) a heterologous 5′ untranslated region (UTR);

104

(c) a coding sequence encoding a SARS-CoV-2 spike protein (S) at least 95% identical to SEQ ID NO: 10 that is a pre-fusion stabilized spike protein (S_stab) comprising K986P and V987P stabilizing substitutions and further comprising a D614G amino acid substitution relative to SEQ ID NO: 10; and

(d) a heterologous 3′ UTR,

wherein the mRNA optionally comprises a nucleotide substitution at one or more uracil position(s) selected from a 1-methylpseudouridine or a pseudouridine substitution.

**ANSWER**    The '686 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 189.

190.    On information and belief, Moderna's Spikevax® (bivalent BA.4/BA.5) contains the mRNA molecule davesomeran/CX-034476; Moderna's Spikevax® (2023-2024 Formula) contains the mRNA molecule andusomeran/CX-038839; and Moderna's Spikevax® (2024-2025 Formula) contains the mRNA molecule CX-046684.

**ANSWER**    Moderna admits the allegations of Paragraph 190.

191.    On information and belief, davesomeran/CX-034476 has a coding sequence that encodes a SARS-CoV-2 spike protein (S) that is about 97% identical to SEQ ID NO: 10 in the '686 Patent, contains the pre-fusion stabilizing K986P and V987P mutations, and has the D614G substitution relative to SEQ ID NO: 10.  Exhibit 22 (Proposed International Nonproprietary Names List 128 – COVID-19 Addendum) at 2.

**ANSWER**    Moderna states that the Exhibit referenced in Paragraph 191 speaks for itself.  Moderna also states that the '686 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 191.

192.    On information and belief, andusomeran/CX-038839 has a coding sequence that encodes a SARS-CoV-2 spike protein (S) that is about 97% identical to SEQ ID NO: 10 in the '686 Patent, and contains the pre-fusion stabilizing K986P and V987P mutations, and has the D614G substitution relative to SEQ ID NO: 10.  Exhibit 23 (Proposed International Nonproprietary Names List 129 – COVID-19) at 2.

**ANSWER**    Moderna states that the Exhibit referenced in Paragraph 192 speaks for itself.  Moderna also states that the '686 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 192.

193.    On information and belief, CX-046684 has a coding sequence that encodes a SARS-CoV-2 spike protein (S) that is about 95% identical to SEQ ID NO: 10 in the '686 Patent, and contains the pre-fusion stabilizing K986P and V987P mutations, and has the D614G substitution relative to SEQ ID NO: 10.

**ANSWER**    Moderna denies the allegations of Paragraph 193.

194.    On information and belief, davesomeran/CX-034476, andusomeran/CX-038839, and CX-046684 comprise a 5'-cap structure.  Exhibit 22 (Proposed International Nonproprietary Names List 128 – COVID-19 Addendum) at 2 ("5'-capped …"); Exhibit 23 (Proposed International Nonproprietary Names List 129 – COVID-19) at 2 ("5'-capped …").

**ANSWER**    Moderna states that the Exhibits referenced in Paragraph 194 speak for themselves.  Moderna otherwise denies the allegations of Paragraph 194.

195.    On information and belief, davesomeran/CX-034476, andusomeran/CX-038839, and CX-046684 comprise a heterologous 3' UTR, and a heterologous 5' UTR.  Exhibit 22 (Proposed International Nonproprietary Names List 128 – COVID-19 Addendum) at 2 ("flanked by an artificial 5' untranslated region (UTR) and a 3' UTR derived from the human alpha globin gene (HBA1)"); Exhibit 23 (Proposed International Nonproprietary Names List 129 – COVID-19) at 2 ("flanked by an artificial 5' untranslated region (UTR) and a 3' UTR derived from the human alpha globin gene (HBA1)").

**ANSWER**    Moderna states that the Exhibits referenced in Paragraph 195 speak for themselves.  Moderna otherwise denies the allegations of Paragraph 195.

196.    On information and belief, 100% of the uracil positions in the coding sequences of davesomeran/CX-034476, andusomeran/CX-038839, and CX-046684 are replaced with 1-methylpseudouridine, a nucleotide analog.  Exhibit 22 (Proposed International Nonproprietary Names List 128 – COVID-19 Addendum) at 2 ("… contains $N^1$-methylpseudouridine instead of uridine (*all*-U>m$^1\Psi$)"); Exhibit 23 (Proposed International Nonproprietary Names List 129 – COVID-19) at 2 ("… contains $N^1$-methylpseudouridine instead of uridine (*all*-U>m$^1\Psi$)").

**ANSWER**    Moderna states that the Exhibits referenced in Paragraph 196 speak for themselves.  Moderna otherwise denies the allegations of Paragraph 196.

197.    On information and belief, Spikevax® (bivalent BA.4/BA.5), Spikevax® (2023-2024 Formula), and Spikevax® (2024-2025 Formula) satisfy all of the limitations of at least Claim 1 of the '686 Patent for the reasons described above.

**ANSWER**    Moderna denies the allegations of Paragraph 197.

198.    On information and belief, Moderna has directly infringed at least Claim 1 of the '686 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering

for sale, and/or importing Spikevax® (bivalent BA.4/BA.5), Spikevax® (2023-2024 Formula), and Spikevax® (2024-2025 Formula) in the United States and in this District without authority, in violation of 35 U.S.C. § 271(a).

**ANSWER**    Moderna denies the allegations of Paragraph 198.

199.    On information and belief, Moderna has induced infringement of at least Claim 1 of the '686 Patent by encouraging others, including but not limited to healthcare providers and patients, to use Spikevax® (bivalent BA.4/BA.5), Spikevax® (2023-2024 Formula), and Spikevax® (2024-2025 Formula) in the United States in a manner that would directly infringe, either literally or under the doctrine of equivalents, the '686 Patent.  Moderna has intentionally encouraged and will continue to intentionally encourage acts of direct infringement by others, including but not limited to healthcare providers and patients, with knowledge of the '686 Patent and with knowledge that its acts are encouraging infringement, in violation of 35 U.S.C. § 271(b).  For example, Moderna provides an FDA-approved label with each of its products that instructs such healthcare providers to administer the Accused Products to patients.

**ANSWER**    Moderna admits that it provides an FDA-approved label for its products

sold in the United States.  Moderna otherwise denies the allegations of Paragraph 199.

200.    On information and belief, Moderna has induced infringement of at least Claim 1 of the '686 Patent by encouraging others to manufacture and/or make Spikevax® (bivalent BA.4/BA.5) and Spikevax® (2023-2024 Formula) in the United States, during the term of the '686 Patent, in a manner that would directly infringe, either literally or under the doctrine of equivalents, the '686 Patent.  Moderna has intentionally encouraged and will continue to intentionally encourage acts of direct infringement by others, with knowledge of the '686 Patent and with knowledge that its acts are encouraging infringement, in violation of 35 U.S.C. § 271(b).  For example, Moderna instructs third-party manufacturers to manufacture the Accused Products pursuant to the process set forth in its BLA.  That process results in the manufacture of the Accused Products.

**ANSWER**    Moderna admits that the Spikevax® (bivalent BA.4/BA.5) and Spikevax®

(2023-2024 Formula) are each manufactured according to the process set forth in the relevant BLA.

Moderna otherwise denies the allegations of Paragraph 200.

201.    On information and belief, Spikevax® (bivalent BA.4/BA.5), Spikevax® (2023-2024 Formula), and Spikevax® (2024-2025 Formula) constitute a material part of the invention of at least Claim 1 of the '686 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Moderna has contributorily infringed and continues to contributorily infringe at least Claim 1 of the '686 Patent by promoting the use of Spikevax® (bivalent BA.4/BA.5), Spikevax® (2023-2024 Formula), and Spikevax® (2024-2025 Formula) in accordance with their authorized uses in the United States by others, including but not limited to healthcare providers and patients, and knowing that those products are especially made or

107

especially adapted for use to directly infringe, either literally or under the doctrine of equivalents, the '686 Patent, in violation of 35 U.S.C. § 271(c).

**ANSWER**    Moderna denies the allegations of Paragraph 201.

202.    On information and belief, Moderna had knowledge of the '686 Patent and knowledge that its actions promoting the use of Spikevax® (bivalent BA.4/BA.5), Spikevax® (2023-2024 Formula), and Spikevax® (2024-2025 Formula) in the United States induces infringement of and contributorily infringes the '686 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 202.

203.    Moderna's infringement of the '686 Patent has been willful.  On information and belief, Moderna acted with deliberate disregard for the '686 Patent when it directly infringed, and encouraged direct infringement by others, with knowledge of the '686 Patent and knowledge that its actions and the actions it directed constituted infringement of the '686 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 203.

204.    CureVac has suffered damages as a result of Moderna's infringement of the claims of the '686 Patent.  CureVac is entitled to an award of compensatory damages, including reasonable royalties, for Moderna's infringement of the claims of the '686 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 204.

205.    Moderna has engaged in egregious infringement behavior with respect to the '686 Patent warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

**ANSWER**    Moderna denies the allegations of Paragraph 205.

206.    Moderna's conduct with respect to the '686 Patent makes this case stand out from others and warrants an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**ANSWER**    Moderna denies the allegations of Paragraph 206.

### COUNT IX – INFRINGEMENT OF THE '089 PATENT

207.    CureVac incorporates each of the above paragraphs 1–206 as though fully set forth here.

**ANSWER**    Moderna incorporates its counterclaims and answers to Paragraphs 1 to 206 of the Complaint as set forth fully herein.

208.    The '089 Patent is directed to purified mRNAs that encode a pre-fusion stabilized form of the spike protein on the SARS-CoV-2 virus, and that contain additional "E484K" and "D614G" mutations in the coding sequence.  The '089 Patent also describes formulating such mRNAs in a pharmaceutically acceptable carrier and in an LNP.

108

**ANSWER**    The '089 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 208.

209.    The '089 Patent issued with 52 claims.  Claim 1 recites:

> **1.**  A composition comprising a mRNA comprising:
>
> (a) at least one coding sequence encoding a SARS-COV-2 spike protein(S) comprising an amino acid sequence at least 90% identical to SEQ ID NO: 10 that is a pre-fusion stabilized spike protein (S_stab) comprising K986P and V987P stabilizing substitutions and further comprising E484K and D614G amino acid substitutions relative to SEQ ID NO: 10;
>
> (b) at least one heterologous untranslated region (UTR); and
>
> (c) at least one pharmaceutically acceptable carrier, wherein the mRNA is complexed or associated with a lipid nanoparticle (LNP).

**ANSWER**    The '089 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 209.

210.    On information and belief, Moderna's Spikevax® (2024-2025 Formula) contains the mRNA molecule CX-046684, and Spikevax® (2025-2026 Formula) contains the mRNA molecule CX-051869.

**ANSWER**    Moderna admits the allegations of Paragraph 210.

211.    On information and belief, CX-046684 has a coding sequence that encodes a SARS-CoV-2 spike protein (S) that is about 95% identical to SEQ ID NO: 10 in the '089 Patent, contains the pre-fusion stabilizing K986P and V987P mutations, and has the D614G and E484K amino-acid substitutions relative to SEQ ID NO: 10.

**ANSWER**    Moderna denies the allegations of Paragraph 211.

212.    On information and belief, CX-051869 has a coding sequence that encodes a SARS-CoV-2 spike protein (S) that is about 94% identical to SEQ ID NO: 10 in the '089 Patent, contains the pre-fusion stabilizing K986P and V987P mutations, and has the D614G and E484K amino-acid substitutions relative to SEQ ID NO: 10.

**ANSWER**    Moderna denies the allegations of Paragraph 212.

213.    On information and belief, CX-046684 and CX-051869 comprise a heterologous 3' UTR and a heterologous 5' UTR.

**ANSWER**    Moderna admits the allegations of Paragraph 213.

214.    On information and belief, Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) are formulated with a pharmaceutically acceptable carrier: Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) include mRNA complexed or associated with lipid nanoparticles comprising: at least (1) one cationic lipid, SM-102 (heptadecan-9-yl 8-{(2-hydroxyethyl)[6-oxo-6-(undecyloxy)hexyl]amino}octanoate));(2) at least one neutral lipid, 1,2-distearoyl-sn-glycero-3-phosphocholine (DSPC); (3) at least one steroid or steroid analogue, cholesterol; and (4) at least one PEG-lipid, 1,2-dimyristoyl-rac-glycero-3-methoxypolyethylene glycol-2000 (PEG2000-DMG).  Exhibit 47 (Spikevax® (2024-2025 Formula) package insert) at 27; Exhibit 48 (Spikevax® (2025-2026 Formula) package insert) at 50.  On information and belief, additional excipients in Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) include tromethamine, tromethamine hydrochloride, acetic acid, sodium acetate trihydrate, sucrose, and water for injection. *Id*.

**ANSWER**    Moderna admits that Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) are formulated with a pharmaceutically acceptable carrier.  Moderna states that the Exhibits referenced in Paragraph 214 speak for themselves.  Moderna otherwise denies the allegations of Paragraph 214.

215.    On information and belief, 100% of the uracil positions in the coding sequences of CX-046684 and CX-051869 are replaced with 1-methylpseudouridine, a nucleotide analog.

**ANSWER**    Moderna admits the allegations of Paragraph 215.

216.    On information and belief, Moderna's Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) satisfy all of the limitations of at least Claim 1 of the '089 Patent for the reasons described above.

**ANSWER**    Moderna denies the allegations of Paragraph 216.

217.    On information and belief, Moderna has directly infringed at least Claim 1 of the '089 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) in the United States and in this District without authority, in violation of 35 U.S.C. § 271(a).

**ANSWER**    Moderna denies the allegations of Paragraph 217.

218.    On information and belief, Moderna has induced infringement of at least Claim 1 of the '089 Patent by encouraging others, including but not limited to healthcare providers and patients, to use Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) in the United States in a manner that would directly infringe, either literally or under the doctrine of equivalents, the '089 Patent.  Moderna has intentionally encouraged and will continue to intentionally encourage acts of direct infringement by others, including but not limited to healthcare providers and patients, with knowledge of the '089 Patent and with knowledge that its acts are encouraging infringement, in violation of 35 U.S.C. § 271(b).  For example, Moderna

110

provides an FDA- approved label with each of its products that instructs such healthcare providers to administer the Accused Products to patients.

**ANSWER**    Moderna admits that it provides an FDA-approved label for its products

sold in the United States.  Moderna otherwise denies the allegations of Paragraph 218.

219.    On information and belief, Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) constitute a material part of the invention of at least Claim 1 of the '089 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. Moderna has contributorily infringed and continues to contributorily infringe at least Claim 1 of the '089 Patent, by promoting the use of Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) in accordance with their authorized uses in the United States by others, including but not limited to healthcare providers and patients, and knowing that those products are especially made or especially adapted for use to directly infringe, either literally or under the doctrine of equivalents, the '089 Patent, in violation of 35 U.S.C. § 271(c).

**ANSWER**    Moderna denies the allegations of Paragraph 219.

220.    On information and belief, Moderna had knowledge of the '089 Patent and knowledge that its actions promoting the use of Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) in the United States induces infringement of and contributorily infringes the '089 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 220.

221.    Moderna's infringement of the '089 Patent has been willful.  On information and belief, Moderna acted with deliberate disregard for the '089 Patent when it directly infringed, and encouraged direct infringement by others, with knowledge of the '089 Patent and knowledge that its actions and the actions it directed constituted infringement of the '089 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 221.

222.    CureVac has suffered damages as a result of Moderna's infringement of the claims of the '089 Patent.  CureVac is entitled to an award of compensatory damages, including reasonable royalties, for Moderna's infringement of the claims of the '089 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 222.

223.    Moderna has engaged in egregious infringement behavior with respect to the '089 Patent warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

**ANSWER**    Moderna denies the allegations of Paragraph 223.

224.    Moderna's conduct with respect to the '089 Patent makes this case stand out from others and warrants an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**ANSWER**    Moderna denies the allegations of Paragraph 224.

## COUNT X – INFRINGEMENT OF THE '523 PATENT

225.    CureVac incorporates each of the above paragraphs 1–224 as though fully set forth here.

**ANSWER**    Moderna incorporates its counterclaims and answers to Paragraphs 1 to 224 of the Complaint as set forth fully herein.

226.    The '523 Patent is directed to purified mRNAs that encodes a pre-fusion stabilized form of the spike protein on the SARS-CoV-2 virus, also containing additional "E484K" and "D614G" mutations in the coding sequence.  The '523 Patent also describes formulating such mRNAs in a pharmaceutically acceptable carrier.

**ANSWER**    The '523 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 226.

227.    The '523 Patent issued with 119 claims.  Claim 1 recites:

> **1.**  A purified RNA comprising:
>
> (a) a 5ʹ cap structure;
>
> (b) at least one coding sequence encoding a SARS-CoV-2 spike protein comprising an amino acid sequence at least 90% identical to SEQ ID NO: 10 that is a pre-fusion stabilized spike protein (S_stab) comprising K986P and V987P stabilizing substitutions and further comprising E484K and D614G amino acid substitutions relative to SEQ ID NO: 10; and
>
> (c) a 3ʹ untranslated region (UTR) comprising at least one poly
>
> (A) sequence having 30 to 200 adenosine nucleotides.

**ANSWER**    The '523 Patent speaks for itself.  Moderna otherwise denies the allegations of Paragraph 227.

228.    On information and belief, Moderna's Spikevax® (2024-2025 Formula) contains the mRNA molecule CX-046684, and Spikevax® (2025-2026 Formula) contains the mRNA molecule CX-051869.

**ANSWER**    Moderna admits the allegations of Paragraph 228.

229.    On information and belief, CX-046684 and CX-051869 comprise a 5'-cap structure.

**ANSWER**    Moderna admits the allegations of Paragraph 229.

230.    On information and belief, CX-046684 has a coding sequence that encodes a SARS-CoV-2 spike protein (S) that is about 95% identical to SEQ ID NO: 10 in the '523 Patent, and contains the pre-fusion stabilizing K986P and V987P mutations, and has the D614G and E484K amino acid substitutions relative to SEQ ID NO: 10.

**ANSWER**    Moderna denies the allegations of Paragraph 230.

231.    On information and belief, CX-051869 has a coding sequence that encodes a SARS-CoV-2 spike protein (S) that is about 94% identical to SEQ ID NO: 10 in the '523 Patent, and contains the pre-fusion stabilizing K986P and V987P mutations, and has the D614G and E484K amino acid substitutions relative to SEQ ID NO: 10.

**ANSWER**    Moderna denies the allegations of Paragraph 231.

232.    On information and belief, CX-046684 and CX-051869 comprise a heterologous 3' UTR, and a heterologous 5' UTR, and a terminal poly(A) sequence comprising 100 adenosine nucleotides.

**ANSWER**    Moderna admits the allegations of Paragraph 232.

233.    On information and belief, Moderna's Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) satisfy all of the limitations of at least Claim 1 of the '523 Patent for the reasons described above.

**ANSWER**    Moderna denies the allegations of Paragraph 233.

234.    On information and belief, Moderna has directly infringed at least Claim 1 of the '523 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) in the United States and in this District without authority, in violation of 35 U.S.C. § 271(a).

**ANSWER**    Moderna denies the allegations of Paragraph 234.

235.    On information and belief, Moderna has induced infringement of at least Claim 1 of the '523 Patent by encouraging others, including but not limited to healthcare providers and patients, to use Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) in the United States in a manner that would directly infringe, either literally or under the doctrine of equivalents, the '523 Patent.  Moderna has intentionally encouraged and will continue to intentionally encourage acts of direct infringement by others, including but not limited to healthcare providers and patients, with knowledge of the '523 Patent and with knowledge that its acts are encouraging infringement, in violation of 35 U.S.C. § 271(b).  For example, Moderna provides an FDA- approved label with each of its products instructing such healthcare providers to administer the Accused Products to patients.

**ANSWER**    Moderna denies the allegations of Paragraph 235.

236.    On information and belief, Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) constitute a material part of the invention of at least Claim 1 of the '523 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. Moderna has contributorily infringed and continues to contributorily infringe at least Claim 1 of the '523 Patent by promoting the use of Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) in accordance with their authorized uses in the United States by others, including but not limited to healthcare providers and patients, and knowing that those products are especially made or especially adapted for use to directly infringe, either literally or under the doctrine of equivalents, the '523 Patent, in violation of 35 U.S.C. § 271(c).

**ANSWER**    Moderna denies the allegations of Paragraph 236.

237.    On information and belief, Moderna had knowledge of the '523 Patent and knowledge that its actions promoting the use of Spikevax® (2024-2025 Formula) and Spikevax® (2025-2026 Formula) in the United States induces infringement of and contributorily infringes the '523 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 237.

238.    Moderna's infringement of the '523 Patent has been willful.  On information and belief, Moderna acted with deliberate disregard for the '523 Patent when it directly infringed, and encouraged the direct infringement by others, with knowledge of the '523 Patent and knowledge that its actions and the actions it directed constituted infringement of the '523 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 238.

239.    CureVac has suffered damages as a result of Moderna's infringement of the claims of the '523 Patent.  CureVac is entitled to an award of compensatory damages, including reasonable royalties, for Moderna's infringement of the claims of the '523 Patent.

**ANSWER**    Moderna denies the allegations of Paragraph 239.

240.    Moderna has engaged in egregious infringement behavior with respect to the '523 Patent warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

**ANSWER**    Moderna denies the allegations of Paragraph 240.

241.    Moderna's conduct with respect to the '523 Patent makes this case stand out from others and warrants an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**ANSWER**    Moderna denies the allegations of Paragraph 241.

## PRAYER FOR RELIEF

Moderna denies that CureVac is entitled to any of the relief sought in its Prayer for Relief,

or to any other relief in any form from either the Court or from Moderna.  Moderna has not directly,

114

indirectly, literally, and/or by the doctrine of equivalents infringed the patent-in-suit.  Moderna respectfully requests that the Court enter judgment in its favor and against CureVac on all of CureVac's claims, deny each of CureVac's prayers for relief, and award Moderna any other further relief deemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Moderna joins Plaintiffs' request for a jury trial on all issues triable by jury.

## GENERAL DENIAL

Moderna denies all allegations in Plaintiffs' Complaint not expressly admitted.

## AFFIRMATIVE DEFENSES

1.      Moderna repeats and incorporates the allegations from its Counterclaims and Answer set forth above.  Further answering the Complaint, Moderna asserts the following defenses without assuming any burden that it would not otherwise have, including without admitting or acknowledging that it bears the burden of proof as to any of them.  Moderna reserves the right to amend its answer with additional defenses as further information is obtained.

## FIRST DEFENSE (FAILURE TO STATE A CLAIM)

2.      The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE (INVALIDITY OF THE '070 PATENT)

3.      The claims of the '070 Patent are invalid and/or unenforceable for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. ¶¶ 101, 102, 103, 112, and/or under any of the judicially created doctrines of invalidity, including obviousness-type double-patenting.

## THIRD DEFENSE (INVALIDITY OF THE '910 PATENT)

4.      The claims of the '910 Patent are invalid and/or unenforceable for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not

limited to, 35 U.S.C. ¶¶ 101, 102, 103, 112, and/or under any of the judicially created doctrines of invalidity, including obviousness-type double-patenting.

## FOURTH DEFENSE (INVALIDITY OF THE '992 PATENT)

5. The claims of the '992 Patent are invalid and/or unenforceable for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. ¶¶ 101, 102, 103, 112, and/or under any of the judicially created doctrines of invalidity, including obviousness-type double-patenting.

## FIFTH DEFENSE (INVALIDITY OF THE '651 PATENT)

6. The claims of the '651 Patent are invalid and/or unenforceable for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. ¶¶ 101, 102, 103, 112, and/or under any of the judicially created doctrines of invalidity, including obviousness-type double-patenting.

## SIXTH DEFENSE (INVALIDITY OF THE '605 PATENT)

7. The claims of the '605 Patent are invalid and/or unenforceable for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. ¶¶ 101, 102, 103, 112, and/or under any of the judicially created doctrines of invalidity, including obviousness-type double-patenting.

## SEVENTH DEFENSE (INVALIDITY OF THE '312 PATENT)

8. The claims of the '312 Patent are invalid and/or unenforceable for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. ¶¶ 101, 102, 103, 112, and/or under any of the judicially created doctrines of invalidity, including obviousness-type double-patenting.

## EIGHTH DEFENSE (INVALIDITY OF THE '966 PATENT)

9. The claims of the '966 Patent are invalid and/or unenforceable for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. ¶¶ 101, 102, 103, 112, and/or under any of the judicially created doctrines of invalidity, including obviousness-type double-patenting.

### NINTH DEFENSE (INVALIDITY OF THE '686 PATENT)

10. The claims of the '686 Patent are invalid and/or unenforceable for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. ¶¶ 101, 102, 103, 112, and/or under any of the judicially created doctrines of invalidity, including obviousness-type double-patenting.

### TENTH DEFENSE (INVALIDITY OF THE '089 PATENT)

11. The claims of the '089 Patent are invalid and/or unenforceable for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. ¶¶ 101, 102, 103, 112, and/or under any of the judicially created doctrines of invalidity, including obviousness-type double-patenting.

### ELEVENTH DEFENSE (INVALIDITY OF THE '523 PATENT)

12. The claims of the '523 Patent are invalid and/or unenforceable for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. ¶¶ 101, 102, 103, 112, and/or under any of the judicially created doctrines of invalidity, including obviousness-type double-patenting.

### TWELFTH DEFENSE (NONINFRINGEMENT OF THE '070 PATENT)

13. Moderna has not infringed and is not infringing, either directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, or otherwise, any valid and enforceable claim of the '070 Patent.

### THIRTEENTH DEFENSE (NONINFRINGEMENT OF THE '910 PATENT)

117

14.     Moderna has not infringed and is not infringing, either directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, or otherwise, any valid and enforceable claim of the '910 Patent.

## FOURTEENTH DEFENSE (NONINFRINGEMENT OF THE '992 PATENT)

15.     Moderna has not infringed and is not infringing, either directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, or otherwise, any valid and enforceable claim of the '992 Patent.

## FIFTEENTH DEFENSE (NONINFRINGEMENT OF THE '657 PATENT)

16.     Moderna has not infringed and is not infringing, either directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, or otherwise, any valid and enforceable claim of the '657 Patent.

## SIXTEENTH DEFENSE (NONINFRINGEMENT OF THE '605 PATENT)

17.     Moderna has not infringed and is not infringing, either directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, or otherwise, any valid and enforceable claim of the '605 Patent.

## SEVENTEENTH DEFENSE (NONINFRINGEMENT OF THE '312 PATENT)

18.     Moderna has not infringed and is not infringing, either directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, or otherwise, any valid and enforceable claim of the '312 Patent.

## EIGHTEENTH DEFENSE (NONINFRINGEMENT OF THE '966 PATENT)

19.     Moderna has not infringed and is not infringing, either directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, or otherwise, any valid and enforceable claim of the '966 Patent.

## NINETEENTH DEFENSE (NONINFRINGEMENT OF THE '686 PATENT)

20.     Moderna has not infringed and is not infringing, either directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, or otherwise, any valid and enforceable claim of the '686 Patent.

## TWENTIETH DEFENSE (NONINFRINGEMENT OF THE '089 PATENT)

21.     Moderna has not infringed and is not infringing, either directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, or otherwise, any valid and enforceable claim of the '089 Patent.

## TWENTY-FIRST DEFENSE (NONINFRINGEMENT OF THE '523 PATENT)

22.     Moderna has not infringed and is not infringing, either directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, or otherwise, any valid and enforceable claim of the '523 Patent.

## TWENTY-SECOND DEFENSE (NO WILLFUL INFRINGEMENT)

23.     The Complaint fails to state a claim for willful infringement.  Moderna has not willfully infringed, and does not willfully infringe, any valid and enforceable claim of the Asserted Patents.

## TWENTY-THIRD DEFENSE (NO EXCEPTIONAL CASE)

24.     Moderna's actions in defending this case or otherwise do not give rise to an exceptional case in CureVac's favor under 35 U.S.C. § 285.

## TWENTY-FOURTH DEFENSE (35 U.S.C. § 271(E) SAFE HARBOR)

25.     Moderna's development and testing activities related to FDA authorization or approval are subject to the safe harbor of 35 U.S.C. § 271(e).

## TWENTY-FIFTH DEFENSE (LIMITATION OF DAMAGES)

26.     CureVac's claim for damages, if any, is limited under at least 35 U.S.C. § 286.

## TWENTY-SIXTH DEFENSE (LIMITATION OF DAMAGES – MARKING)

27.     To the extent CureVac or its licensees practice the Asserted Patents, CureVac's claim for damages is limited under 35 U.S.C. § 287.  For example, CureVac previously accused BioNTech SE of infringing at least the '070, '910, '312, '966, and '686 Patents by making and selling its COVID-19 vaccine Comirnaty®.[66]  On information and belief, BioNTech SE and Pfizer, Inc. acquired a license in connection with the settlement of that litigation to all CureVac's patents allowing them to sell mRNA-based COVID-19 and/or Influenza Products.  To the extent any such licensed products are patented articles pursuant to 35 U.S.C. § 287 and were not marked with the corresponding Asserted Patent numbers, CureVac is not entitled to pre-notice damages for those Asserted Patents.

### TWENTY-SEVENTH DEFENSE (LIMITATION OF DAMAGES – 28 U.S.C. § 1498)

28.     Moderna's manufacture and sale of COVID-19 vaccines (i.e., Spikevax®) pursuant to the C0100 Contract was and continues to be for the benefit of the U.S. Government and with the U.S. Government's authorization and consent under 28 U.S.C. § 1498(a).  Accordingly, CureVac's claims based on Moderna's manufacture and sale of COVID-19 vaccines (i.e., Spikevax®) pursuant to the C0100 Contract are barred by 28 U.S.C. §1498(a).

### TWENTY-EIGHTH DEFENSE (EXHAUSTION)

29.     Because the U.S. Government is licensed to the TFF Patents, CureVac is barred from asserted that Moderna's sales of the Accused Products to the U.S. Government infringe because of the doctrine of patent exhaustion.

### TWENTY-NINTH DEFENSE (LICENSE)

---

[66] *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222 (E.D. Va., filed July 25, 2022).

30. Because the U.S. Government is licensed to the TFF Patents, CureVac is barred from asserted that Moderna's manufacture for, and sales of the Accused Products to, the U.S. Government pursuant to advance purchase agreements infringe the TFF Patents.

**THIRTIETH DEFENSE (UNCLEAN HANDS)**

31. The claims of the Asserted Patents are unenforceable against Moderna because of the equitable doctrine of unclean hands.

32. Moderna repeats and incorporates the allegations from its Counterclaims Paragraphs 62-71 set forth above.

33. As explained in Paragraphs 62-71 of Moderna's Counterclaims above, BioNTech repeatedly argued that the claims to the alleged inventions in the '070, '910, '966, and '686 Patents were invalid. Yet—despite being well aware of BioNTech's positions—CureVac obtained the '992, '651, '605, '089, and '523 follow-on patents in the same two patent families without disclosing BioNTech's invalidity arguments about the related '070, '910, '966, and '686 Patents to the Patent Office.

34. Now that BioNTech owns CureVac, BioNTech has changed its tune, directing CureVac to sue Moderna not only on the patents that it strenuously advocated to invalidate, but on the follow-on patents obtained during and after the *BioNTech* litigation. But CureVac cannot be allowed to benefit from asserting additional invalid patents that were obtained without disclosing to the Patent Office that its corporate parent asserted that related (and highly similar) claims were invalid at the time the claims were being prosecuted.

35. CureVac has separately demonstrated unclean hands with respect to the claims of the '070, '910, '312, '966, and '686 Patents—the patents that CureVac asserted against BioNTech. On or about March 7, 2023, CureVac, through its attorney Mark Izraelewicz, induced Moderna to agree to waive a conflict of interest by promising Moderna that CureVac would not sue Moderna

121

on the same patents that CureVac was asserting in the BioNTech litigation. On information and belief, at the time it made that promise, CureVac apparently (and correctly) believed that there was no basis to assert those patents against Moderna.

36.    Yet, now that BioNTech owns CureVac, CureVac has changed its tune. CureVac has gone back on its word and sued Moderna on the very patents that it previously told Moderna it would not assert.

37.    Specifically, there was an agreement between CureVac and Moderna formed in or about March 2023. CureVac promised not to assert the '070, '910, '312, '966, and '686 patents against Moderna. In exchange, Moderna agreed to waive a conflict of interest and not to object to Dr. Robert Prud'homme serving as an expert for CureVac on those patents. CureVac breached that agreement by filing this lawsuit accusing Moderna of infringing the '070, '910, '312, '966, and '686 patents. Moderna has suffered and continues to suffer damages from CureVac's breach of its agreement, including at least its attorneys' fees and costs in defending this lawsuit.

38.    CureVac cannot be allowed to profit from breaking its promise. Because CureVac breached its agreement with Moderna, it brings its claims of infringement of the '070, '910, '312, '966, and '686 Patents with unclean hands, and those patents are therefore unenforceable against Moderna.

### THIRTY-FIRST DEFENSE (INEQUITABLE CONDUCT)

39.    Moderna repeats and incorporates the allegations from its Counterclaims Paragraphs 62-70 set forth above.

40.    The '523 patent is unenforceable due to inequitable conduct. The application leading to the '523 patent was filed on January 1, 2023. CureVac and its Senior Director of IP Management, Marshall Byrd, were certainly aware of BioNTech's invalidity positions at least as of February 25, 2025, when BioNTech served its Notice of Affirmative Patent Invalidity Defenses

122

to be Presented at Trial.[67]  On information and belief, Amanda Schnepp, the attorney of record prosecuting the application leading to the '523 patent, was likewise aware of BioNTech's invalidity positions at least as of February 25, 2025.  However, even after the *BioNTech* litigation settled and it was announced that BioNTech would become CureVac's corporate parent, CureVac, Marshall Byrd, and Amanda Schnepp, each failed to disclose BioNTech's invalidity arguments to the Patent Office during the prosecution of the '523 patent.  On information and belief, and on the basis that it is the single most reasonable inference from the facts and circumstances alleged herein, CureVac, Marshall Byrd, and Amanda Schnepp deliberately withheld BioNTech's invalidity positions with the intent to deceive the Patent Office.  But for that failure to disclose, the '523 patent would not have issued.  The '523 patent issued on August 19, 2025, without the Patent Office ever having considered the invalidity statements of CureVac's announced corporate parent.

### THIRTY-SECOND DEFENSE (PROSECUTION HISTORY ESTOPPEL)

41.    CureVac is barred, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the Asserted Patents or related patent applications, from asserting any interpretation of any valid claims of the Asserted Patents that would be broad enough to cover any accused product alleged to infringe the Asserted Patents, either literally or by application of the doctrine of equivalents, or under any theory of infringement.

### THIRTY-THIRD DEFENSE (ENSNAREMENT)

42.    To the extent CureVac claims infringement under the doctrine of equivalents, its claims are barred under the ensnarement doctrine, which prohibits a patentee from asserting an infringement theory under the doctrine of equivalents that encompasses, or "ensnares" the prior art.

---

[67] *CureVac SE v. BioNTech SE*, No. 2:23-cv-00222, ECF No. 795 (E.D. Va. Feb. 24, 2025).

## THIRTY-FOURTH DEFENSE (RESERVATION OF ADDITIONAL DEFENSES)

43.    Moderna reserves any and all additional defenses available under Section 35 of the United States Code, the rules, regulations, or laws related thereto, the Federal Rules of Civil Procedure, the Rules of this Court, and/or otherwise in law or equity, now existing, or later arising, as may be discovered.

*    *    *

## PRAYER FOR RELIEF

WHEREFORE, Moderna respectfully requests that the Court enter a Judgment and Order in its favor and against CureVac as follows:

A.  Dismissing CureVac's Complaint with prejudice and denying each and every prayer for relief contained therein;

B.  Declaring that Moderna does not infringe any claim of the Asserted Patents;

C.  Declaring that the manufacture, use, offer for sale, or sale of its Spikevax® mRNA vaccines within the United States, and their importation into the United States, does not infringe any claim of the Asserted Patents;

D.  Declaring that the claims of the Asserted Patents are invalid for failure to comply with the statutory provisions of Title 35 of the United States Code, including, without limitation, one or more of §§ 101, 102, 103, and/or 112 and/or any judicially created requirements for patentability and enforceability of patents, including obviousness type double patenting, and/or in view of the defenses recognized in § 282;

E.  Declaring that CureVac and its agents, representatives, attorneys, and those persons in active concert or participation with them who receive actual notice thereof, be preliminarily and permanently enjoined from threatening or initiating infringement litigation against Moderna or any of its customers, dealers, or suppliers, or any prospective or present sellers, dealers, distributors,

124

or customers of Moderna, or charging any of them either orally or in writing with infringement of the Asserted Patents;

F.  Awarding Moderna its attorneys' fees, together with costs and disbursements, including because this case is exceptional under 35 U.S.C. § 285; and

G.  Awarding such other and further relief as the Court deems just and proper.

Dated:  July 17, 2026

OF COUNSEL:
Kevin S. Prussia
Emily R. Whelan
Andrew J. Danford
Timothy A. Cook
Madeleine C. Laupheimer
Wenli Gu, PhD
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Laura Macro, PhD
Gillian T. Farrell
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

*Attorneys for Defendants and Counterclaim Plaintiffs ModernaTX, Inc., Moderna, Inc., and Moderna US, Inc.*

Respectfully submitted,

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants and Counterclaim Plaintiffs ModernaTX, Inc., Moderna, Inc., and Moderna US, Inc.*

125